IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JON A. WOODARD,                )
                              )    CASE NO: 3-05-000089-CV (TMB)
        Plaintiff,            )
                              )
                              )
JOHN (CRAIG) TURNBULL         )
                              )
        Defendant.            )
_____)

### AFFIDAVIT OF MARJORIE H. SHORTHILL

STATE OF ALASKA              )
                            ) ss.
MUNICIPALITY OF ANCHORAGE    )

Marjorie H. Shorthill, upon oath, deposes and states:

1) That my name is Marjorie H. Shorthill, and address
   is PO Box 670-250, Chugiak, Alaska 99567

2) My work experience and training include the
   following:

   1970 –1972 Health Care Facility, Comptroller
   (close attention to details)

   1972 - 1975 Advertising, Director, (creating
   media with audio and visual impact) 1973 We
   relocated our family to Anchorage. I continued to
   work in advertising.

   1975 - 1986 STATE of AK, DOL Adjudicator

3) That in 1980 I first met Ms Noel Woodard and over time her family. We have remained close friends over the past 26 years. Along with many Woodard family members and friends I attended court.  I was there daily except several weeks in April I was absent due to illness.

4) That on July 20,1992 Jon Woodard was in leg irons, his hands restricted by cuffs in front secured to a chain around his waist. KTUU-TV was filming when Jon's father and I walked into courtroom "A" on the 3rd.floor. The larger courtroom was assigned to accommodate the anticipated crowd.  Jon Woodard sat with a group of prisoners waiting arraignment.  The courtroom was over-flowing with the curious spectators.  Attorney James McComas, who represented Jon Woodard at trial, asked the court's intervention on his client's behalf, by instructing the prosecution and law enforcement agencies to curtail their "inflammatory comments" and the barrage of speculative information then currently being leaked to the press. When the judge refused to intervene, Mr. McComas restated his concerns in providing a fair trail for his defendant, untainted by media bias.

2

5) The next morning's Anchorage Daily News had a full face close-up photo of Jon chained to another individual, showing his hands chained to his waist. He attempted to cover the chains by dragging the arm of the person chained to his right wrist into his lap.

6) That Jon Woodard was shackled with hands and feet attached to a waist chain through all the pre-trial motions as well as an omnibus hearing and the actual trial. His humiliation and embarrassment were obvious to the observer.

7) That jury selection stands out in my mind. When the first group of prospective jurors was brought in, there was not enough room to seat all of them in the spectator area. I remember the crowd of curious onlookers all pressed closely beside me. Some potential jurors were asked to come behind the bar; some stood, others filled the jury area seating. I saw and everyone who walked past Woodard or sat in the spectator section had opportunity to observe his shackles. Skirting around the tables, fronts and sides did nothing to hide a view of his shackles from the

sides or back. Groups kept coming in waves until a
jury was seated.


8) That Juror Timothy Carmichael was excused after
   sitting four hours.  He wrote the judge a letter
   requesting to be excused from the proceedings. He
   stated that despite his prior testimony, after
   consideration he didn't feel he could be fair to the
   defendant because of his prior knowledge and bias,
   in addition to the financial hardship. "His reason
   for not speaking up sooner was that he was truly
   captivated by the idea of being on the case".


9) That, on our visits after court, Woodard
   frequently would express his concerns over being
   shackled. Worried that the Jury would speculate,
   possibly believing he was considered guilty,
   dangerous and presented a threat to them. The ankle
   shackles were covered to help muffle sound. The
   tables were skirted in an attempt to hide the
   shackles. The court room decorum of standing in the
   presence of the judge was abandoned and extra court
   security officers were assigned, leaving the jury to
   speculate as to the reason.

4

10) That the security officers ever alert frequently approached the defense table to assure Woodard was secure.  Curious glances would focuses on Woodard each time a noise was made, he did his best to remain still but every shift of his body position created the now familiar clanking of chain sound. Speakers on both tables picked up any sound generated in their area.

11) That the guards were tense and alerted by any sound. The first time I opened my purse the uniformed court officials startled to attention, approached me, leaned over the rail, once assured I was not presenting a danger, they would resume their regular positions.  I noted that several of the jurors were equally surprised at their reaction, left to ponder the need of such intense security.

12) That power failures forced emergency evacuation of the building three times, at the end of the prosecution presentation. The guards using emergency lights, keeping them focused on Woodard, the light reflected off his waist chains and wrist chains, as the jurors made their exit. It took a long time to

exit the dimly lit stairwell from the 4th floor of the building, I heard numerous comments; "…this is getting someone's attention."  I was unable to identify who was making the comments. On one power failure incident I remember that the jury was excused for the remainder of day and given a long break.


_____
        Marjorie H. Shorthill


SUBSCRIBED AND SWORN to before me this _____  day of May, 2006.
_____
        NOTARY PUBLIC in and for Alaska.

        My Commission Expires: _____

9114.1/AFF-MHS

6