IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JON ARNOLD WOODARD,<br>      Plaintiff,<br><br><br>JOHN (CRAIG) TURNBULL<br>      Defendant. | CASE NO: A05-0089 CIV (RRB)<br><br>**AMENDED § 2254 PETITION** |

Plaintiff, Jon A. Woodard, through his undersigned counsel, Hugh W. Fleischer, hereby files an amended § 2254 Petition. This petition is based upon the factual and legal arguments contained herein, the attached affidavits and the documents hereto. This amended petition also incorporates the initial petition and the exhibits thereto, filed herein on April 27, 2005.

Jon Woodard went to trial before the Alaska Superior Court, Superior Court Judge Karen L. Hunt, and twelve person jury starting on March 25, 1993. On June 7, 1993 Mr. Woodard was found guilty of Murder in the Second Degree (AS 11.41.110) and Robbery in the First Degree (AS 11.41.500(a)(1). He was found not guilty of Murder in the First Degree (AS 11.41.100 (a)(1). On September 24, 1993, Mr. Woodard was sentenced to imprisonment for sixty-six years. Thereafter, there was an appeal filed with the Alaska Court of Appeals, which affirmed

the Superior Court Judgment on December 9, 1998. An appeal was taken to the Alaska Supreme Court, which affirmed on September 17, 1999. After the Supreme Court decision there was post-conviction relief sought through the same three State courts, with the Alaska Supreme Court denying post-conviction relief on December 29, 2004. Mr. Woodard filed this petition for habeas corpus on April 27, 2005, well within the year allowed for such a petition under 28 U.S.C. § 2244(d)(1)

During the trial the defense asserted and re-asserts that Mr. Woodard is innocent of the charges of which he was convicted and that the actual person responsible for the said murder and robbery was Robert F. Kane. There are witnesses who can and will testify that prior to the Carr's robbery and murder that Mr. Kane was in severe financial difficulties, including that less than a month prior to the robbery, Northrim Bank mailed a letter to Mr. Kane stating that a $65,000 check drawn on First Hawaiian Bank by Rob F. Kane was returned for non-sufficient funds. In addition, Kane owed $10,400.00 to John Santora and $20,000 to Mr. Thomas Rayfield, a business person, who owned South Central Radio and another person $15,000.00. On June 8, 1992, the Carr's Grocery Store was robbed and the Loomis guard, Terrence Becker, was killed. More than $49,000.00 in cash was stolen. Mr. Kane was known to be in Anchorage on that day. Thereafter, on June 9 and June 15, 1992, Kane paid one person

$3,000.00 and $5,000.00, in cash, respectively. On June 18, 1992. Kane pays John Santora $10,400. After the Carr's robbery Kane was in a vehicle with Mr. Rayfield in front of the First National Bank of Anchorage at Dimond Boulevard in Anchorage, Mr. Rayfield saw Kane hold a large box, into which Rayfield could see that the box was full of money, rapped in rubber bands. When Rayfield later attempted to collect the money owed to him by Kane, Kane threatened him with a handgun. There are numerous other facts, all of which point to Rob F. Kane as the person responsible for those heinous acts of June 8, 1992.

Although this Amended Petition incorporates the original Petition, in toto, this amendment is going to lay special emphasis on Petitioner Woodward's eighth ground, that being, that he was denied due process by his having been shackled on his legs, body and one hand, during the trial, which was observed and realized by the jury. As Justice Breyer stated, in his opinion of the Supreme Court in **Deck v. Missouri**, 125 S.Ct. 2007, 161 L.Ed. 2d 953 (2005), "We hold that the Constitution forbids the use of shackles during the penalty phase, as it forbids their use during the guilt phase, *unless* that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial. **Holbrook v. Flynn**, 475 U.S. 560, 568-569, 89 L.ED2d

525, 106 S. Ct. 1340 (1086); see also *Illinois v. Allen*, 397 U.S. 337, 343-344, 25 L.Ed.2d 353, 90 S. Ct. 1057 (1970)." [Emphasis included]. [2009]*  As the Court also noted, "[T]his rule[against shackles in the presence of the jury] has deep roots in common law.  In the 18th Century, Blackstone wrote that 'it is laid down in our ancient books, that, though under an indictment of the highest nature,' a defendant 'must be brought to the bar without irons, or any manner of shackles or bonds; unless there be evident danger of an escape.' 4 W. Blackstone, Commentaries on the Laws of England 317 (1769); see also 3 E. Coke, Institutes of the Laws of England 34 ('If felons come in judgement to answer,…they shall be out of irons, and all manner of bonds, so that their pain shall not take away any manner of reason, nor them constrain to answer, but at their free will.')…It [the rule against shackles]was meant to protect defendants appearing before a jury.  See *King v. Waite*, 1 Leach 28, 36, 168 Eng. Rep. 117, 120 (K.B. 1743) ('Being put upon his trial, the Court immediately ordered [the defendant's]fetters to be knocked off.') It should be noted that the Court reversed and remanded the case of Mr. Deck, who had had numerous burglary and theft convictions and had assisted in a jailbreak by two prisoners. [@ 2016].

* Citations are to the S. Ct. reporter

The Ninth Circuit Court of Appeals has looked at the constitutional issue of a visible shackled defendant during

4

trial.  In the case of **Rhoden v. Rowland**, 2006 172 F.3d 633(9th Cir. 1999), the Court found that the defendant was physically restrained in the presence of the jury, which caused Rhoden physical and emotional pain, the shackling was seen by the jury and the physical restraint caused harmful prejudice, so that the petition was granted. In **Dyas v. Poole**, 317 F. 3d 934 (9th Cir. 2003) ruled that since at least one juror could see the shackles from the jury box, there was prejudice to the defendant.  **Parrish v. Small**, 315 F.3d 1131 (9th Cir. 2003), where the defendant was charged with attempted murder and assault with a deadly weapon, held that the State court erred, in not holding an evidentiary hearing on whether the jury could have seen the shackles and whether such visibility was prejudicial.  In **Hamilton v. Vasquez**, 882 F.2d 1469 (9th Cir. 1989), where the defendant was convicted of first-degree murder, burglary, robbery and kidnapping and was sentenced to death, raised the issue of visible shackling in a habeas petition, the Court held that the trial court's to shackle him during his state criminal trial violated due process and raised mixed questions of law and fact, on which the district court had a duty to review the state court record.

In the matter at bar, Mr. Woodard had no convictions when he began his underlying State trial.  There was always

sufficient security, including at least three armed offices in and about the courtroom to protect the court, court personnel, and public attendees of the trial. (Woodward 1, 02/18/93, 14:19)**  Indeed, the Commander of the State Troopers Judicial Services, Jay Yakopatz, testified that Mr. Woodward had not resisted arrest (Woodard 1, 02/18/93, 18:01) had not attempted to escape jail (Woodward 1, 02/18/93, 18:04) nor caused any threat to any witnesses (Woodard 1. 02/18/93, 17:20) nor made any attempt to flee at any point. (Woodard 1, 02/18/93, 17:24). Mr. Woodard's trial counsel made a timely request for a hearing to challenge the then proposed shackling to present evidence why shackling should not occur.  Such hearing was denied by the trial judge.  (Woodard 1, 02/18/93, 14:19)  Most importantly, on this front, is that the trial judge acknowledged that "we do not want the jury to see the defendant in custody during the trial, because of the presumption of innocence…." (49c-et, 08/20/93, 9308:18)  Yet, as the Affidavits of Marjorie Shorthill and Jon Woodard show, the jury was fully aware of the shackles and chains with which Mr. Woodard was subjected each day of the trial.  Most, if not all of the then-prospective

_____
** Citations are to the three CD-Rom E-Transcript

jurors entered the courtroom from the rear, from which vantage point in the rear of the courtroom, one could fully observe the shackles and chains.  Obviously, twelve of such potential jurors became the jury for the trial. (Affidavits of Shorthill,

¶ 7 Woodard ¶ 6)  Thus, each juror knew that Mr. Woodard was in chains and shackles and is reasonably presumed to believe he was guilty of the offense, long before the first evidence was adduced.  As this Court knows the criminal process of this Nation contains the hallowed presumption that the defendant in innocent until proven guilty.  ***Coffin v. United States***, 156 U.S. 432, 453, 39 L.Ed. 481, 15 S.Ct. 394 (1895.)  The Supreme Court has held that, "Visible shackling undermines the presumption of innocence and the related fairness of the fact finding process.  ***Estelle v. Williams***, 425 U.S. 501, 503 (1976).  "[Shackling] suggests that to the jury that the justice system itself sees a 'need to separate a defendant from the community at large.' ***Holbrook***, supra @ 569, 89 L.Ed.2d 525, 105 S. Ct. 1340. ***Deck v. Missouri***, supra @ 2013.  There were blatant incidents in which the jury saw the shackles and chains such as when there was a power outage and as the jury was being led out past Mr. Woodard, the security officials had bright hand-held lamps on Mr. Woodard and his chains. (Affidavits of Shorthill, ¶ 12, Woodard ¶ 9)In addition, although Mr. Woodard made a concerted effort to be quiet, whenever his body shifted or he reached for something with his one free hand, the chains would activate and were audible throughout the courtroom. (Affidavits of Shorthill ¶ 10), Woodard ¶ 7).

There are also right to counsel violations of the Sixth Amendment caused by visible shackling. "The use of physical restraints diminishes that right. Shackles can interfere with the accused's 'ability to communicate' with his lawyer. *Illinois v. Allen*, 397 U.S. 337,344 [citations omitted] Indeed, they can interfere with a defendant's ability to participate in his own defense, say by freely choosing whether to take the witness stand on his own behalf….('Look you, keeper, you should take off the prisoners irons when they are at the bar, for they should stand at their ease when they are tried') People v. Harrington, 42 Cal. @ 168 (shackles ' impose physical burdens, pains and restraints…tend to confuse and embarrass' defendants mental faculties and thereby tend 'materially to abridge and prejudicially affect his constitutional rights.') *Deck*, supra @ 2013.

The Court also looked at the maintenance of a "judicial process that is a dignified process. The courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment. And it reflects a seriousness of purpose that helps to explain the judicial system's power to inspire the confidence and to affect

the behavior of a general public whose demands for justice our courts seek to serve.  The routine use of shackles in the presence of juries would undermine these symbolic yet concrete objectives.  As this Court has said, the use of shackles at trial 'affronts' the 'dignity and decorum of judicial proceedings that the judge is seeking to uphold.  *Allen*, supra @ 344.  *Deck*, supra @ 2013.

Therefore, Mr. Woodard deserves and requests a remand for a new trial without the outrageous shackles and chains.  Mr. Woodard reserves the right, upon remand, to file objections to a re-trial.

 Dated this 15th day of May, 2006.

              LAW OFFICES OF HUGH W. FLEISCHER


              By: S/Hugh W. Fleischer
                Hugh W. Fleischer
                Attorney for Mr. Woodard
                310 K. St., Suite 200
                Anchorage, AK 99501
                907-264-6635
                907-264-6602-Fax
                hfleisch@aol.com

CERTIFICATE OF SERVICE

I hereby certify that on the 19[h] day of
May, 2006, a true copy of
JON WOODARD'S foregoing Amended
Petition was electronically delivered
William H. Hawley, Jr.
Assistant Attorney General
Office of Special Prosecutions and Appeals
310 K. St., Suite 308
Anchorage, AK 99501


S/Hugh W. Fleischer


    9114.1/544