IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA AT ANCHORAGE

```
JON A. WOODARD,              )   Case No. A05-0089CV (RPB)
                             )
          Petitioner,        )   Affidavit of Jon A. Woodard
                             )   In Support for Petition For
                             )   Writ of Habeas Corpus
vs.                          )   (28 U.S.C. § 2254)
                             )
CRAIG (JOHN) TURNBULL,       )
                             )
          Respondent.        )
_____)

UNITED STATES OF AMERICA     )
                             ) ss.
DISRTICT OF ALASKA           )
```

I, Jon A. Woodard, being first duly sworn, deposes and states as follows:

    1. I am the petitioner in the above-captioned case, currently in the custody of the Alaska Department of Corrections, housed at the Spring Creek Correctional Center at Seward, Alaska.

    2. I was tried in the Superior Court for the State of Alaska, Third Judicial District at Anchorage, before the Honorable Karen Hunt ("Judge Hunt") in State of Alaska v. Jon A. Woodard, Case No. 3AN-S92-5238 CR. On June 7, 1993, a jury of ten (10) rendered a verdict acquitting me of Murder in the First Degree (AS 11.41.100), and convicting me of Murder in the Second Degree (AS 11.41.110(a)(3)), and Robbery in the First Degree (AS 11.41.500).

    3. During the pretrial proceedings and throughout the trial proceedings I was ordered to be placed in shackles by Judge Hunt. The leg shackles consisted of a chain attached to two leg cuffs tightly secured around my ankles. The waist chain consisted of a chain secured tightly around my waist with a keyed padlock.

Handcuffs were attached to the left and the right side of the waist chain and tightly secured to each of my wrists.

    4. On each day that I went to court, prior to departing the Cook Inlet Pretrial Facility ("CIPT"), State Judicial Services Officers ("JS") put me into the shackles around 7:30 a.m., and I would remain in them until about 4:00 p.m. On occasion, JS would "forget" the waist chain padlock key after I returned to CIPT, and I would remain in the chains in CIPT booking for up to an extra hour while JS drove back to the courthouse and returned later with the key to remove the shackles.

    5. During all times at jury selection and my 9-week jury trial, I was shackled in the courtroom. I was in leg shackles and waist chains, with my with left arm cuffed at all times, and the right cuff secured to the chair arm with my right arm unsecured. Although my leg shackles were generally not visible to persons directly in front or to my left or right due to a table curtain (as long as my legs were underneath the table), neither the court nor JS made efforts to muffle the sound or conceal my waist chains or hand cuffs which were visible at all times.

    6. During jury selection my shackles were visible to potential jurors while in the courtroom. The first and/or second jury pools entered the courtroom through the main entrance and stood and/or sat in the spectator area as close as a few feet behind me. I was turned in my chair facing left to observe the potential jurors. My visibly shackled legs were not under the table/curtain configuration, and my leg shackles, waist chain, and handcuffs were clearly visible to the jury pool and others in the spectator area. I recall at some point while Judge Hunt was addressing the jury pool, she directed their attention to me by inquiring if any of them knew or recognized me. In response, all of the potential jurors looked over at me and some raised their hands. I observed many of them looking over at me.

Affidavit of Jon A. Woodard, Case No. A05-0089CV (RPB)
Page 2 of 4

7. During trial my shackles were visible to jurors while in the courtroom. Because neither Judge Hunt nor JS made efforts to keep the waist chains and handcuffs from being visible, it was up to me to minimize the visibility of the shackles. I was not aware of the importance of doing this until weeks into the trial. Although I would try to sit as still as possible, being taller than average required me to sit abnormally by slouching in my chair, which became impossible due to the physical discomfort. Even then I was hindered because I could only use my right arm to write and reach for papers, records, water, or other items. This was especially awkward when I would have to reach for items over to my left when my attorney, James McComas, was away from the defense table. Oftentimes my raising out of the chair and reaching would make my waist chains and/or handcuffs more visible to jurors. I would often see if jurors were looking at me before I moved, or catch them scrutinizing me as I moved, reached, or rose out of the chair.

8. Over the several weeks, the prolonged shackling caused distracting physical pain. The ankle cuffs and handcuffs oftentimes caused scrapes and bruising on my ankles and wrists. My being confined to a certain range of motion caused joint and muscle pain. Overtime I felt very nervous and uncomfortable in front of the jury, making it difficult to focus on the trial proceedings, communicate with counsel. I was apprehensive to do anything that would draw the jurors attention to me and my shackled condition. I was told that overtime I displayed a suspicious and abnormal demeanor.

9. During closing arguments my shackles were visible to jurors while in the courtroom. While closing arguments were progressing, there was a sudden power outage in the courtroom. When the lights suddenly went out, JS rushed over to me and focused bright flashlights on me to make sure I was secured in my

Affidavit of Jon A. Woodard, Case No.  A05-0089CV (RPB)
Page 3 of 4

shackles. My being illuminated while the lights were out me the focus of attention. The JS pulled me away from the defense table in my chair (because I was secured in the chair), to perform a security inspection of my shackles. While one JS was illuminating me with a flashlight, the other JS took the time to inspect each of the locks on the cuffs around my ankles, examine the waist chains and make sure the padlock was secure, and then check the handcuffs to make sure they were secure, by inspecting the cuff secured to the chair, and the cuff around my left arm. While the security inspection proceeded, I observed jurors looking directly at me watching the process.

FURTHER YOUR AFFIANT SAYETH NAUGHT

DATED this 24th day of September, 2005 at Seward, Alaska.

_____
Jon A. Woodard, Petitioner

SUBSCRIBED AND SWORN TO before me this 24 day of September, 2005.

_____
Notary Public
My Commission Expires 10/27/07