IN THE COURT OF APPEALS FOR THE STATE OF ALASKA

JON A. WOODARD,                    )
                                   )
                Appellant,         )
                                   )        Case No. A-5187
        vs.                        )
                                   )
STATE OF ALASKA,                   )
                                   )
                Appellee.          )
_____)

Super. Ct. No. 3AN-S92-5238 CR


APPEAL FROM THE SUPERIOR COURT
THIRD JUDICIAL DISTRICT
HONORABLE KAREN L. HUNT, JUDGE


**APPELLANT'S OPENING BRIEF**


Christine S. Schleuss
Law Office of Christine Schleuss
500 L Street, Suite 300
Anchorage, Alaska  99501
(907) 258-7807

Ak. Bar Asso. # 7811132


Filed in the Court of Appeals,
this ___9th___ day of June, 1995.

CLERK OF THE APPELLATE COURTS

By: _____
        Deputy Clerk

CERTIFICATE OF COMPLIANCE WITH VICTIMS' RIGHTS ACT OF 1991

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140, or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the Court.

## TABLE OF CONTENTS

                                                                    **Page**

VICTIMS' RIGHT CERTIFICATE . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . vii

CONSTITUTIONAL PROVISIONS, STATUTES AND RULES RELIED ON . . . xiv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . 1

STANDARD FOR REVIEW . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . 5

ARGUMENT

I.   THE TRIAL COURT CAUSED REVERSIBLE ERROR WHEN IT
     DENIED JON WOODARD'S S-1, MOTION TO SUPPRESS
     EVIDENCE AND STATEMENTS: UNCONSTITUTIONAL SEARCHES
     AND SEIZURES.

     A.   ISSUANCE OF GLASS WARRANT SW 92-915
          WAS UNCONSTITUTIONAL.

          1.   The Facts . . . . . . . . . . . . . . . . . 14

          2.   The Law.

               a.   Mr. Woodard was entitled to suppression
                    or, at a minimum, an evidentiary hearing
                    in which to challenge the search warrant
                    on Franks/Malkin grounds . . . . . . . . 18

               b.   There was not probable cause to support
                    the warrant . . . . . . . . . . . . . . 28

     B.   ISSUANCE OF SW 92-131, 92-132, 92-133,
          92-134, AND 92-135 WAS UNCONSTITUTIONAL.

          1.   The Facts . . . . . . . . . . . . . . . . . 30

          2.   The Law.

               a.   The warrants were tainted
                    by the prior illegality . . . . . . . . 31

**Page**

      b.  Mr. Woodard was entitled to suppression
           or, at least an evidentiary hearing,
           based on Franks/Malkin violations . . . . 32

      c.  There was not probable
           cause to issue the warrants . . . . . . . 33

C.  ISSUANCE OF SW 92-137 AND
    SW 92-138 WAS UNCONSTITUTIONAL.

    1.  The Facts . . . . . . . . . . . . . . . . 34

    2.  The Law.

      a.  The Warrants were tainted
           by the prior illegalities . . . . . . . . 35

      b.  Mr. Woodard was entitled to suppression
           or, at least an evidentiary hearing,
           based on Franks/Malkin violations . . . . 35

      c.  There was not probable cause
           to issue the warrants . . . . . . . . . . 36

D.  ISSUANCE OF FEDERAL WARRANT
    A92-141MJ WAS UNCONSTITUTIONAL.

    1.  The Facts . . . . . . . . . . . . . . . . 36

    2.  The Law.

      a.  The warrant was tainted
           by the prior illegalities . . . . . . . . 37

      b.  Mr. Woodard was entitled to suppression
           or, at least an evidentiary hearing,
           based on Franks/Malkin violations . . . . 38

      c.  There was not probable cause
           to issue the warrant . . . . . . . . . . 38

**Page**

II. THE TRIAL COURT CAUSED REVERSIBLE ERROR WHEN
IT DENIED MR. WOODARD'S S-3 MOTION TO SUPPRESS
PRETRIAL AND IN-COURT IDENTIFICATION AS IT
APPLIED TO IDENTIFICATION OF MR. WOODARD
BY ROBIN CONAWAY.

    A.   THE FACTS . . . . . . . . . . . . . . . . . 39

    B.   CONSTITUTIONAL AND EVIDENTIARY REQUIREMENTS
        PROHIBITED ADMISSION AT TRIAL OF
        ROBIN CONAWAY'S IDENTIFICATION TESTIMONY.

        1.   Admission Of This Testimony Denied
           Mr. Woodard Due Process Of Law . . . . . . . . 47

        2.   Admission Of This Testimony Violated
           The Alaska Rules Of Evidence . . . . . . . . 50

III. INTENSIVE PRETRIAL PUBLICITY SO PERMEATED THE COMMUNITY
THAT A CHANGE OF VENUE WAS REQUIRED.  THE FAILURE OF THE
TRIAL COURT TO GRANT A CHANGE OF VENUE DENIED MR. WOODARD
HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND REQUIRES
REVERSAL.  IN THE ALTERNATIVE THE TRIAL COURT'S REFUSAL
TO GRANT MR. WOODARD'S CHALLENGES FOR CAUSE OR, IN THE
ALTERNATIVE, TO GRANT MR. WOODARD'S REQUEST FOR ADDITIONAL
PEREMPTORY CHALLENGES, VIOLATED MR. WOODARD'S RIGHT TO AN
IMPARTIAL JURY AND REQUIRES REVERSAL OF THE CONVICTION
IN THIS CASE.

    A.   JURY PROCEEDINGS . . . . . . . . . . . . . . . . 51

    B.   ARGUMENT . . . . . . . . . . . . . . . . . 61

IV. RULINGS WHICH EXCLUDED EVIDENCE NECESSARY TO THE
DEFENSE, TOGETHER WITH RULINGS WHICH IMPROPERLY
ADMITTED EVIDENCE DAMAGING TO MR. WOODARD, DENIED
HIM A FAIR TRIAL.

    A.   INTRODUCTION . . . . . . . . . . . . . . . . 68

    B.   WHERE THE TRIAL COURT ADMITTED THE FIRST
        (EXHIBIT 143) OF SIX SURREPTITIOUSLY TAPE-
        RECORDED CONVERSATIONS BETWEEN MR. WOODARD
        AND DAVID VANHOUSEN TO SHOW MR. WOODARD'S
        STATE OF MIND AFTER THE ROBBERY/HOMICIDE, IT
        SHOULD HAVE ADMITTED THE OTHER FIVE TAPES
        (EXHIBITS EY, EZ, FA, and FB) FOR THE SAME
        PURPOSE . . . . . . . . . . . . . . . . . . . . . . 69

- v -

**Page**

    C.    THE TRIAL COURT ERRED WHEN IT PROHIBITED THE
          DEFENSE FROM PRESENTING A PORTION OF A VIDEOTAPED
          INTERVIEW OF DAVID VANHOUSEN (EXHIBIT CJ) WHERE
          POLICE PRESSURED AND THREATENED HIM TO OBTAIN
          STATEMENTS FROM HIM INCRIMINATING MR. WOODARD . . .   79

    D.    EVIDENCE THAT WITNESSES SEAN PIERCE AND DAVID
          VANHOUSEN FAILED TO PASS POLYGRAPHS AS REQUIRED
          BY THEIR COOPERATION AGREEMENTS SHOULD HAVE
          BEEN ADMITTED AT TRIAL . . . . . . . . . . . . .   83

    E.    THE TRIAL COURT SHOULD HAVE PERMITTED THE
          DEFENSE TO SHOW THE JURY NEWSPAPER PHOTOGRAPHS
          (EXHIBIT AD) OF MR. WOODARD AFTER HIS ARREST
          TO REBUT HIS POST-ARREST IDENTIFICATION BY
          WITNESS ROBIN CONAWAY . . . . . . . . . . . . .   87

    F.    THE TRIAL COURT SHOULD NOT HAVE ADMITTED
          A VIDEOTAPE (EXHIBIT 95) OF MR. WOODARD
          SHOWING HIM REPEATEDLY FIRING A SHOTGUN,
          WHICH WAS WHOLLY UNRELATED TO THIS TRIAL . . . . .   91

    G.    THE TRIAL COURT SHOULD HAVE GRANTED A
          MISTRIAL WHEN A CRITICAL STATE WITNESS
          VIOLATED A PROTECTIVE ORDER AND THE JURY
          HEARD MORE BAD CHARACTER EVIDENCE ABOUT
          MR. WOODARD . . . . . . . . . . . . . . . . .   93

V.   THE TRIAL COURT DENIED MR. WOODARD HIS CONSTI-
    TUTIONAL RIGHT TO BE PRESUMED INNOCENT AND TO
    PARTICIPATE IN HIS DEFENSE WHEN IT REQUIRED HIM
    TO GO TO MULTIPLE PRETRIAL HEARINGS AND TRIAL
    WHILE SHACKLED HAND AND FOOT . . . . . . . . . . . .   96

VI.  THE TRIAL COURT ERRED BY DENYING THE POST-TRIAL
    DEFENSE MOTION FOR DISCLOSURE OR, ALTERNATIVELY,
    IN CAMERA REVIEW OF PSYCHOTHERAPY RECORDS OF CARRS
    EMPLOYEES TO DETERMINE WHETHER MR. WOODARD WAS
    ENTITLED TO A NEW TRIAL BASED ON NEWLY DISCOVERED
    EVIDENCE . . . . . . . . . . . . . . . . . . . . .   97

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . .   99

Ex. 3, p. 6

## TABLE OF AUTHORITIES

Page

### Cases

Adkinson v. State 611 P.2d 528 (Alaska 1980) . . . . . . . . 69

Amarok v. State, 671 P.2d 882 (Alaska App. 1983) . . . . . . 4

Anderson v. State, 749 P.2d 369 (Alaska App. 1988) . . . . . 98

Anthony v. State, 521 P.2d 486 (Alaska 1974) . . . . . . . 96

Bentley v. State, 397 P.2d 976 (Alaska 1965) . . . . . . . 82

Berger v. New York, 388 U.S. 41,
    87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) . . . . . . . . . 33

Braham v. State, 571 P.2d 631 (Alaska 1977) . . . . . . . 68, 98

Brown v. State, 601 P.2d 221 (Alaska 1979) . . . . . . . . 92

Bruton v. United States, 391 U.S. 123 (1968) . . . . . . . 96

Chambers v. Mississippi, 410 U.S. 284 (1973) . . . . . . . 68

Chandler v. State, 830 P.2d 789 (Alaska App. 1992) . . . 29, 39

Chapman v. California, 386 U.S. 18 (1967) . . . . . . . . . 4

Chase v. State, 678 P.2d 1347 (Alaska App. 1984) . . . . . 64

Chavis v. North Carolina, 637 F.2d 213 (4th Cir. 1980) . . . 98

Chilton v. State, 611 P.2d 53 (Alaska 1980) . . . . . . . 3, 28

Contreras v. State, 718 P.2d 129 (Alaska 1986) . . . . . . 51

Cruse v. State, 584 P.2d 1141 (Alaska 1978) . . . . . . 19, 22

Daniels v. State, 767 P.2d 1163 (Alaska App. 1989) . . . . 68

Davis v. Alaska, 415 U.S. 308 (1974) . . . . . . . . . . . 68

Davis v. State, 766 P.2d 41 (Alaska App. 1988) . . . . . . 25

Drumbarger v. State, 716 P.2d 6 (Alaska App. 1986) . . . . 77

Estes v. Texas, 381 U.S. 532 (1964) . . . . . . . . . . . . 61

Ex. 3, p. 7

**Page**

Franks v. Delaware, 438 U.S. 154 (1978) . . . . . 3, 8, 18, 20-28
32, 35, 38

Frink v. State, 597 P.2d 154 (Alaska 1979) . . . . . . . . 4, 77

Gordon v. United States, 344 U.S. 414 (1953) . . . . . . . . 82

Haakanson v. State, 760 P.2d 1030 (Alaska App. 1988) . . 69, 86

Harrelson v. State, 516 P.2d 390 (Alaska 1973) . . . . . . . 33

Hill v. State, 783 S.W.2d 257 (Tex. App. 1987) . . . . . . . 91

Holbrook v. Flynn, 475 U.S. 560 (1986) . . . . . . . . . . . 97

Holden v. State, 602 P.2d 452 (Alaska 1977) . . . . . . . 48, 49

Holmes v. United States, 580 A.2d 1259 (D.C. App 1990) . . . 95

Howe v. State, 611 P.2d 16 (Alaska 1980) . . . . . . . . . . 49

Huhn v. State, 511 So.2d 583 (Fla. App. 1987) . . . . . . . 93

Illinois v. Gates, 462 U.S. 212 (1983) . . . . . . . . . . . 38

Irvin v. Dowd, 366 U.S. 717 (1961) . . . . . . . . . . . . . 61

J.M.A. v. State, 542 P.2d 170 (Alaska 1975) . . . . . . . . 28

Jerrel v. State, 756 P.2d 301 (Alaska App. 1988) . . . 4, 64, 65

Keith v. State, 612 P.2d 977 (Alaska 1980) . . . . . 4, 68, 77

Keller v. State, 543 P.2d 1211 (Alaska 1975) . . . . . . . . 3

Ketzler v. State, 634 P.2d 561 (Alaska App. 1981) . . . . . 64

Kucki v. State, 483 N.E.2d 788 (Ind. App. 1985) . . . . . . 90

Kvasnikoff v. State, 804 P.2d 1302 (Alaska App. 1991) . . 29, 39

Latham v. State, 790 P.2d 717
(Alaska App. 1990) . . . . . . . . . . 20, 22, 23, 26, 98

Loesche v. State, 620 P.2d 646 (Alaska 1980) . . . . . . . 4

Mallott v. State, 608 P.2d 737 (Alaska 1980) . . . . . 61 - 65

Ex. 3, p. 8

**Page**

Manson v. Brathwaite, 432 U.S. 98 (1977) . . . . . . . . . .  48

Mason v. State, 375 So.2d 1125 (Fla. App 1979) . . . . . .  26

McBeth v. State, 652 P.2d 120 (Alaska App. 1982) . . . . . .  95

McConnell v. State, 591 P.2d 147 (Alaska 1979) . . . . . . .  28

McCracken v. State, 521 P.2d 499 (Alaska 1974) . . . . . . .  49

Miller v. State, 778 P.2d 593 (Alaska App. 1989) . . . . . .  90

Neil v. Biggers, 409 U.S. 188 (1972) . . . . . . . . . . . .  47

Nelson v. State, 781 P.2d 994 (Alaska App. 1989) . . . .  63, 65

Newcomb v. State, 800 P.2d 935 (Alaska App. 1990) . .  62, 63, 64

Nickolai v. State, 708 P.2d 1292 (Alaska App. 1985) . . . . .  61

Oxereok v. State, 611 P.2d 913 (Alaska 1980) . . . .  61, 63, 64

Oksoktaruk v. State, 611 P.2d 521 (Alaska 1980) . . . . . . .  69

Patton v. Yount, 467 U.S. 1025 (1984) . . . . . . . . . . .  64

Pennsylvania v. Ritchie, 480 U.S. 39 (1987) . . . . . . . .  98

People v. Born, 447 N.E.2d 426 (Ill. App. 1983) . . . . . .  26

People v. Johnson, 547 N.Y.S.2d 747 (N.Y. App. Div. 1989) . .  93

People v. Prast, 319 N.W. 627 (Mich. App. 1982) . . . . . .  50

Pinkerton v. State, 784 P.2d 671 (Alaska App. 1989) . . . . .  95

Pruitt v. State, 829 P.2d 1197 (Alaska App. 1992) . . . . . .  95

Pulakis v. State, 475 P.2d 474 (Alaska 1970) . . . . . . . .  86

Putnam v. State, 629 P.2d 35 (Alaska 1980) . . . . . . . . .  77

Rae v. State, 884 P.2d 163 (Alaska App. 1994) . . . . . .  96, 97

Rideau v. Louisiana, 373 U.S. 723 (1963) . . . . . . . .  61, 64

Salazar v. State, 559 P.2d 66 (Alaska 1976) . . . . . . . .  68

- ix -

**Page**

Salud v. State, 630 P.2d 1008 (Alaska App. 1981) . . . . . . 68

Schikora v. State, 652 P.2d 473 (Alaska App. 1982) . . . . . 28

Schmid v. State, 615 P.2d 565 (Alaska 1980) . . . . . . . 31, 35

Sheppard v. Maxwell, 384 U.S. 333 (1966) . . . . . . . . . 61

Sledge v. State, 763 P. 1364 (Alaska App. 1988) . . . . . . 97

Snyder v. State, 585 P.2d 229 (Alaska 1978) . . . . . . . . 28

Spain v. Rushen, .883 F.2d 712 (9th Cir. 1989) . . . . . . . 97

State v. Brash, 512 A.2d 1375 (R.I. 1986) . . . . . . . . . 93

State v. Campbell, 711 P.2d 1357 (Mont. 1985) . . . . . . . 50

State v. Davenport, 510 P.2d. 78 (Alaska 1973),
    after remand, 515 P.2d 377 (Alaska 1972) . . . . 19, 20, 22

State v. Dunn, 246 S.E.2d 245 (W.V. App. 1978) . . . . . . 91

State v. Glass, 583 P.2d 872 (Alaska 1978) . . . . 6, 14, 17, 18

State v. Grief, 791 P.2d 627 (Alaska App. 1990) . . . . . . . 3

State v. Jones, 706 P.2d 317 (Alaska 1985) . . . . . . . . . 39

State v. Malkin, 722 P.2d 943 (Alaska 1986) . . . . 8, 18, 20-26
                                                 28, 32, 35, 38

State v. Moves Camp, 286 N.W.2d 333 (S.D. 1979) . . . . . . 26

State v. Ranieri, 414 A.2d 1094 (R.I. 1991) . . . . . . . 50, 51

State v. Schoffner, 811 P.2d 548 (Mont. 1991) . . . . . . . 49

State v. Thetford, 745 P.2d 496 (Wash. 1987) . . . . . . . 27

State v. Witwer, 642 P.2d 828 (Alaska App. 1982) . . . . 33, 39

Stern v. State, 827 P.2d 442 (Alaska App. 1992) . . . . . . 5, 96

Stovall v. Denno, 388 U.S. 293 (1967) . . . . . . . . . . . 47

Stringer v. State, 491 So.2d 2837 (Miss. 1986) . . . . . . . 93

- x -

**Page**

U.S. v. Boyce, 601 F.Supp. 947 (D. Minn. 1985) . . . . . . . 22

U.S. v. Chesher, 678 F.2d 1353 (9th Cir. 1982) . . . . . . . 25

U.S. v. Cortina, 630 F.2d 1207 (7th Cir. 1980) . . . . . . . 22

U.S. v. Ippolito, 774 F.2d 1482 (9th Cir. 1985) . . . . . . . 22

U.S. v. Johns, 851 F.2d 1131 (9th Cir. 1988) . . . . . . . 25

U.S. v. Kiser, 716 F.2d 1268 (9th Cir. 1983) . . . . . . . 25

U.S. v. Namer, 680 F.2d 1088, 1094 (5th Cir. 1982) . . . . . 22

U.S. v. Redmond, 652 F.Supp. 747 (E.D. Cal. 1985) . . . . . . 22

U.S. v. Stanert, 762 F.2d 775 (9th Cir. 1985),
    amended, 769 F.2d 1410 (9th Cir. 1985) . . . . . . . . 25

U.S. v. Stout, 641 F.Supp 1074 (N.D. Cal 1986) . . . . . . . 22

United States v. Abascal, 564 F.2d 821 (9th Cir. 1977),
    cert. denied, 435 U.S. 942 (1977) . . . . . . . . . . 77

United States v. Bagley, 473 U.S. 667 (1985) . . . . . . . 97

United States v. Barger, 931 F.2d 359 (6th Cir. 1991) . . . . 87

United States v. Condo, 782 F.2d 1502 (9th Cir. 1986) . . . . 3

United States v. Duprey, 895 F.2d 303 (7th Cir. 1989),
    cert. denied, 495 U.S. 906 (1989) . . . . . . . . . . 48

United States v. Elliott, 893 F.2d 220 (9th Cir. 1990) . . . 3

United States v. Estrada-Lucas, 651 F.2d 1261
    (9th Cir. 1980) . . . . . . . . . . . . . . . . . . 87

United States v. Givens, 767 F.2d 574 (9th Cir. 1995) . . . . 4

United States v. Hart, 344 F.Supp. 522 (E.D.N.Y. 1971) . . . 87

United States v. Hernandez, 937 F.2d 1490 (9th Cir. 1991) . . 3

United States v. Koenig, 856 F.2d 843 (7th Cir. 1988) . . . . 27

United States v. Lopez, 803 F.2d 969 (9th Cir. 1986) . . . . 5

Ex. 3, p. 11

**Page**

<u>United States v. Lynn</u>, 856 F.2d 430 (1st Cir. 1988) . . . . .   87

<u>United States v. McAllister</u>, 18 F.3d 1421 (7th Cir. 1994) . .   27

<u>United States v. Monsour</u>, 893 F.2d 126 (6th Cir. 1990) . . .   50

<u>United States v. Motz</u>, 936 F.2d 1021 (9th Cir. 1991) . . . .    4

<u>United States v. Partin</u>, 493 F.2d 750 (5th Cir. 1974),
     <u>cert</u>. <u>denied</u>, 434 U.S. 903 (1977) . . . . . . . . . . .   98

<u>United States v. Rule</u>, 594 F.Supp. 1223 (De. Me. 1984) . . .   36

<u>United States v. Tabacca</u>, 924 F.2d 906 (9th Cir. 1991) . . .    4

<u>United States v. Walther</u>, 652 F.2d 788 (9th Cir. 1981) . . .   27

<u>Watson v. State</u>, 387 P.2d 289 (Alaska 1963) . . . . . . . . .   77

<u>Wiman v. Powell</u>, 293 F.2d 605 (5th Cir. 1961) . . . . . . . .   98

<u>Wong Sun v. United Stated</u>, 371 U.S. 471 (1963) . . . . .  31, 35


**Constitutional Provisions**

Amendment VI, United States Constitution . . . . . . . . . .   61

Art. I, §11, Alaska Constitution . . . . . . . . . . . . .   61

Art. I, §14, Alaska Constitution . . . . . . . . . . . . .   20


**Alaska Statutes**

AS 22.07.020 . . . . . . . . . . . . . . . . . . . . . . .    1

AS 22.10.040 . . . . . . . . . . . . . . . . . . . . . . .   62

Ex. 3, p. 12

**Page**

**Rules**

Appellate Rule 202 . . . . . . . . . . . . . . . . . 1

Appellate Rule 204 . . . . . . . . . . . . . . . . . 1

Appellate Rule 214 . . . . . . . . . . . . . . . . . 1

Criminal Rule 18(g) . . . . . . . . . . . . . . . . 62

Criminal Rule 19 . . . . . . . . . . . . . . . . . 62

Evidence Rule 401 . . . . . . . . . . . . . . . . 50, 68

Evidence Rule 402 . . . . . . . . . . . . . . . . . 68

Evidence Rule 403 . . . . . . . . . . . . . . 50, 51, 68

Evidence Rule 404(b) . . . . . . . . . . . . . . . . 68

Evidence Rule 613 . . . . . . . . . . . . . . . . 68, 80

Evidence Rule 801(c) . . . . . . . . . . . . . . . . 76


**Other Authorities**

2 LaFave, <u>Search and Seizure</u>, §4.4(b) (2nd Ed. 1987) . . . . 26


Wright, <u>Federal Practice and Procedure: Criminal</u>,
    § 670 (2d ed. 1982) . . . . . . . . . . . . . . . . 29, 38

Ex. 3, p. 13

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES RELIED ON

### Constitutional Provisions

Amendment VI, United States Constitution provides:

**Right to speedy trial, witnesses, etc.** In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusations; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

Art. I, §11, Alaska Constitution

**Rights of Accused.** In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record. The accused is entitled to be informed of the nature and cause of the accusation; to be released on bail, except for capital offenses when the proof is evident or the presumption great; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

Art. I, §14, Alaska Constitution

**Searches and Seizures.** The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

### Alaska Statutes

Alaska Statute 22.07.020 provides in pertinent part:

_Jurisdiction._ (a) The court of appeals has appellate jurisdiction in actions and proceedings commenced in the superior court involving:

- xiv -

(1)   criminal proceedings;

* * * *

(b)   The court of appeals has jurisdiction to hear appeals of sentences of imprisonment imposed by the superior court on the grounds that the sentence is excessive or too lenient and, in the exercise of this jurisdiction, may modify the sentence as provided by law and the state constitution.

(c)   The court of appeals has jurisdiction to review (1) a final decision of the district court in an action or proceeding involving criminal prosecution, post-conviction relief, extradition, probation and parole, habeas corpus or bail; and (2) the final decision of the district court on a sentence imposed by it.  In this subsection "final decision" means a decision or order, other than dismissal by consent of all parties, that closes a matter in the district court.

(d)   An appeal to the court of appeals is a matter of right in all actions and proceedings within its jurisdiction except that (1) the right of appeal to the court of appeals is waived if an appellant chooses to appeal the final decision of the district court to the superior court; and (2) the state has no right of appeal in criminal cases except to test the sufficiency of the indictment or information or to appeal a sentence on the ground that it is too lenient.

Alaska Statute 22.10.040 provides:

Change of Venue.  The superior court in which the action is pending may change the place of trial in an action from one place to another place in the same judicial district or to a designated place in another judicial district for any of the following reasons:

(1) when there is a reason to believe that an impartial trial cannot be had;

(2) when the convenience of witnesses and the ends of justice would be promoted by the change;

(3) when for any cause the judge is disqualified from acting, but if the judge of another judicial district is assigned to try the action, no change of place of trial need be made;

(4) if the court finds that the defendant will be put to unnecessary expense and inconvenience, and if the court finds that the expense and inconvenience were intentionally caused, the court may assess costs against the plaintiff.

- xv -

**Rules**

Criminal Rule 18(g) provides:

RULE 18. VENUE:  PLACE OF TRIAL

(g) Change of Venue.  Any other motion for a change of venue shall be determined under the standards listed in AS 22.10.040.

Criminal Rule 19 provides:

RULE 19. CHANGE OF VENUE--APPLICATION TO COURT

All applications for change of place of trial in the cases provided by AS 22.10.040 shall be made by motion, supported by affidavit, upon five days' notice to the other party.  In the event that a change of place of trial shall be ordered, the clerk of the court in which the case is pending shall transmit to the clerk of the court to which the proceeding is transferred all papers in the proceeding, or duplicates thereof, and the prosecution shall continue in that court.

Evidence Rule 401 provides:

RULE 401. DEFINITION OF RELEVANT EVIDENCE

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Evidence Rule 402 provides:

RULE 402. RELEVANT  EVIDENCE  ADMISSIBLE--EXCEPTIONS--
         IRRELEVANT EVIDENCE INADMISSIBLE

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States or of this state, by enactments of the Alaska Legislature, by these rules, or by other rules adopted by the Alaska Supreme Court. Evidence which is not relevant is not admissible.

Evidence Rule 403 provides:

> RULE 403. EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME
>
> Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Evidence Rule 404(b) provides:

> RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT--EXCEPTIONS--OTHER CRIMES
>
> (b) Other Crimes, Wrongs, or Acts.
>
> (1) Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> (2) In a prosecution for a crime involving a physical or sexual assault or abuse of a minor, evidence of other acts by the defendant toward the same or another child is admissible if admission of the evidence is not precluded by another rule of evidence and if the prior offenses
>
> > (i) occurred within the 10 years preceding the date of the offense charged;
> >
> > (ii) are similar to the offense charged; and
> >
> > (iii) were committed upon persons similar to the prosecuting witness.
>
> (3) In a prosecution for a crime of sexual assault in any degree or attempt to commit sexual assault in any degree, evidence of other sexual assaults or attempted sexual assaults by the defendant against the same or another person is admissible if the defendant relies on a defense of consent.

Evidence Rule 613 provides:

RULE 613.  PRIOR   INCONSISTENT   STATEMENTS--BIAS   AND
            INTEREST OF WITNESSES

(a) General Rule.  Prior statements of a witness inconsis-
tent with his testimony at a trial, hearing or deposition, and
evidence of bias or interest on the part of a witness are
admissible for the purpose of impeaching the credibility of a
witness.

(b) Foundation Requirement.  Before extrinsic evidence of
a prior contradictory statement or of bias or interest may be
admitted, the examiner shall lay a foundation for impeachment
by affording the witness the opportunity, while testifying, to
explain or deny any prior statement, or to admit, deny, or
explain any bias or interest, except as provided in subdivi-
sion (b)(1) of this rule.

(1) The court shall permit witnesses to be recalled
for the purpose of laying a foundation for impeachment if
satisfied that failure to lay a foundation earlier was
not intentional, or if intentional was for good cause;
even if no foundation is laid, an inconsistent statement
may be admitted in the interests of justice.

(2) In examining a witness concerning a prior state-
ment made by the witness, whether written or not, the
statement need not be shown nor its contents disclosed to
the witness at that time, but on request the same shall
be shown or disclosed to opposing counsel.

Evidence Rule 801(c) provides:

RULE 801. DEFINITIONS

The following definitions apply under this article:

(c) Hearsay.  Hearsay is a statement, other than one made
by the declarant while testifying at the trial or hearing,
offered in evidence to prove the truth of the matter asserted.

## STATEMENT OF JURISDICTION

Jon Woodard appeals from the Judgment and Commitment of the Superior Court, Third Judicial District, entered September 24, 1993, by the Honorable Karen L. Hunt.  R. 3309-3311.  Prior to entry of this order, appellant filed motions for a new trial (NTM-1 and NTM-2).  R. 2732-2748, 2750-2825.  On October 11, 1993, the court denied NTM-1 (R. 3342-3350), and on December 14, 1993, the court denied NTM-2.  R. 3360-3409.  Notice of Appeal was timely filed January 7, 1994.  R. 3419-3421.

This Court has jurisdiction pursuant to AS 22.07.020. This appeal is prosecuted as a matter of right pursuant to Alaska Rules of Appellate Procedure 202, 204, and 214.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the trial court cause reversible error when it denied appellant's S-1, Motion to Suppress Evidence and Statements: Unconstitutional Searches and Seizures?

2.    Did the trial court cause reversible error when it denied appellant's S-3 Motion to Suppress Pretrial and In-court Identification as it applied to identification of Mr. Woodard by Robin Conaway?

3.    Did intensive pretrial publicity so permeate the community that a change of venue was required?  In the alternative, did the trial court's refusal to grant Mr. Woodard's challenge for cause or for additional peremptory challenges violate his right to an impartial jury?

- 1 -

4.    Did rulings which improperly excluded evidence necessary to the defense, together with rulings which improperly admitted evidence damaging to Mr. Woodard, deny appellant a fair trial?

A.    Where the trial court admitted the first of six surreptitiously tape-recorded conversations between Mr. Woodard and David VanHousen, should it have also other admitted the other five taped conversations to show Mr. Woodard's and Mr. VanHousen's states of mind?

B.    Did the trial court err when it prohibited the defense from presenting a portion of a videotaped interview of David VanHousen where police pressured and threatened him to obtain statements from him incriminating appellant?

C.    Should evidence that Sean Pierce and David VanHousen took polygraph exams as required by their co-operation agreements have been admitted at trial where their agreements were admitted as evidence?

D.    Should the trial court have admitted as evidence newspaper photographs of Mr. Woodard after his arrest to rebut his post-arrest identification by Robin Conaway?

E.    Should the trial court have excluded a videotape of Mr. Woodard showing him repeatedly firing a shotgun, which was wholly unrelated to this trial?

F.    Should the trial court have granted a mistrial when a critical state's witness violated a protective order and the jury heard more bad character evidence about Mr. Woodard?

- 2 -

5.    Did the trial court deny Mr. Woodard his constitutional right to be presumed innocent and to participate in his defense when it required him to go to pretrial hearings and trial shackled hand and foot?

6.    Did the trial court err when it denied the post-trial defense motion for disclosure or for in camera review of psychotherapy records of Carrs employees to determine whether Mr. Woodard was entitled to a new trial?

## STANDARD FOR REVIEW

1.    The trial court's decision on historical facts is to be reversed if it was clearly erroneous. State v. Grief, 791 P.2d 627, 631 (Alaska App. 1990). Whether there was probable cause in a Franks setting is subject to de novo review. United States v. Elliott, 893 F.2d 220 (9th Cir. 1990). Inquiry into alleged misstatements and omissions, including materiality, made in support of a search warrant are to be reviewed de novo. United States v. Hernandez, 937 F.2d 1490, 1494 (9th Cir. 1991); United States v. Condo, 782 F.2d 1502, 1506 (9th Cir. 1986).

No search warrant should issue unless there is probable cause to believe evidence of crime will be found at the place to be searched. Chilton v. State, 611 P.2d 53 (Alaska 1980). The resolution of doubtful or marginal cases should largely be determined on review by the preference accorded to warrants. Keller v. State, 543 P.2d 1211 (Alaska 1975). This court is to

- 3 -

review <u>de</u> <u>novo</u> the trial court's finding of probable cause.  <u>United</u>
<u>States v. Motz</u>, 936 F.2d 1021, 1023 (9th Cir. 1991).

Any error is a constitutional violation and is reversible
unless proved harmless beyond a reasonable doubt.  <u>Chapman v.</u>
<u>California</u>, 386 U.S. 18 (1967).

2.   The constitutionality of pretrial identification
procedures is subject to <u>de</u> <u>novo</u> review.  <u>United States v. Givens</u>,
767 F.2d 574, 580 (9th Cir. 1995).  Any error is a constitutional
violation and is reversible unless proved harmless beyond a
reasonable doubt.  <u>Chapman v. California</u>, 386 U.S. 18 (1967).

3.   Questions of change of venue, challenge of jurors for
cause, and peremptory challenges of jurors are subject to a abuse
of discretion standard.  <u>Jerrel v. State</u>, 756 P.2d 301, 303 (Alaska
App. 1988); <u>United States v. Tabacca</u>, 924 F.2d 906, 913 (9th Cir.
1991).   Error is reversible because it denies the right to an
impartial jury.  <u>Jerrel v. State</u>, <u>supra</u>.

4.   The abuse of discretion standard ordinarily applies
to  trial  court  rulings  concerning  the  admissibility  and/or
exclusion of evidence. <u>Frink v. State</u>, 597 P.2d 154 (Alaska 1979);
<u>Amarok v. State</u>, 671 P.2d 882, 883 (Alaska App. 1983); <u>Loesche v.</u>
<u>State</u>, 620 P.2d 646, 651 (Alaska 1980).

Where, as here, "the superior court's refusal to admit
[such evidence] did, in fact, substantially limit [appellant's]
opportunities to prove his innocence affirmatively, the due process
right to a fair trial would have been denied him." <u>Keith v. State</u>,
612 P.2d 977, 982-83 (Alaska 1980).

5.    Whether a defendant is to be subjected to physical restraints is subject to an abuse of discretion standard.  Stern v. State, 827 P.2d 442 (Alaska App. 1992).

6.    Whether to grant a motion for new trial is subject to an abuse of discretion standard.  United States v. Lopez, 803 F.2d 969, 977 (9th Cir. 1986).

## STATEMENT OF THE CASE

On June 8, 1992, a lone gunman robbed the Aurora Village Carrs store.  The gunman disguised his identity by covering his face with a ski mask. Tr. 3037, 3082, 3101.  He hid his eyes behind sunglasses.  Tr. 3028, 3107, 3124.  He wore a cap.  Tr. 3058, 3543.

At the same time the gunman approached the manager's booth to rob the store, Loomis security guard Terrence Becker was at the booth to pick up the previous day's proceeds and to deliver small bills for change.  Tr. 3015-20.  A number of Carrs employees were also in the booth.  Tr. 3047-48, 3021-23, 3072, 3098.

The robber jumped or climbed up on the front door of the booth, stuck his gun over the top of it and demanded all the money. Tr. 3022, 3031, 3076, 3100.  When Mr. Becker spotted the robber, he started to draw his own weapon.  The gunman shouted, "Don't do it, don't do it."  A shot rang out.  Tr. 3023, 3102.  The gunman had fatally shot Mr. Becker.  Tr. 3078-79, 3607-09.  The gunman went inside the booth, grabbed the money, and fled the store, using a back entrance.  Tr. 3080-81, 3104, 3194-95. 3540-41.

Many people saw the gunman.  When police responded to the scene, they asked the eyewitnesses to describe him.  Some could offer no description at all.  Tr. 3107.  Other descriptions varied greatly.  Some said he had a very light complexion.  Tr. 3030, 3232.  Others said he was medium to dark.  Tr. 3162.  Still others could not tell his race.  Tr. 3060.  Some said he had a mustache. Tr. 3086.  Some said he was about 5'10" to 6' tall.  Tr. 3040-41, 3296-3306.  Some said he was taller.  Tr. 3123, 3160,3543-55, 7684-86.  Some said he was shorter.  Tr. 3185, 3229, 7662.  Some said he was very tall and thin.  Tr. 3252.  Some said he had coal black hair.  Tr. 3035.  Others said he had blond/brown hair. Tr. 3231.  See R. 271-76 for a summary of all witness descriptions.

Within two days police focused their investigation on Jon Woodard, to the exclusion of other suspects.  Tr. 145.  They did this because of a man named David VanHousen, a Carrs employee suspected of the crimes.  R. 427.  In a police interview on June 10th, at first Mr. VanHousen insisted that he did know anything about them.  When police voiced their doubts about his statement, he changed his story.  He still insisted that he was not involved but claimed that Mr. Woodard was the perpetrator.  R. 635-76.

On June 10 and 11, 1992, the state presented testimony to obtain a Glass warrant (SW 92-915) to surreptitiously record conversations between Mr. VanHousen and Mr. Woodard.  Police then recorded six conversations between the two men.  R. 548-795.

- 6 -

On June 16, 1992, the state obtained five additional warrants. Police used them to search Mr. Woodard (SW 92-133), a vehicle he used (SW 92-135), his residence (SW 92-134), and to place a pen register (SW 92-131) and a calling line identifier (SW 92-132) on his telephone. R. 797-882. Later that same day, the state went back to court for another warrant (SW 92-919) to search through the residence of one Karl Bohlin. R. 890-958.

On June 17, 1992, the state was back in court seeking warrants for the surreptitious recording of conversations between Karl Bohlin and an individual named Sean Pierce (SW 92-136), between Mr. Bohlin and Mr. Woodard (SW 92-137), and to further search Mr. Woodard's residence (SW 92-138). R. 962-1079.

Subsequently, on June 19, 1992, the federal government obtained a federal warrant (A92-141 MJ) to conduct yet a third search of Mr. Woodard's residence. R. 304-13. On June 22, 1992, police and prosecutors returned to court to obtain warrants to record conversations between Mr. Pierce and Mr. VanHousen (SW 92-144), head hairs and palm prints from Mr. Woodard (SW 145), and UPS records (SW 92-146). R. 1108-1197.

During the three searches of Mr. Woodard's residence, police seized a huge number of items, many of which were introduced at his trial. They included a police scanner the state claimed was used during the robbery, a self-protection vest supposedly worn by the robber (Tr. 7024, 7107), express mail receipts showing items ordered the day after the robbery, supposedly with proceeds from

the robbery (Tr. 7024), several firearms supposedly purchased with proceeds from the robbery (Tr. 7060-72), a marijuana grow operation (Tr. 7263), plastic Safeway grocery bags likes those used to store the robbery proceeds found at Karl Bohlin's house (Tr. 6813), a gun case connected by Mr. Bohlin to efforts to hide the money (Tr. 6818), and Mr. Woodard's bank records.  Tr. 7347-7435.

Mr. Woodard was indicted for murder in the first degree (AS 11.41.100(a)(1)(A) (Count I)), murder in the second degree (AS 11.41.110(a)(3) (Count II)), and robbery in the first degree (AS 11.41.500(a)(1) and AS 11.16.110(2)(B) (Count III)).  R. 23-27.[1]

Prior to trial, Mr. Woodard filed a number of motions to suppress.  Relevant to this appeal are S-1 and S-3.  S-1 sought suppression of evidence taken as a result of the issuance of the state and federal search warrants.  R. 162-314, 1365-1506, 1792-93, 2085-92.  In this motion, among other grounds, the defense set out repeated violations of the Franks/Malkin rule that misstatements and omissions in the testimony used to obtain search warrants invalidate evidence seized pursuant to them.  The trial court refused to grant Mr. Woodard an evidentiary hearing in which to challenge the veracity of witnesses on whose testimony the search warrants were based (R. 1509-45), and refused to grant a defense request reconsider its ruling.  R. 1546-1632, 1661-71; Tr. 14.

---

[1]  Other counts of the indictment which charged Mr. Woodard with different armed robberies were severed prior to trial and are not the subject of this appeal.  Other counts charged David VanHousen and Sean Pierce with crimes and are not the subject of this appeal.

- 8 -

S-3 challenged the out-of-court and in-court identification testimony of proposed witnesses, including Robin Conaway. R. 28-29, 37-44, 67-78, 1329-47, 2031. Immediately after the robbery/shooting, Ms. Conaway gave a description of the shooter which did not match Mr. Woodard in many important aspects. Then Ms. Conaway saw a full-length color photo of Mr. Woodard, handcuffed and chained to another prisoner, which appeared in the Anchorage Daily News on June 19, 1992. After seeing the photo and reading an article which accompanied it, she claimed she recognized Mr. Woodard as the shooter. Several months later she gave another description of the shooter to the police. This time her description matched Mr. Woodard as seen in the photo and described in the article. The trial court permitted her to testify. R. 2319-46.

Mr. Woodard also filed pleadings which sought the admission of bad acts of trial witnesses. E-1 set out generally the controlling law on admission of this evidence. R. 81-93. E-2 urged admission of extrinsic evidence of prior inconsistent statements of the state's cooperating witnesses. R. 94-101. E-3 sought to admit evidence that cooperating witnesses Pierce and VanHousen took polygraph exams as required by their cooperation agreements. R. 1672-1790, 2042-84, 2131-51, 2225-51. The trial court rejected these motions. As to E-3, it also rejected the defense request that, at a minimum, the polygraph evidence was admissible to show the witnesses' motive to testify as the prosecution wanted them to because they were at risk of losing

- 9 -

extremely favorable plea agreements and to show pressures put on them to incriminate Mr. Woodard.  R. 2305-23.

Recognizing the extensive media coverage of the Carrs robbery/shooting, and the prosecution of Mr. Woodard for those crimes, as well as for three other robbery charges and a federal drug charge, would make it impossible for him to receive a fair trial in Anchorage, Mr. Woodard filed VEN-1, a motion to change venue or, alternatively allow for jury sequestration and additional peremptory challenges.  R. 102-154, 1348-64.  The court refused to change venue.  R. 1634-49.

Although Mr. Woodard posed no threat of violence or escape, the trial court denied Mr. Woodard's P-2 motion that he not be shackled through his trial.  R. 316-21, 365-75, 2172-76. Instead, the court forced him to go through lengthy pretrial hearings and a two and one-half month trial shackled hand, foot, and with "belly chains", having determined that such restraints were the "usual way" in the Alaska Court System.  R. 2174.

The constitutional violations which permeated this entire jury trial started during jury selection.  Potential jurors Sandra Beittel-Huff and Kathleen Young revealed facts which showed they could not be fair and impartial jurors.  Based on their statements, the defense challenged each for cause.  Tr. 2031-50, 2650-62.  The court denied both challenges, and the defense was forced to execute a peremptory challenge against each of them.  Tr. 2052, 2666-73, 2764-65.  In addition, the trial court refused a defense request

- 10 -

for additional peremptory challenges.  Tr. 2743-53.

 After it convinced the trial court to deny S-1 and permit it to play surreptitiously tape-recorded conversations between cooperating witness VanHousen and Mr. Woodard, the state played at trial only the first of the six conversations.  The court refused the defense request (R. 2546-99) that, to show the states of mind of both Mr. VanHousen and Mr. Woodard, the defense was entitled to have the jury hear the other five conversations.  R. 2627-34.

 At trial the court excluded other key defense evidence. During testimony by Robin Conaway,  the court refused to permit the defense to show the jury newspaper photographs which rebutted her post-arrest identification.  Tr.3851-54.  During testimony by Mr. VanHousen, the court refused to admit a videotape which showed the pressure put on him by police to incriminate Mr. Woodard. Tr. 5652-60.

 During trial, the court admitted highly prejudicial evidence of other bad acts by Mr. Woodard.  It admitted the portion of Exhibit 95, a videotape of Mr. Woodard, which showed him repeat-edly firing a shotgun, a weapon wholly unrelated to this trial. Tr. 3575-88.  It rejected a defense application for a mistrial when state's witness Sean Pierce violated a protective order and the jury heard more bad character evidence.  Tr. 4505-24.

 The trial evidence increasingly pointed to the likelihood that a man named Robert Kane was the Carrs robber/shooter.  The evidence consisted of Mr. Kane's contacts with cooperating witness

Karl Bohlin shortly before and after the robbery when Mr. Kane paid off Mr. Bohlin in the amount of $4500, Mr. Kane's financial need for large sums of money right around the time of the robbery, and his disappearance not long after it occurred.    Mr. Kane was Caucasian, about 6'2" - 6'3", and weighed over 200 pounds. Tr. 6007-21, 6090, 6109, 6399, 6438-43, 6467, 6760, 7851-54, 7863-67, 7918, 7919.

     In the course of jury deliberations, it became very clear that the extremely prejudicial publicity which occurred pretrial, continued throughout the trial itself, and reached its peak during deliberations, had tainted the jury.    During deliberations, an employee of a local hotel where the jury was sequestered confronted a member of the jury and talked about the case with her.    The defense had no choice but to excuse this juror and one other and have Mr. Woodard's case decided by only ten jurors.    This unfortunate encounter was the inevitable result of requiring this case to be tried in Anchorage where these notorious crimes occurred.

     The jury convicted Mr. Woodard of Murder in the Second Degree (Count II), Robbery in the First Degree (Count III) (a conviction subsequently vacated by the court),[2] and acquitted him of Murder in the First Degree (Count I).    R. 2729-31.

     At a post-trial restitution hearing, the defense learned for the first time that three Carrs employees received psycho-

_____

     [2] This issue is the subject of a separate cross-appeal filed by the state in State v. Woodard, Ct. App. No. A-5217.

therapy within days of the robbery-homicide.  The defense sought disclosure of the employees' identities to ascertain whether they testified against Mr. Woodard at grand jury or at trial.  If they had, he sought disclosure of their records.  The defense pointed out the timing of the therapy sessions, which occurred both before and after the arrest and public accusation of Mr. Woodard as the gunman, made disclosure of the information material.  R. 3314-27, 3356-59.  The court rejected this application.  R. 3415-17.

This appeal follows.

Ex. 3, p. 31

## ARGUMENT

I.  **THE TRIAL COURT CAUSED REVERSIBLE ERROR WHEN IT DENIED
    JON WOODARD'S S-1, MOTION TO SUPPRESS EVIDENCE AND
    STATEMENTS: UNCONSTITUTIONAL SEARCHES AND SEIZURES.**

A.  **ISSUANCE OF GLASS[3] WARRANT SW 92-915 WAS UNCONSTITUTIONAL.**

1.  **The Facts.**

The first search warrant sought by the state on June 10, 1992, was a _Glass_ warrant to surreptitiously monitor conversations between Mr. Woodard and David VanHousen. By this time the state already knew, or at least recklessly disregarded information establishing, that Mr. VanHousen was the inside man on the Carrs robbery and was lying to them about his role. R.170. Nonetheless, falsely, the prosecutor claimed at the search warrant hearing that Mr. VanHousen was a "citizen witness". R. 551. The prosecutor claimed that VanHousen was not promised anything for his cooperation (R. 555, 564-65), when the truth was that he had repeatedly been told nothing would happen to him if he built a case against the shooter. R. 637, 640, 642, 656, 660, 668-73. In addition, police promised Mr. VanHousen they would not arrest him. R. 638.

At the hearing, police played a statement by Mr. VanHousen where he denied he had any involvement in the crime. R. 638, 650. First he stated that none of his friends was involved. R. 640. Later in the same statement he claimed his friend Mr. Woodard committed the crime. R. 648, 651. Throughout, he insisted he was being absolutely honest. R. 640, 645-48, 657, 675.

---

[3]  _State v. Glass_, 583 P.2d 872 (Alaska 1978).

- 14 -

Mr. VanHousen testified in person and committed perjury when he again denied any involvement in the crime. R.176. Falsely, he claimed that he had not been threatened by, nor received promises from, the police. R. 594, 613-14. He also claimed that 4 1/2 years earlier while kidding around, he had commented to Mr. Woodard that it would be easy to rob Carrs. R. 596. He insisted that nothing similar had been said between them since. R. 598-99, 616-17. However, he claimed that he "knew" Mr. Woodard committed the crime because of the kind of person he was. He claimed that he had seen Mr. Woodard with guns in his possession, but did not know whether one was a Glock. R. 605-06. He assured the court he was testifying "as a concerned citizen." R. 623.

Comparison of his testimony at the hearing with his statement to the police a few hours earlier makes clear the two were very inconsistent. He had told the police about a guy he had seen a month ago in the store who was probably the robber. R. 636, 640. He testified that he made his earlier statement which he now claimed was false because it came before the police told him to be honest with them. R. 609. He told the police that he said to his father about the robbery that "no one was supposed to get hurt." R. 639. He testified that he never said that to his father. R. 600. He told the police he did not associate with his friends, including Mr. Woodard, but spent time with his wife. R. 640-41, 643, 649. He testified that he had plans to meet Mr. Woodard the coming weekend. R. 604. He testified he believed Mr. Woodard would discuss the crimes with him, but could state no reason for this belief. R. 612.

Investigator Reeder testified at the hearing. Three times in response to direct questions from the court which stated a particular interest in the answer, he swore that no promises had been made to Mr. VanHousen. R. 564, 565, 566. The court's stated concern was Mr. VanHousen's motive for testifying. The investigator assured the court that Mr. VanHousen's motive was an altruistic feeling "this was very wrong that somebody's life would be taken for money." R. 567. The truth was otherwise.

Investigator Reeder testified that over 20 witnesses had been interviewed. R. 557. Then he testified, falsely, that most of the witnesses described the robber as "over" 6'2", 6'3" tall (R. 558) and, truthfully, that Mr. Woodard was 6'3". He introduced Mr Woodard's driver's license which showed his height as 6'3", his weight at 240 lbs., and his race as Caucasian. R. 563. The truth was most of the fifteen witnesses who described the robber's height estimated it at 6'2" or under. R. 272. In fact, in opening statement, the state's attorney conceded that "the police got quite a varied description of the person who robbed Carrs and killed Terrence Becker. These descriptions varied as to height, as to weight...." Tr. 2836.

In his testimony about the robber, Inv. Reeder omitted many differences between Mr. Woodard and the robber as described by the witnesses. These included differences in complexion, facial hair, and hair length. R. 171, 271-73. In opening statement the prosecutor also said that witnesses "could not give a very good description of the defendant's face." Tr. 2836.

Investigator Baker testified that the weapon used was a 10mm Glock (R. 583), and that Jon Woodard had pawned and redeemed this type weapon a few months before the robbery.  R. 534.

Deceived by the false testimony presented to it, the judge issued the search warrant.  she said that probable cause came from four sources: (1) Mr. Woodard fit the description of the robber; (2) the weapon used was similar to the weapon Mr. Woodard redeemed from the pawn shop; (3) Mr. VanHousen's claim that years earlier he had told Mr. Woodard that it would be easy to rob Carrs; and (4) Mr. VanHousen's opinion about Mr. Woodard's possession of firearms and his capability of committing the offense.  R. 628-31. The judge emphasized the importance to her decision to issue the warrant her conclusion that Mr. VanHousen was a credible, truth-telling witness.  R. 630.

Less than 24 hours later, before the warrant was executed, the state was back in court on this same warrant.  This time Mr. VanHousen had a deal with the state which immunized him for any perjury he committed in his testimony the day before. R. 683-89.  When it had come time for him to wear the Glass wire, Mr. VanHousen did not want to wear it.  Instead, his lawyer met with police and told them that Mr. VanHousen had omitted and/or misstated information told to them.

According to Inv. Reeder, who testified to the search warrant judge on June 11, the only falsehoods were Mr. VanHousen's new claim that Mr. Woodard had mentioned robbing Carrs as recently as late May, 1992, and the fact that Mr. VanHousen had purchased a

- 17 -

gun from Mr. Woodard. R. 696-97. These changes were dismissed by the prosecutor as merely "correcting the record." R. 698-99.

Inv. Reeder testified that Mr. VanHousen said he had lied to the police because he was scared and did not know what to say. R. 697. The truth, withheld from the judge, was that Mr. VanHousen had told the police earlier that day that he felt threatened and intimidated by the officers. R. 180.

When it was Mr. VanHousen's turn to testify, he swore that the only things he had "misstated" in his earlier testimony were that, contrary to his earlier testimony, he had seen Mr. Woodard with a Glock in February when Mr. Woodard was selling him a gun and that Mr. Woodard had mentioned in late May the idea of robbing Carrs. R. 702-07, 713.

The judge found this testimony to be a mere "inconsistency", found there was probable cause, and stated nothing had changed about her prior findings. R. 722-23. Police then used this Glass warrant to tape-record six conversations between Mr. VanHousen and Mr. Woodard. R. 728-95.

2. **The Law.**

    a. **Mr. Woodard was entitled to suppression or, at a minimum, an evidentiary hearing in which to challenge the search warrant on Franks/Malkin grounds.**

The law in Alaska, required by the Alaska Constitution as interpreted by the Alaska Supreme Court, is that courts must investigate the truthfulness of the allegations made to convince them to issue search warrants.

- 18 -

Ex. 3, p. 36

> [The] ... constitutional requirement that
> warrants issue only upon a showing of probable
> cause ... contains the implied mandate that
> the factual representations in the affidavit
> be truthful.   We believe that since search
> warrants issue <u>ex parte</u>, the courts must be
> willing to investigate the truthfulness of the
> material allegations of the underlying affi-
> davit in order to protect against the issuance
> of search warrants based on conjured asser-
> tions of probable cause.   Thus, we believe
> that challenges to the search warrant and
> affidavit may be properly entertained during
> the suppression hearing.

<u>State v. Davenport</u>, 510 P.2d. 78, 82 (Alaska 1973) (footnote

omitted), <u>after remand</u>, 515 P.2d 377 (Alaska 1972). In <u>Davenport</u>,

the court held that a misstatement material to the showing of

probable cause invalidates a warrant and requires suppression of

evidence seized pursuant to it.   That case dealt only with

unintentional misstatements, and reserved for a later case the

issue of whether an intentional falsified statement of a non-

material fact would invalidate a warrant.   <u>Id</u>., 510 P.2d at 82,

n.6.

Subsequently, in <u>Cruse v. State,</u> 584 P.2d 1141 (Alaska

1978), the court explained that material omissions by affiants

should also cause trial courts to invalidate search warrants:

> ... [We] must note that the constitutional
> protection against warrantless invasions of
> privacy is endangered by the concealment of
> relevant facts from the district court issuing
> the warrant.... We believe the court must have
> all the pertinent facts before it in order to
> determine whether there is sufficient properly
> obtained evidence providing probable cause for
> a warrant to issue.

<u>Cruse v. State</u>., 584 P.2d at 1146, (footnote omitted).

Following the decisions in <u>Davenport</u> and <u>Cruse</u>, the

- 19 -

Ex. 3, p. 37

Alaska Supreme Court decided <u>State v. Malkin</u>, 722 P.2d 943 (Alaska 1986). That case addressed the issue left open in <u>Davenport</u>. It decided that intentional misstatements in search warrant applications require automatic suppression. <u>Id</u>. at 946, n.6. However, as in the earlier cases, the court decided that reckless misstatements require the misstatements to be excised and the remainder of the sworn statements to be tested for probable cause. Merely negligent misstatements are not subject to excision. After <u>Malkin</u>, this Court ruled in <u>Latham v. State</u>, 790 P.2d 717, 720 (Alaska App. 1990), that if police knowingly or recklessly withhold material evidence bearing on a testifying informant's truthfulness, the warrant would be declared invalid.

In <u>Malkin</u>, the court relied on Article I, § 14 of the Alaska Constitution to provide greater protection than was allowed under the Fourth Amendment in <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978). <u>Franks</u> held that for both intentional and reckless misstatements, the same test applied, requiring the misstatements to be excised and the sworn statement tested for probable cause.

<u>Malkin</u> also departed from <u>Franks</u> in the nature and weight of the burden placed on a defendant seeking suppression. In federal court, the defense must prove not only the existence of the misstatements, but the mental state, intentional or reckless, of the person who made them. In Alaska state courts, the defense need only prove the existence of misstatements (or omissions) and the burden shifts to the prosecution to show that they were not made intentionally or recklessly. The court explained:

- 20 -

> [W]e decline to follow that portion of the
> <u>Franks</u> rule which places on the defendant the
> full burden of proving that intentional or
> reckless misstatements were made.  It is
> consistent with traditional notions of placing
> burdens of proof that once the defendant has
> shown the affidavit contains material false
> statements, the burden should shift to the
> prosecution to justify these misstatements by
> showing that they were not made intentionally
> or recklessly.  Since it is the police officer
> alone who knows the circumstances under which
> he made the statements in the affidavit, to
> make the defendant prove intent or reckless-
> ness would probably impose an insurmountable
> burden on him.

<u>State v. Malkin</u>, 722 P.2d at 948-49.

In pleadings filed to the trial court, the defense established that the sworn testimony of those seeking the search warrant was filled with false statements and omissions.  Indeed, the defense made a compelling showing that these false statements and omissions were intentionally made.  The defense pointed to the fact that Mr. VanHousen was an accomplice to robbery and murder, and not the concerned citizen informant he, the assistant district attorney, and the police made him out to be to the search warrant judge.  These uncorrected falsehoods provided a wholly inaccurate picture of Mr. VanHousen's veracity, reliability, and reason for cooperating.  The defense also pointed to the actual and implied promises and threats made to him which were misrepresented to the judge.  The defense pointed out the misstatements and omissions concerning the witnesses' description of the robber and the person casing the store before the robbery.  Finally, the defense set out that if recklessly made, the false statements and omissions were material.  As set out above, they went to three of the four reasons

- 21 -

stated by the judge for why she issued the warrant.  R. 185-90.

Following the guidance provided in <u>Davenport</u>, <u>Cruse</u>, <u>Malkin</u>, and <u>Latham</u>, it is clear that the defense made an adequate showing for suppression.  Many other courts have reached exactly this result.  <u>U.S. v. Namer</u>, 680 F.2d 1088, 1094 (5th Cir. 1982); <u>U.S. v. Boyce</u>, 601 F.Supp. 947 (D. Minn. 1985); <u>U.S. v. Cortina</u>, 630 F.2d 1207 (7th Cir. 1980); <u>U.S. v. Redmond</u>, 652 F.Supp. 747 (E.D. Cal. 1985); <u>U.S. v. Ippolito</u>, 774 F.2d 1482 (9th Cir. 1985); <u>U.S. v. Stout</u>, 641 F.Supp 1074 (N.D. Cal 1986).

In a <u>sua sponte</u> order captioned "Notice of Issues", the trial court denied the defense a <u>Franks/Malkin</u> hearing because it concluded that the defendant offered no evidence Mr. VanHousen's testimony at the search warrant hearings was false.  R. 1522-24. As Mr. Woodard pointed out in a Response to Notice of Issues and Motion to Vacate Order, the state, the defense, and the court all knew that Mr. VanHousen had lied to the court at the search warrant hearings when he denied any guilty knowledge of the Carrs robbery/ shooting.  R. 1551-54.  While the state disputed in its opposing pleadings the defense assertion that police and prosecutors knew at the time that Mr. VanHousen lied on June 10 and June 11 during his search warrant testimony, it did not dispute the fact that he lied both days.  R. 480-85, 1371-73.  As the defense pointed out, Mr. VanHousen's subsequent grand jury testimony contradicted his search warrant testimony and established his earlier lies.  R. 1551, citing R. 1563-1608.  In addition, the court knew that Mr. VanHousen had subsequently agreed to plead guilty to robbery and

- 22 -