IN THE COURT OF APPEALS FOR THE STATE OF ALASKA

JON A. WOODARD,                )
                               )
                Appellant,     )
                               )
        vs.                    )
                               )
STATE OF ALASKA,               )
                               )
                Appellee.      )
_____)

Super. Ct. No. 3AN-S92-5238 CR



Case No. A-5187

RECEIVED
DEPARTMENT OF LAW
DEC 19 1995
OFFICE OF SPECIAL PROSECUTIONS
AND APPEALS
ANCHORAGE, ALASKA

APPEAL FROM THE SUPERIOR COURT
THIRD JUDICIAL DISTRICT
HONORABLE KAREN L. HUNT, JUDGE

## APPELLANT'S REPLY BRIEF

Christine S. Schleuss
Law Office of Christine Schleuss
500 L Street, Suite 300
Anchorage, Alaska  99501
(907) 258-7807

Ak. Bar Asso. # 7811132

Filed in the Court of Appeals,
this _17th_ day of November, 1995.

CLERK OF THE APPELLATE COURTS

By: _____
        Deputy Clerk

Ex. 4, p. 1

**CERTIFICATE OF COMPLIANCE WITH VICTIMS' RIGHTS ACT OF 1991**

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140, or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the Court.

Ex. 4, p. 2

## TABLE OF CONTENTS

Page

VICTIMS' RIGHT CERTIFICATE . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . vi

ARGUMENT

I.   MR. WOODARD DID NOT WAIVE BELOW OR INADEQUATELY
     BRIEF TO THIS COURT ANY OF THE ISSUES RAISED IN
     HIS APPEAL . . . . . . . . . . . . . . . . . . . . 1

     A.   INTRODUCTION . . . . . . . . . . . . . . . . . 1

     B.   THIS COURT SHOULD CONSIDER BOTH THE RECORD
          FROM THE PRETRIAL PROCEEDINGS AS WELL AS THE
          TRIAL RECORD WHEN IT DECIDES THE MERITS OF
          THE SUPPRESSION ISSUES . . . . . . . . . . . . 2

     C.   FAILING TO REPEAT VERBATIM IN THE APPELLATE BRIEF
          TESTIMONY AND DOCUMENTS FROM THE RECORD BELOW
          DOES NOT CONSTITUTE WAIVER OF APPELLATE ISSUES . . . 6

     D.   THERE WAS NO WAIVER OF ANY OF THE ISSUES
          PERTAINING TO MR. WOODARD'S CONSTITUTIONAL
          RIGHT TO AN IMPARTIAL JURY . . . . . . . . . . 7

     E.    THE ARGUMENT ON IMPROPER SHACKLING
          (Argument V) WAS ADEQUATELY BRIEFED . . . . . . . . 9

II.  THE STATE'S VERSION OF THE "FACTS" IN
     THIS CASE SHOULD BE VIEWED WITH DISTRUST . . . . . . . . 9

     A.   MISSTATEMENTS IN THE STATE'S VERSION
          OF "THE MURDER AND ROBBERY" . . . . . . . . . . 10

     B.   REFERENCES IN "THE MURDER WEAPON
          -- THE .10 MILLIMETER GLOCK" . . . . . . . . . 11

     C.   "EVENTS LEADING UP TO THE MURDER AND ROBBERY" AND
          IN "EVENTS OCCURRING AFTER THE MURDER AND ROBBERY" 11

III. THE TRIAL COURT CAUSED REVERSIBLE ERROR WHEN IT
     DENIED JON WOODARD'S S-1, MOTION TO SUPPRESS EVIDENCE
     AND STATEMENTS: UNCONSTITUTIONAL SEARCHES AND SEIZURES . 12

**Page**

A.  BECAUSE THE UNCONTESTED EVIDENCE WAS THAT STATE
    AGENT DAVID VANHOUSEN LIED TO THE SEARCH WARRANT
    JUDGE AT THE FIRST TWO SEARCH WARRANT HEARINGS,
    AND HIS LIES WERE INCORPORATED INTO SUBSEQUENT
    HEARINGS, ALL SEARCH WARRANTS SHOULD HAVE BEEN
    SUPPRESSED . . . . . . . . . . . . . . . . . .   12

    1.  There Was Overwhelming, Uncontested
        Evidence That David VanHousen Lied At
        The Search Warrant Hearings.  That
        Being The Case, Judge Hunt Erred When
        She Held That Mr. Woodard Failed To Make
        A Substantial Showing On The Issue Of
        Mr. VanHousen's Veracity . . . . . . . . . .   12

    2.  Judge Hunt Erred When She Required That
        Mr. VanHousen's Intentional Misstatements
        Had to Be Material Before They Were Grounds
        for Suppression . . . . . . . . . . . . . .   14

    3.  Because David VanHousen Was A State
        Agent, His Testimony Is Subject To The
        Franks/Malkin Rule . . . . . . . . . . . . .   17

B.  MR. WOODARD MADE AN ADEQUATE SHOWING OF
    MISSTATEMENTS BY LAW ENFORCEMENT OFFICIALS
    AT THE SEARCH WARRANT HEARINGS TO ENTITLE HIM
    TO A FRANKS/MALKIN EVIDENTIARY HEARING . . . . .   22

    1.  Because There Were Disputed Facts As
        To The Other Misstatements Alleged by
        Mr. Woodard In His Pleadings and Supporting
        Documentation, He Was Entitled to a Hearing  .  22

    2.  Mr. Woodard Should Not Have Been Required
        To Prove The Misstatements Of Law Enforce-
        ment Officials At The Search Warrant Hearings
        Were Made Intentionally Or Recklessly . . . .   24

    3.  Mr. Woodard Should Not Have Been Required To
        Prove That Intentional Misstatements Were
        Material To The Finding Of Probable Cause . .   26

C.  ADMISSION OF THE EVIDENCE SEIZED PURSUANT
    TO THE SEARCH WARRANTS WAS NOT HARMLESS ERROR . . .  28

Ex. 4, p. 4

**Page**

IV.   THE TRIAL COURT CAUSED REVERSIBLE ERROR WHEN IT
      DENIED MR. WOODARD'S S-3 MOTION TO SUPPRESS PRETRIAL
      AND IN-COURT IDENTIFICATION AS IT APPLIED TO
      IDENTIFICATION OF MR. WOODARD BY ROBIN CONAWAY . . . . . 30

V.    FAILURE TO CHANGE VENUE REQUIRES REVERSAL.
      ALTERNATIVELY, REFUSAL TO GRANT CHALLENGES FOR
      CAUSE OR REQUESTS FOR ADDITIONAL PEREMPTORY
      CHALLENGES REQUIRES REVERSAL . . . . . . . . . . . . . . 32

      A.   CHANGE OF VENUE . . . . . . . . . . . . . . . . 32

      B.   CHALLENGES FOR CAUSE/ADDITIONAL CHALLENGES . . . . 38

      C.   CONCLUSION  . . . . . . . . . . . . . . . . . . . 41

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . 43

Ex. 4, p. 5

## TABLE OF AUTHORITIES

**Page**

**Cases**

Atkinson v. State, 869 P.2d 486 (Alaska App. 1994) . . . . . 23

Brandon v. State, 778 P.2d 221 (Alaska App. 1989) . . . . . . 6

Carroll v. United States, 267 U.S. 132 (1925) . . . . . . . 5

Chapman v. California, 386 U.S. 18 (1967) . . . . . . . . 29

D.R.C. v. State, 646 P.2d 252 (Alaska App. 1982) . . . . . 31

Davis v. State, 766 P.2d 41 (Alaska App. 1988) . . . . . . 23

Deal v. State, 626 P.2d 1073 (Alaska 1980) . . . . . . . . 5

Dorman v. State, 622 P.2d 448 (Alaska 1981) . . . . . . . 29

Erickson v. State, 507 P.2d 508 (Alaska 1973) . . . . . . 27

Franks v. Delaware, 438 U.S. 154 (1978) . . . . . . . . 2, 13

Glover v. State, 287 A.2d 333 (Md. App. 1972) . . . . . . 4

Gustafson v. State, 854 P.2d 751 (Alaska App. 1993) . . . . . 27

Hilbish v. State, 891 P.2d 841 (Alaska 1995) . . . . . . . 5

Holden v. State, 602 P.2d 452 (Alaska 1979) . . . . . . . 30

Howe v. State, 611 P.2d 216 (Alaska 1980) . . . . . . . . 30

Jerrel v. State, 756 P.2d 301 (Alaska App. 1988) . . . . . . 40

Ketzler v. State, 634 P.2d 531 (Alaska App. 1981) . . . . . 40

Lewis v. State, 862 P.2d 181 (Alaska App. 1993) . . . . 15, 17

Mallott v. State, 608 P.2d 737 (Alaska 1980) . . . . . 36, 39

Moreau v. State, 588 P.2d 275 (Alaska 1978) . . . . . 4, 5, 21

Nelson v. State, 781 P.2d 994 (Alaska App. 1989) . . . . . 40

Newcomb v. State, 800 P.2d 935 (Alaska App. 1990) . . . . 35, 36

Oxereok v. State, 611 P.2d 913, 919 (Alaska 1980) . . . . . 36

- vi -

**Page**

<u>Oxereok v. State</u>, 611 P.2d 913, 919 (Alaska 1980) . . . . . .   36

<u>Padgett v. State</u>, 590 P.2d 432 (Alaska 1979)   . . . . . . . .   29

<u>People v. Williams</u>, 118 N.W.2d 391 (Mich. App.
     1972), <u>cert.</u> <u>denied</u>, 373 U.S. 909 (1963) . . . . . . . .   4

<u>Plumley v. Hale</u>, 594 P.2d 497 (Alaska 1979) . . . . . . . . .   6

<u>Smaker v. State</u>, 695 P.2d 238 (Alaska App. 1985)  . . . . . .   23

<u>State v. Malkin</u>, 722 P.2d 943 (Alaska 1986) . . . . . . 2, 13, 15
                                                                       21

<u>State v. Glass</u>, 583 P.2d 872 (Alaska 1982)  . . . . . . . .   20

<u>State v. Wickham</u>, 796 P.2d 1354 (Alaska 1990) . . . . . . . . 6

<u>Thiel v. State</u>, 762 P.2d 478 (Alaska App. 1988) . . . . . .   20

<u>U.S. v. Haimowitz</u>, 725 F.2d 1561 (11th Cir. 1984) . . . . . .   21

<u>U.S. v. McAllister</u>, 18 F.3d 1412 (7th Cir. 1994) . . . . . .   19

<u>U.S. v. Mendoza</u>, 574 F.2d 1373 (5th Cir. 1978),
     <u>cert. den.</u> 439 U.S. 988 (1978) . . . . . . . . . . .   22

<u>U.S. v. Shields</u>, 675 F.2d 1152 (11th Cir. 1982) . . . . . .   22

<u>Washington v. United States</u>, 401 F.2d 915
     (D.C. Cir. 1968) . . . . . . . . . . . . . . . . . .   4


   **Rules**

Appellate Rule 212 (c)(8)[b] and [c]   . . . . . . . . . . . . 7

Rule 24(d), Ak.R.Cr.P.  . . . . . . . . . . . . . . . . . .   40


   **Other Authorities**


4 LaFave, <u>Search and Seizure</u>, §11.7(c) (2nd ed. 1987) . . .  4, 5

Ex. 4, p. 7

## ARGUMENT

### I.

### MR. WOODARD DID NOT WAIVE BELOW OR INADEQUATELY BRIEF TO THIS COURT ANY OF THE ISSUES RAISED IN HIS APPEAL

**A.  INTRODUCTION.**

Seeking to avoid appellate court rulings on the merits of the issues raised in Jon Woodard's opening brief, the State protests throughout its brief that the facts or issues set out in Mr. Woodard's brief should not be considered for any number of reasons.

At the same time that it protests that Mr. Woodard failed at some point or other to adequately preserve or brief his facts or issues, the State makes the argument that this Court should adopt a rule that testimony and other evidence elicited at trial which focused on the circumstances surrounding a particular search and seizure should not be considered by this Court when it reviews the trial court's decision on the suppression issue. The State presents its position that this Court should adopt this sweeping new rule, which has never previously been adopted in Alaska, in argument which consists of one paragraph in a footnote. (<u>See</u> State's Br. at 18, n.2.)[1] Apparently, the State is of the view that its own argument, that issues inadequately briefed should not be considered by this Court, does not apply to the State itself but only to other litigants.

---

[1]  The State repeats, but does not discuss nor explain, this same authority at pages 50 and 53 of its brief.

-1-

When this Court reviews for itself the State's claims of waiver below and inadequate briefing here, as well as its claims that this Court should ignore the trial testimony and evidence when it evaluates the search and seizure issues, it will reject all of the claims. Each issue in Mr. Woodard's appellate brief should be decided on the merits by this Court, after it reviews the entire record. Each claim of waiver or inadequate briefing as well as the State's argument about no consideration of the trial record is addressed in this section of Mr. Woodard's reply brief in the order in which the claims appear in the State's brief.

**B.   THIS COURT SHOULD CONSIDER BOTH THE RECORD FROM THE PRETRIAL PROCEEDINGS AS WELL AS THE TRIAL RECORD WHEN IT DECIDES THE MERITS OF THE SUPPRESSION ISSUES.**

This case is not an appropriate vehicle for this Court to use to decide whether to adopt a rule prohibiting consideration of trial testimony on appeal of suppression issues. This is so for a number of reasons. First, to the extent he does so, the reason why Mr. Woodard must rely on the trial testimony to provide facts about the misstatements made to the search warrant judge is because wrongly, the trial judge gave him no Franks/Malkin[2] hearing where the facts could be fully set out. That being the case, he has no choice on appeal but to rely on the bits and pieces of trial testimony about the police awareness of, or reckless disregard for, the fact that Mr. VanHousen lied throughout his testimony at the

---

[2]   Franks v. Delaware, 438 U.S. 154 (1978) and State v. Malkin, 722 P.2d 943 (Alaska 1986).

search warrant hearings.  Similarly, he has no choice but to rely on trial testimony to set out both the misstatements the police themselves made to the search warrant judge as well as their state of mind when they made the misstatements.  At a minimum, he would have been able to present at any hearing the testimony elicited at trial about these matters.  Had he been given the opportunity to address them head-on, he would have elicited more details about these issues.  He should at least be given the opportunity on appeal to rely on the evidence which was elicited at trial.  Thus, a case where the very issue on appeal is the trial court's refusal to grant a hearing, is not an appropriate case for this Court to consider adoption of a rule holding that trial testimony cannot be considered on appeal of suppression issues.

Mr. Woodard took every step available to him to bring to the trial court's attention evidence that Mr. VanHousen and the police made misstatements at the search warrant hearings.  First, he filed the S-1 Motion to Suppress alleging both <u>Franks/Malkin</u> violations and lack of probable cause for the warrants.  After the parties agreed at a status hearing on January 12, 1993, that an evidentiary hearing on motions S-1, S-2, S-3, and D-1 was required, the court scheduled a hearing for February 18-19, 1993. (R. 1547.)

The first Mr. Woodard knew that he was not going to even have an opportunity for a hearing to set out the evidence to support his <u>Franks/Malkin</u> arguments came when he received a copy of the court's order which denied on the merits the <u>Franks/Malkin</u> arguments at the same time it denied the hearing.  (R. 1509-1545.)

-3-

Mr. Woodard immediately moved for reconsideration, which was also denied.  (R. 1546-1558, 1661-1671.)  Included in his request for reconsideration was another request for a <u>Franks/Malkin</u> hearing.  (R. 1546-47.)  Thus, he can hardly be faulted for not having a record from a hearing below to cite to this Court.

The issue whether the appellate court should consider the trial proceedings in deciding suppression issues is complex.  Contrary to the State's bald assertion in its one footnote to address this issue, it was not decided, nor even discussed, by the Alaska Supreme Court in its decision in <u>Moreau v. State</u>, 588 P.2d 275, 180 (Alaska 1978), cited in the State's Br. at 18, n.2.  <u>Moreau</u> simply holds that ordinarily a criminal defendant cannot raise for the first time as plain error on appeal a Fourth Amendment issue he or she did not raise below.  That is not what this case is about.

The only other authorities relied on by the State are a 1962 case from Michigan, <u>People v. Williams</u>, 118 N.W.2d 391 (Mich. App. 1972), <u>cert. denied</u>, 373 U.S. 909 (1963), and a 1979 case from Maryland, <u>Glover v. State</u>, 287 A.2d 333 (Md. App. 1972).  (State's Br. at 18, n.2.)  That is not particularly convincing authority on which to base a sweeping change in appellate practice.  As LaFave recognized in his treatise,[3] there is contrary authority.  In <u>Washington v. United States</u>, 401 F.2d 915, 920 (D.C. Cir. 1968), the court explained that the appellate court should look to the

_____

[3]    4 LaFave, <u>Search and Seizure</u>, §11.7(c) at 521 (2nd ed. 1987).

trial testimony for any adverse effect it might have on admission of disputed items of evidence. In the <u>Washington</u> opinion, the court cited the opinion by the United States Supreme Court in <u>Carroll v. United States</u>, 267 U.S. 132 (1925), where the Court referred to the entire trial record when it reviewed the suppression motion. LaFave noted that <u>Carroll</u> was relied on by federal appellate courts who considered the trial testimony in reviewing suppression issues. LaFave at 519. Without citing <u>Carroll</u> or discussing the issue, this Court likewise used the trial testimony to review a suppression issue in <u>Hilbish v. State</u>, 891 P.2d 841 (Alaska 1995). *NoT clear to me — can use to affirm —*

The State offers no reasons whatsoever for this Court to change from its prior practice. It should not do so. According to the Alaska Supreme Court, the exclusionary rule in Alaska serves two central purposes; (1) deterrence of illegal police conduct, and (2) preservation of judicial integrity. <u>Deal v. State</u>, 626 P.2d 1073, 1081 (Alaska 1980); <u>Moreau</u>, 588 P.2d at 280. It far better serves both purposes for all evidence, including trial evidence, to be relied on when an appellate court decides whether items were illegally obtained.

In addition, any requirement that a suppression issue raised pretrial would have to be relitigated throughout the trial whenever evidence relevant to the suppression issue was introduced would be unworkable. Trials would take twice as long and would be constantly interrupted. Juries would spend more time out of the

*Served or good on review —*

-5-

courtroom while the issues were relitigated than they would spend hearing the trial evidence.

Finally, even if this Court were to change the rule, any change could only be applied prospectively because Mr. Woodard had no notice of such a change in appellate practice. The conditions necessary for nonretroactive treatment of a ruling are as follows:

> (1) the holding is one of first impression, or overrules prior law, and was not foreshadowed in earlier decisions; (2) there has been justifiable reliance on an alternative interpretation of the law; (3) undue hardship would result from retroactive application; and (4) the purpose and intended effect of the hold is best accomplished by prospective application.

Plumley v. Hale, 594 P.2d 497 (Alaska 1979); accord, State v. Wickham, 796 P.2d 1354, 1355 (Alaska 1990).

For the reasons set forth above, any new rule limiting consideration on appeal of suppression issues to the pretrial hearing should not be retroactively applied to Mr. Woodard.

**C.   FAILING TO REPEAT VERBATIM IN THE APPELLATE BRIEF TESTIMONY AND DOCUMENTS FROM THE RECORD BELOW DOES NOT CONSTITUTE WAIVER OF APPELLATE ISSUES.**

The State claims that Mr. Woodard's arguments to this Court should be rejected because it claims that Mr. Woodard attempts to incorporate arguments made in briefs to the trial court, and such an attempt is precluded by Brandon v. State, 778 P.2d 221 (Alaska App. 1989). (State's Br. at 18, n.2.) The only reference to where in Mr. Woodard's brief this error supposedly occurred is an "e.g." reference to page 24 of the brief. That page of the brief does not incorporate arguments made to the trial

- 6 -

court. Instead, as required, it cites to places in the record below where the issues were raised in pleadings below, to places where witnesses testified about matters referenced in the appeal, or to the trial court's rulings. Those cites are required by Appellate Rule 212 (c)(8)[b] and [c] and are entirely appropriate.

If this Court were to adopt a rule that testimony and documents had to be set out as completely as the State claims, Mr. Woodard's brief would have been twice as long. If the Court were to adopt this rule, it would also have to revise Appellate 212(c)(4) to allow for extremely long briefs as a matter or course. Instead, Mr. Woodard correctly referenced the location in the Record and/or transcript of the documents and/or proceedings being discussed in the brief.

**D.    THERE WAS NO WAIVER OF ANY OF THE ISSUES PERTAINING TO MR. WOODARD'S CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY.**

The State asserts Mr. Woodard has "waived" and/or "abandoned" issues as to jury selection. Specifically, the State contends (1) Mr. Woodard has abandoned any claim of error based upon the failure of the trial court to grant his pretrial motion for change of venue by "failing to brief it," (2) that this Court should refuse to consider Mr. Woodard's claims that pretrial publicity was prejudicial based upon the State's perception that Mr. Woodard has failed to provide "record citations" for articles containing the information, and (3) Mr. Woodard has waived any claim of error regarding Juror Young by failing to argue she should have been excused based upon her failure to abide by the court's

admonition not to discuss the case with others.  (State's Br. at
77, 82, 85.)  Each of these contentions is without merit.

Briefing regarding the failure to grant the motion to
change venue is found in Mr. Woodard's opening brief at 10-11,
52-56, and 61-67.  Briefing regarding the issue of Juror Young's
inability to sit as a juror, including her discussions with a
friend subsequent to the court's order not to discuss the case, is
found at 10-11, 56 (inquiry of attorney after being selected to be
in jury pool; challenge for cause citing both Ms. Young's failure
to adhere to the court's admonition not to discuss case and her
inability to be impartial), and at 64-65, and 67 (Ms. Young's state
of mind required her excusal).  In short, Mr. Woodard's brief
rebuts the State's contentions on these matters.

The State's arguments as to failure to cite to the record
regarding the prejudicial nature of the pretrial publicity border
on frivolous.  Citation to the record regarding the media accounts
is contained on page 10.  In addition, as more fully set forth
below regarding the arguments on change of venue, the most cursory
reading of the brief makes clear Mr. Woodard has never limited his
discussions regarding pretrial publicity to analogies to Steven
Seagal.  (Mr. Woodard's Br. at 52-56.)

In opposing Mr. Woodard's initial motion to change venue,
the State specifically agreed some of the articles contained
inadmissible information, agreed with Mr. Woodard and the federal
prosecutors to seal Mr. Woodard's federal court proceedings in an
effort to avoid the necessity of a change of venue in the state

case, and agreed to continue the trial until March, 1993, in an effort to blunt the effect of pretrial publicity. (R. 394-395.)

The State does not dispute that the media accounts surrounding both Mr. Woodard and the commission of the offense are part of the record in this case. At no time prior to this appeal has the State ever argued that the accounts did not contain prejudicial information; in fact, the State has, in the trial court, conceded inadmissible information was contained in some of the news accounts. Nonetheless, the State argues that the failure to set forth the contents of each article in Mr. Woodard's brief amounts to a waiver of any claims regarding the contents of those articles. The record, Mr. Woodard's brief, and the State's own conduct in the trial court bar such an argument. There has been no waiver.

## E.    THE ARGUMENT ON IMPROPER SHACKLING (Argument V) WAS ADEQUATELY BRIEFED.

In his brief, Mr. Woodard set out the Standard of Review (at 5), the facts (at 10), and the law (at 96-97), on which he based his argument. It was in his Statement of Points on Appeal, (R. 3490), and was briefed below (R. 316-21, 365-75). It was adequately preserved and briefed and should be considered by this Court.

## II.

## THE STATE'S VERSION OF THE "FACTS" IN THIS CASE SHOULD BE VIEWED WITH DISTRUST

The State's version of the "facts" in this case makes a good story; but that is all it is, a story. This case is about the

- 9 -

identity of the Carrs robber/shooter. The three individuals who claimed that it was Jon Woodard who planned, committed, and covered up these crimes were admitted perjurers David VanHousen, Sean Pierce, and Karl Bohlin. Of the dozens of citizen witnesses who saw this crime committed, the only one who claimed to identify Jon Woodard as the perpetrator was Robin Conaway, whose purported identification was so unreliable that, for the reasons set out in Part II of Mr. Woodard's opening brief, it should have been excluded from trial. (See Mr. Woodard's Br. at 39-50.) The reason for this appeal is Mr. Woodard's defense that he was not the robber/shooter, and that he would not have been convicted had he been given a fair trial without the reversible errors set out in his opening brief.

A.    MISSTATEMENTS IN THE STATE'S VERSION
      OF "THE MURDER AND ROBBERY".

In its rendition of "facts", the State includes a description of how, step-by-step, the crimes occurred. It describes each step the perpetrator took as he approached the service booth, shot Mr. Becker, and ran away through the store. In the State's version, each step is attributed to Mr. Woodard, and a citation is given to the place in the transcript to support this claimed fact. However, none of the witnesses in the State's transcript cites identified Mr. Woodard as the perpetrator. There was no testimony from any eyewitness that "Jon Arnold Woodard . . . put on a mask" as the State claims. (State's Br. at 3.) No eyewitness testified that "Woodard demanded that someone in the booth open the door" as the State claims. (State's Br. at 3.) No

- 10 -

eyewitness testified that Mr. Woodard committed any of the acts described in page 3 and paragraph one of page 4 of the State's brief. Another claimed "fact" not supported by the record is that no witness testified that out a back door of Carrs was where the perpetrator took off the mask. (State's Br. at 4.)

### B.    REFERENCES IN "THE MURDER WEAPON -- THE .10 MILLIMETER GLOCK".

There was no evidence that a Glock Jon Woodard purchased at a date after Carrs was robbed was purchased with Carrs money. (State's Br. at 5.) The transcript cites at 3402, 3447, 3458-59 do not say that Mr. Woodard shot Mr. Becker as the State claims in its brief at 4-5. The only testimony or evidence of any sort that Mr. Woodard threw the Glock in the river was the claim by admitted perjurer Pierce that he did so. (State's Br. at 5.) There was no "round" found by the police. (State's Br. at 4.) A cartridge case was found. (R. 4160.)

### C.    "EVENTS LEADING UP TO THE MURDER AND ROBBERY" AND IN "EVENTS OCCURRING AFTER THE MURDER AND ROBBERY".

The vast majority of the transcript citations in these sections of the State's "facts" comes from testimony of VanHousen, Pierce, or Bohlin. During trial, evidence came out that they were testifying against Mr. Woodard to save themselves from lengthy prison sentences, and that they made up new lies every time they were caught in their old ones. (Tr. 4555-4583, 4650-4766, 4791-4979, 5032-5054 (cross-examination of Sean Pierce); Tr. 5414-5570,

---

[4]  Tr. 4234 is a citation to the portion of the transcript where the parties discussed Mr. Pierce's plea agreement, and is apparently an erroneous citation. (State's Br. at 6.)

5605-5789, 5854-5870 (cross-examination of David VanHousen); and

Tr. 6086-6171, 6297-6408, 6435-6485 (cross-examination of Karl

Bohlin).)

III.

**THE TRIAL COURT CAUSED REVERSIBLE ERROR WHEN IT DENIED
JON WOODARD'S S-1, MOTION TO SUPPRESS EVIDENCE AND
<u>STATEMENTS: UNCONSTITUTIONAL SEARCHES AND SEIZURES</u>**

A.   **BECAUSE THE UNCONTESTED EVIDENCE WAS THAT STATE
     AGENT DAVID VANHOUSEN LIED TO THE SEARCH WARRANT
     JUDGE AT THE FIRST TWO SEARCH WARRANT HEARINGS, AND
     HIS LIES WERE INCORPORATED INTO SUBSEQUENT HEARINGS,
     <u>ALL SEARCH WARRANTS SHOULD HAVE BEEN SUPPRESSED.</u>**

     1.   **There Was Overwhelming, Uncontested Evidence
          That David VanHousen Lied At The Search
          Warrant Hearings.  That Being The Case,
          Judge Hunt Erred When She Held That Mr. Woodard
          Failed To Make A Substantial Showing On The
          <u>Issue Of Mr. VanHousen's Veracity. (R. 1522-23.)</u>**

The State did not contest below[5], and does not contest

now,[6] that David VanHousen lied throughout his testimony to Judge

Andrews at both search warrant hearings on June 10 and June 11,

1992, the first two hearings held to secure search warrants in this

case.[7]  Nor, indeed could it.  Months before the evidentiary

hearing on March 23, 1993, and months before Judge Hunt issued her

---

[5]   Review of the State's Opposition to Mr. Woodard's S-1
Motion to Suppress reveals that nowhere did the State contest that
Mr. VanHousen lied at these hearings nor did it contest that his
lies were material to the finding of probable cause.  (R. 413-543.)
Mr. Woodard pointed out these concessions by the State to Judge
Hunt in his Reply to the State's Opposition to S-1.  (R. 1371-72.)

[6]   (State's Br. at 34.)

[7]   The circumstances of these two hearings, which were used
to secure SW 92-915, are set out in Mr. Woodard's opening brief at
14-18.

Order of February 11, 1993, refusing to allow Mr. Woodard an evidentiary hearing to challenge the search warrants under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), and <u>State v. Malkin</u>, 722 P.2d 943 (Alaska 1986), (R. 1509-45), and her Order Denying Reconsideration of that ruling, (R. 1661-71), the State and Judge Hunt knew beyond any doubt that Mr. VanHousen had lied. While the parties continue to dispute whether he lied when he implicated Mr. Woodard in the Carrs robbery/shooting, the parties agree the he lied when he repeatedly denied any guilty knowledge of or participation in the Carrs robbery/shooting and when he claimed to merely be testifying as an innocent "concerned citizen". The specific portions of his testimony which were lies were detailed to Judge Hunt. (R. 175-78, 180, 1371-72, 1382, 1550-1554.)

As Mr. Woodard pointed out in his Response to Notice of Issues and Motion to Vacate Order, and Alternatively, Motion to Reconsider Order Issued Sua Sponte dated February 16, 1993, specific evidence of Mr. VanHousen's lies was provided through evidence of subsequent admissions in police statements, and in his transcribed grand jury testimony. (R. 1551-53.) Both of those sources were available to the court, the police statements through accurate summaries in Mr. Woodard's initial motion, and the grand jury transcript as part of the court record, having been tran- scribed by the Alaska Court System in August, 1992. (R. 1551.) In addition, Mr. Woodard pointed out in this pleading that Mr. VanHousen was subsequently indicted for criminal charges connected to the Carrs crimes and had agreed to plead guilty to them, further

- 13 -

establishing that he lied when he testified that he had no involvement in the crimes. (R. 1551.) Finally, Mr. Woodard pointed out that in the same pleading where Judge Hunt denied an evidentiary hearing in part because she decided Mr. Woodard failed to provide proof that Mr. VanHousen's search warrant testimony was false, (R. 1522-23), she recognized that his testimony was false. (R. 1528, discussed by Mr. Woodard at R. 1551.) The same was true of her Notice at 23 where she stated her acceptance of "the discovery that VanHousen did participate in the robbery . . . ," (R. 1531), and her Notice at 24 where she stated, "the nongovernmental witness misled the judge," (R. 1532).

What all this means is that it was error for the trial court to deny Mr. Woodard suppression and/or to deny him an evidentiary hearing because of a conclusion that he did not offer adequate evidence of the <u>undisputed</u> fact that David VanHousen lied during his search warrant testimony. Instead, Judge Hunt should have inquired, and this Court should undertake to inquire now, whether, as a matter of law, Mr. VanHousen's lies mandated that the search warrants be invalidated.

> **2. Judge Hunt Erred When She Required That Mr. VanHousen's Intentional Misstatements Had to Be Material Before <u>They Were Grounds for Suppression.</u>**

Because it is undisputed that Mr. VanHousen lied, that means that he made intentional misstatements in order to attempt to mislead the search warrant judge. When that happens, suppression is required without consideration of whether the intentional

*hiding our involvement*

- 14 -

misstatements were material to the finding of probable cause.[8] _Lewis v. State_, 862 P.2d 181, 186 (Alaska 1993); _Malkin_, 722 P.2d at 946, n.6. This distinction is one of the differences between federal law and Alaska law on the _Franks/Malkin_ issue.

In this regard, Judge Hunt's orders reveal a fundamental misunderstanding of the law regarding intentional misstatements. Throughout the orders, erroneously, for intentional as well as reckless misstatements, she required that they be material before the misstatements were a basis for suppression. Indeed, she required as a preliminary matter for a hearing, that the defendant make a showing that there were intentional or reckless misstatements and that they were material. See court's Notice of Issues at 6, (R. 1511). _See also_ Notice at 12, (R. 1520). Her fundamental misunderstanding of the difference between intentional and reckless misstatements is clear from her conclusion that even if she were to apply _Franks/Malkin_ to Mr. VanHousen, his lie to Judge Andrews where he claimed that he was merely a "concerned citizen" was not grounds for suppression because it was not material to Judge Andrews's finding of probable cause. Notice at 25, (R. 1533).[9] _See_ court's Order Denying Reconsideration where Judge Hunt stated,

---

[8] Although it is not necessary for this Court to decide, nor for the trial court to have decided, whether the intentional misstatements were material, it is worth noting that the State did not contest below, and does not contest here, that the lies in Mr. VanHousen's testimony were material.

[9] As will be set out _infra_ at pages 26-28, Judge Hunt continued with this misunderstanding when she ruled on other misstatements beyond those made by Mr. VanHousen.

incorrectly, that for the defendant to be entitled to a hearing on this issue he had to show that misstatements or omissions were intentional and, among other requirements, that they were "necessary to the issuing court's finding of probable cause." (R. 1663 and also R. 1664.)  Finally, in the court's final Decision and Order on S-1, the court repeated this same error requiring proof that even intentional misstatements had to be material.

Judge Hunt's decision to require intentional misstatements to be material before they were grounds for suppression violated the holding of <u>Malkin</u>.  In that case the Alaska Supreme Court held that intentional misstatements would invalidate a warrant whether or not probable cause would remain after the misstatements were excised.  This Court reasoned:

> A deliberate attempt to mislead a judicial officer in a sworn affidavit deserves the most severe deterrent sanction that the exclusionary rule can provide.  Further, the fact that the officer has lied puts the credibility of the officer and of the entire affidavit in doubt.

<u>Id.</u> at 946.  <u>Accord</u> <u>Lewis v. State</u>, 862 P.2d 181, 186 (Alaska App. 1993).

This Court should correct the trial court's erroneous requirement of materiality for intentional misstatements.  Instead, it should examine whether, in light of the undisputed evidence that Mr. VanHousen lied at both hearings, his lies are grounds for suppression without regard to whether they were material to the court's finding of probable cause.

3.  **Because David VanHousen Was A
    State Agent, His Testimony Is
    <u>Subject To The Franks/Malkin Rule.</u>**

According to the State, the decision whether David
VanHousen's lies at the search warrant hearings are grounds for
suppression of evidence seized pursuant to the search warrants
turns on the legal question of whether Mr. VanHousen should be
treated as a state agent and should be subject to the <u>Franks/Malkin</u>
rule.[10] The reason why this is a legal and not a factual question
is because the extent of his contact with the police during the
time before, during, and after his testimony at the search warrant
hearings is undisputed.[11]  It is undisputed that before Mr.
VanHousen was interviewed by the police about this case on June 10,
1992, he was not working for the police.  It is undisputed that
before Mr. VanHousen testified at the second hearing on June 11, he
had entered into an immunity agreement with the State which

---

[10]  In his opening brief, Mr. Woodard set out the reasons why
Mr. VanHousen's live testimony at the hearings should be subjected
to <u>Franks/Malkin</u> scrutiny regardless of whether he was a state
agent.  (<u>See</u> Mr. Woodard's Br. at 25-26.)

[11]  Because Judge Hunt denied him a <u>Franks/Malkin</u> hearing,
Mr. Woodard had no opportunity to give all the details which caused
Mr. VanHousen to be a state agent.  However, in pleadings he proved
this fact.  <u>See</u> Reply to Opposition to S-1 at 10-12 (R. 1374-76).
Moreover, even without a hearing, the record is filled with
recognition by the State, law enforcement officials, and Judge Hunt
that Mr. VanHousen was, in fact, a state agent.  <u>See</u> Tr. 5227 where
Judge Hunt instructed the trial jury that as matter of law <u>at the
time of the taped statements,</u> "Mr. VanHousen was acting as an agent
for the police, and following their instructions as to what to say
in the conversations. . . ."  <u>See also</u> Tr. 5334-35, 5338-39,
5345-46, and Tr. 5326 (where the prosecutor questioning Mr.
VanHousen referred to him as "working for the police" when he wore
the wire).  A similar statement was made by the F.B.I. agent in his
testimony.  (Tr. 7272.)

required him to actively participate in an ongoing investigation. Under the terms of this written agreement, under the close supervision of Investigator Reeder, Mr. VanHousen was required to testify for the State, to give a recorded statement, to follow all police/prosecution instructions, to wear a wire, to consent to searches, and to submit to polygraph examination. See Agreement dated June 11, 1992. (R. 1415-1421.) The particular nature of this agreement, which meant that Mr. VanHousen was authorized to act for the police as their investigator in contacts with Mr. Woodard, should cause him to be treated as a state agent and not just like any informant. It is undisputed that when Mr. VanHousen engaged Mr. Woodard in tape-recorded conversations in the days following the issuance of SW 91-915, (R. 728-95), he did so at the direction of the police.

        In his opening brief, Mr. Woodard cited and discussed a number of federal and Alaska cases which support his argument that, as a matter of law, at least by the time of the second search warrant hearing, Mr. VanHousen was a state agent. (See Mr. Woodard's Br. at 26-28.) The State seeks to discredit this authority by claiming it is all "inapposite" because Mr. VanHousen, unlike the actors in the other cases, was not acting as a state agent "when he visited Mr. Woodard's home, talked with him, and saw the weapons." (State's Br. at 29.) The State is wrong in its claims as to when a person must be a state agent in order to trigger the protection of Franks/Malkin.

- 18 -

Ex. 4, p. 25