IN THE SUPREME COURT FOR THE STATE OF ALASKA

JON A. WOODARD,                    )   Supreme Court No. S-08917
                                   )   Court of Appeals No. A-5187
                 Petitioner,       )   Trial Court No. 3AN-S92-5238CR
                                   )
       vs.                         )
                                   )
STATE OF ALASKA,                   )
                                   )
                 Respondent.       )
_____  )

RECEIVED
DEPARTMENT OF LAW

FEB 24 1999

OFFICE OF SPECIAL PROSECUTIONS
AND APPEALS
ANCHORAGE, ALASKA

CERTIFICATE OF COMPLIANCE WITH VICTIMS' RIGHTS. The document is not a victim
I certify that this document and its attachments do not contain the residence or business address of a victim
of a sexual offense listed in AS 12.61.140, or (2) a residence or business address or
telephone number of a victim of or witness to any offense unless it is an address used to
identify the place of the crime or it is an address or telephone number in a transcript
of a court proceeding and disclosure of the information was ordered by the Court.

## PETITION FOR HEARING

### I.   PRAYER FOR REVIEW

The Court of Appeals affirmed Jon Woodard's convictions in M.O.& J. No. 3933 (2/9/98).  The judges disagreed on most issues and wrote separately.  Dissenting, Chief Judge Bryner found six errors, one which required a remand, the other five which cumulatively required reversal.  Op. at 100-147.  The disagreement among the judges, the enormity of the repeated violation of rights, and the need for clarification of the issues raised are grounds to take the petition, reverse his convictions and order a new trial.

### II.   POINTS RELIED ON FOR REVERSAL

A.   THE TRIAL COURT VIOLATED WOODARD'S DUE PROCESS RIGHTS BY SHACKLING HIM DURING TRIAL WITHOUT ADVANCE NOTICE, HEARING OR ADEQUATE GROUNDS.

rvd by: _____

to: _____ The trial court ordered Woodard shackled through the two and one-half month trial. He wore leg irons, a handcuff on one hand, and belly chains; all were attached together. When Woodard appeared

EJ → WH

BUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
500 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

shackled at the omnibus hearing, Judicial Services claimed
"standard procedure" for this case included leg irons and belly
chains. The J.S. representative indicated that a written security
profile would be prepared on Woodard, but one was never submitted.
At trial, Judge Hunt concluded that requiring Woodard to be
shackled was the "usual way." Woodard had no prior criminal
record. He had no history of threats, flight, or violence in the
courtroom. He was taken into custody without incident.

The three earlier cases to discuss shackling approved of it
only because, in each case, there was a specific showing of need.
In Stern v. State, 827 P.2d 442 (Alaska App. 1992), the defendant
had four prior assault convictions, advocated killing police
officers, and warned Judicial Services it would need several
officers to restrain him. In Newcomb v. State, 800 P.2d 935
(Alaska App. 1990), the defendant had a long history of convictions
for violent crimes, had escaped from prison, and had seriously
injured officers who attempted to capture him. In Contreras v
State, 767 P.2d 1169 (Alaska App. 1989), the defendant escaped from
custody seven times, including from the ongoing trial.

The only reasons for this shackling were claims Woodard was a
large man who knew about martial arts and weapons, and the nature
of the charges brought against him. To approve shackling for these
reasons would mean shackling is "the usual way" in any trial where
the defendant is charged with a serious crime.

This Court has not addressed the requirements before a
defendant is shackled at a jury trial. In Anthony v. State, 521

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
800 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

Ex. 6, p. 2

P.2d 486, 495-96 (Alaska 1974), it made clear, "A defendant is presumed innocent throughout the trial, and he should be permitted to face the jury with the appearance and dignity of a free and innocent man." It emphasized the least intrusive physical restraints must be used. Where there is no showing of particularized need, it is error to force a man to sit through a two and one-half month trial suffering the physical pain and mental humiliation of shackling. This Court should articulate specific requirements for shackling so trial courts will not consider it the "usual way."

This Court should adopt a standard like the Ninth Circuit, where shackling is permitted only where there is urgent demand for it. Urgent demand requires: (1) the trial court must "be persuaded by compelling circumstances that some measure was needed to maintain the security of the courtroom"; (2) the trial court must "pursue less restrictive alternatives before imposing physical restraints." Jones v. Meyer, 899 F.2d 883, (9th Cir. 1990), citing Spain v. Rushen, 883 F.2d 712 (9th Cir. 1989). Moreover, "It is a denial of due process if a trial court orders a defendant shackled without first engaging in a two-step process." Duckett v. Godinez, 67 F.3d 734 (9th Cir. 1995). Accord Duckett v. Godinez, 67 F.3d 734, 748 (9th Cir. 1995). See, Holbrook v. Flynn, 475 U.S. 560 (1986). These cases verify that the two-step process requires the defendant be given notice and a hearing before the decision is made. In the same vein, state courts require a showing of "manifest need," or of "immediate and serious risk of dangerous and disruptive behavior," before shackling. People v.Duran, 545 P.2d 1322,

IDDOCK&SCHLEUSS,P.C.
ATTORNEYS AT LAW
00 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

Ex. 6, p. 3

1327 (Cal. 1976); <u>State v. Moore</u>, 609 P.2d 866, 867 (Ore. App. 1980).

There was no showing of urgent demand compelling Woodard be shackled. There was no effort to pursue less restrictive alternatives. There was no advance notice to Woodard and no hearing before the <u>sua sponte</u> shackling order. Woodard should not be required to show prejudice beyond being forced to go through his jury trial, chained hand and foot. No jury could have failed to notice his immobility. Being shackled affected his mental faculty, impaired communications with counsel, impacted his decision not to testify, and was painful. See <u>Kennedy v. Cardwell</u>, 487 F.2d 101, 105-06 (6th Cir. 1973), cert. denied, 416 U.S. 959 (1974).

**B.    CUMULATIVE ERROR IN EVIDENCE RULINGS DENIED WOODARD A FAIR TRIAL.**

1.    WHERE THE FIRST OF SIX SURREPTITIOUSLY TAPED CONVERSATIONS BETWEEN WOODARD AND VANHOUSEN WAS ADMITTED TO SHOW WOODARD'S STATE OF MIND, AND WHERE WITNESSES TESTIFIED ABOUT WOODARD'S CONTEMPORANEOUS PHYSICAL ACTIVITIES, THE COURT SHOULD HAVE ADMITTED THE OTHER FIVE TAPES.

The state'S opening statement discussed the wired conversations. The first taped conversation was discussed in opening and admitted as an exhibit. In it, Woodard and VanHousen referred to "the thing." The state claimed this reference was Woodard incriminating himself. Tr. 2831, 2840-41. Through VanHousen, the state elicited that additional taped conversations took place, but kept out what Woodard said. The state had VanHousen testify that, at the start of the second conversation, he mouthed the word "wired." Tr. 5352-55. In later excluded conversations, VanHousen

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
600 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

Ex. 6, p. 4

returned to "the thing." Woodard's response made clear that he was not referring to the crimes.

The state had VanHousen testify that when he and Woodard had these conversations, Woodard acted very guilty. The tapes established VanHousen went to great lengths to accuse Woodard of involvement in the crimes and to cause him to worry about being caught, but Woodard continuously denied involvement. Tr. 2888-90; R. 730, 737, 740, 745-49, 751, 756-57, 768-73; 783-89. The state elicited additional testimony that during the same time as the taped conversations, Woodard acted like a guilty, nervous person afraid of being caught. See, tr. 7223-40 (testimony of FBI agent Niedringhaus about Woodard's "counter surveillance driving" which took place during the second taped conversation); tr. 6966-71 (Mr. Nickarz's testimony that Woodard became visibly nervous and left a gym because of what was said about him looking like the robber); tr. 5997-6007 (Bohlin's testimony that Woodard acted "paranoid" throughout this period).

The state presented as state-of-mind evidence that Woodard acted like someone with a guilty mind. At the same time, the court prohibited the defense from presenting evidence, though contemporaneous words, of an innocent mind. The jury did not know that, despite all of VanHousen's efforts, Woodard made no admissions of guilt. Had the jury heard all the tapes, it could have concluded that the reference to "the thing" was an innocent comment.

Woodard did not seek to admit self-serving protestations of innocence. Instead, to counter the state's testimony, he sought to

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
800 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

Page 5

Ex. 6, p. 5

admit evidence to explain the context in which his actions took place. Only by these conversations could the jury understand pressure brought on him by Vanhousen's accusations. The conversations would have shown why Woodard seemed nervous or suspicious, and why he overreacted to comments that he looked like the shooter. They would have allowed the jury to hear all the evidence, and then decide whether Vanhousen told the truth when he claimed he tipped off Woodard about being wired.

Out-of-court statements must be admitted where necessary to permit the defense a reasonable opportunity to present its case. See, Keith v. State, 612 P.2d 977, 981-84 (Alaska 1980), reversed because of exclusion of the decedent's journal, which should have been admitted to show the decedent's state of mind. See, also, Chambers v. Mississippi, 410 U.S. 284 (1973).

   2.   EVIDENCE WITNESSES PIERCE AND VANHOUSEN FAILED POLYGRAPHS, THEREBY VIOLATING THEIR COOPERATION AGREEMENTS, SHOULD HAVE BEEN ADMITTED.

Pierce was a crucial state's witness. He claimed he was Woodard's "lookout." Tr. 4296, 4319. He claimed he and Woodard burned evidence of the crimes. Tr. 4436-43.

Pierce entered into a formal plea-cooperation agreement. It required him to pass a polygraph. If he passed the polygraph, the agreement gave him a four-year maximum sentence. The state introduced the plea agreement as an exhibit. Tr. 4531-38. Over objection, the state deleted from it the language which required Pierce to pass a polygraph.

SUDDOCK & SCHLEUSS,P.C.
ATTORNEYS AT LAW
600 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

Kept from the jury, was: (1) Pierce flunked polygraphs (2) he violated his deal and risked a maximum 224 year sentence. Tr. 4697-4721. The state called Pierce's attorney as a witness. The state took advantage of the ruling excluding the polygraph and had the attorney testify that the written agreement shown the jury -- the version without the polygraph language -- "represents the entire agreement." Tr. 5174-77.

VanHousen was a crucial state's witness. A Carr's employee, he claimed he fed insider information to Woodard. His first plea agreement required that he pass a polygraph. After he entered into it, he flunked a polygraph. Subsequently, the state rewrote the agreement, but omitted the polygraph requirement. The state admitted both plea agreements as exhibits, with the polygraph requirement excluded from the first one. Tr. 5348-52; 5357-71.

Unsuccessfully, the defense sought admission of evidence that the first agreement, but not the second, required VanHousen take a polygraph. It even offered to omit questioning as to whether he took the polygraph. R. 1734-40, 1779-86. The jury never knew the truth, which was that VanHousen only came up with a new story which incriminated Woodard to a much greater extent after he had flunked the polygraph and risked losing his deal. Then he received a new deal, which did not require a polygraph.[1]

Approving the above, the Court of Appeals misconstrued

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
900 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

---

[1]

Page restrictions prohibit detailing the important circumstances around the witnesses, plea agreements, and failed polygraphs. Chief Judge Bryner's dissent sets out the relevant details.

Ex. 6, p. 7

<u>Pulakis v. State</u>, 475 P.2d 474 (Alaska 1970). Generally, polygraph results are not admissible at trial. However, the state should not have been permitted to manipulate this general rule to mislead the jury as to its agreements with witnesses and mislead the jury as to pressure put on the witnesses to incriminate Woodard.  Instead, because the state chose to make polygraphs part of it witness plea agreements, chose to change the agreements when the witnesses failed them, and chose to admit edited agreements as if they were complete, the defense was entitled to go into this ordinarily excluded subject.  These details became a proper subject for inquiry in order to show Pierce and VanHousen's bias for the prosecution and motive to lie.  <u>Braham v. State</u>, 571 P.2d 631 (Alaska 1977). Exclusion denied Woodard his right to confront and cross-examine them.  It was error of constitutional dimension. <u>See</u>, <u>United State v. Lynn</u>, 856 F.2d 430 (1st Cir. 1988):

> 3.  WOODARD SHOULD HAVE BEEN PERMITTED TO ADMIT  NEWS-PAPER PHOTOGRAPHS TAKEN AFTER HIS ARREST TO REBUT Y WITNESS CONAWAY'S POST-ARREST IDENTIFICATION.

Robin Conaway saw the shooter from an estimated 140 feet. She only saw him in profile as he walked away. Tr.3812-14, 3826. Her "identification" of Woodard came when she picked his head-on close-up photo out of a line-up and said she was "pretty sure" that he was the shooter.

Before that time, Conaway admitted that she had seen a newspaper full-body profile photo of Woodard.  There had been two other newspaper photographs which showed Woodard straight on; one was a close-up.  Although Conaway denied seeing these two photo-

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
500 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

graphs, the defense had evidence that she had ample opportunity to have done so. The defense was entitled to admit the two photos to show that they might have tainted her photo line-up identification. The trial court caused reversible error in excluding the photographs merely because Conaway claimed not to have seen them. It was for the jury to decide this issue, and whether to believe her.

This issue has not been addressed by this Court. In other jurisdictions where the defense was mistaken identification, appellate courts reversed convictions when the defense was denied an opportunity to introduce photographs necessary to challenge evidence of the defendant's identity as the perpetrator. See Kucki v. State, 483 N.E.2d 788 (Ind. App. 1985)(reversal on constitutional grounds where trial court excluded an article which stated that police were seeking another man for a series of crime and the man's photo resembled the defendant); Hill v State, 783 S.W.2d 257 (Tex. App. 1987); State v. Dunn, 246 S.E.2d 245 (W.Va. App. 1978)(reversals where trial courts refused to admit photos essential to rebut eyewitness identifications).

   4.   THE TRIAL COURT SHOULD NOT HAVE ADMITTED A VIDEO-
        TAPE OF WOODARD REPEATEDLY FIRING A PUMP SHOTGUN.

The pump shotgun was a paramilitary type weapon wholly unconnected to the crimes charged. The videotape showed Woodard firing it in a destructive, violent manner, mowing down trees, seemingly with pleasure. As Judge Chief Bryner pointed out, this videotape did not illustrate any part of the police investigation. Because the trial court admitted another part of the videotape, in

SUDDOCK&SCHLEUSS,P.C.
ATTORNEYS AT LAW
500 L STREET, SUITE 500
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

which Woodard fired a Glock, and because the defense offered to
stipulate to Woodard's presence in the area where the shotgun was
fired, the shotgun portion of the videotape had no relevance
whatsoever. It was nothing more than propensity evidence. Under
this Court's ruling in <u>Brown v. State</u> 601 P.2d 221, 226-27 (Alaska
1979), it should have been excluded.

> 5. THE TRIAL COURT SHOULD HAVE ALLOWED THE DEFENSE TO
> PRESENT A PORTION OF A VIDEOTAPED INTERVIEW WHERE
> POLICE PRESSURED AND THREATENED VANHOUSEN TO OBTAIN
> STATEMENTS FROM HIM INCRIMINATING WOODARD.

VanHousen told lie after conflicting lie to the police, the
court, and his employer. He claimed he knew nothing about the
incident. He claimed Woodard might have said something years
earlier about robbing Carrs. He made up stories about Woodard
being involved, but claimed he was not. Tr. 5442-5646. The
videotape Woodard sought to admit was the first time VanHousen
admitted he had some direct involvement in the crime. It was the
first time that he implicated Woodard as his co-conspirator. This
switch in his story made the videotape critical evidence.

The defense did not seek to admit it for the truth, because
the defense intended to prove VanHousen lied on it. Instead, the
defense sought admission to show that pressure and threats by the
police, including threats of a murder charge, resulted in VanHousen
implicating Woodard. Accordingly, it was admissible evidence of
bias under ARE Rule 613(a).

This videotape should have been admitted under <u>Bentley v.
State</u>, 397 P.2d 976, 978 (Alaska 1965), which held a jury should be

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
500 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

Ex. 6, p. 10

entitled to hear taped conversations, and not merely the watered down versions, "because [the recording] would have best informed the jury as to the recording's impeaching weight and significance."

### C.    ADMISSION OF ROBIN CONAWAY'S IDENTIFICATION TESTIMONY VIOLATED DUE PROCESS AND THE ALASKA RULES OF EVIDENCE.

Sometime on or before June 14, 1992, police gave the media what was supposedly a description of the shooter taken from eyewitness descriptions.  The truth was Woodard was the only suspect, and the description was of him, not an eyewitness description.  On June 14, The Daily News published this fake description.  Television channels ran it.  On June 17 Woodard was arrested on federal firearms charges, and the media reported that he fit the Carrs shooter's description.  Beginning June 18, newspaper and television coverage prominently featured Woodard in chains and handcuffs.  Articles quoted the police talking about him.  Tr. 1323-29; R. 70-71, 130, 138-39.

Police investigators made no effort to show line-ups to the Carrs witnesses.  They believed that the witnesses did not have adequate opportunity to view the perpetrator, who wore a full mask, sunglasses and a hat, and that the media coverage meant that any identification might merely be of someone who had recognized Woodard's photo in the paper.  Tr. 1177, 1194-96.

Despite the above, the state noticed its intention to call "Robin Conaway, a witness to the Carrs robbery/homicide who observed a newspaper photograph of the defendant after he was arrested on unrelated federal charges."  R. 1244.  The article,

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
500 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7607
FAX: (907) 276-1158

Page 11                                    Ex. 6, p. 11

published June 19, showed a photo of Woodard in chains. The caption directly underneath read, "Jon Woodard goes back to jail after his arraignment." The article detailed Woodard's alleged links to the state crimes and to federal offenses. R. 138-40.

The defense had evidence that before she saw the photo, Conaway's description of the perpetrator did not match Woodard. R.1300-01. After she saw the photo, her description changed to match him. R. 1308-11.

Page restrictions do not permit Woodard adequate opportunity here to detail all the evidence that Conaway lacked sufficient time and opportunity at the time of the incident to make a identification; that she did not accurately describe the perpetrator as matching Woodard until after she saw the photo; that her initial identification was uncertain; and that her later identification of Woodard came months later. However, Woodard established these facts in pleadings and at an evidentiary hearing. Tr. 1089, 1091-1108, 1131-34, 1204, R. 130-39; Defendant's S-3 Motion.

Under the five factors for determination as to whether there was substantial likelihood of misidentification, Woodard showed that Conaway's identification was tainted and should not have been admitted. Stovall v. Denno, 388 U.S. 293, 301-02 (1967); Neil v. Biggers, 409 U.S. 188, 198 (1972); Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Holden v. State, 602 P.2d 452, 456-57 (Alaska 1977). Admission of her claimed identification testimony violated Due Process and violated ARE 401, 403, and 602.

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
900 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

D.  WOODARD WAS ENTITLED TO SUPPRESSION OF THE EVIDENCE SEIZED PURSUANT TO A SERIES OF SEARCH WARRANTS.  AT A MINIMUM, HE WAS ENTITLED TO A <u>MALKIN</u> HEARING.

The three conflicting opinions by the Court of Appeals make clear that members cannot agree on the meaning of <u>State v. Malkin</u>, 722 P.2d 943 (Alaska 1986) and how it differs from <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  Woodard urges this Court to go further than any of the three judges and conclude that he made out a prima facie case of intentional misstatements which entitled him to an evidentiary hearing on his allegations.  At a minimum, this Court should adopt Chief Judge Bryner's reasoning that Woodard was entitled to a remand for trial court consideration as to whether he was entitled to an evidentiary hearing.

III. <u>REASONS WHY THIS COURT SHOULD ACCEPT THIS PETITION FOR HEARING</u>

A.  <u>SHACKLING</u>. This Court needs to set specific standards for shackling at a jury trial.  The opinion by the Court of Appeals ignored mandates from the United States Supreme Court in <u>Holbrook v. Flynn</u>, <u>supra</u>, and this Court in <u>Anthony v. State</u>, <u>supra</u>, that the constitution prohibits physical restraints unless absolutely essential under the particular circumstances of the case.  The contrary ruling by the Court of Appeals means that a defendant can be shackled without notice, without a hearing, and without any "urgent demand."  AR 304(a), (b), (c) and (d).

B. <u>VANHOUSEN TAPED CONVERSATIONS</u>. Exclusion violated Woodard's constitutional right to present his defense and violated <u>Keith v. State</u>, <u>supra</u>. The conversations were admissible under ARE 106 to complete statements about "the thing."  They were admissible as

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
500 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

Ex. 6, p. 13

non-hearsay and under the exception listed in ARE 803(3). There is very little case law from this Court on this subject. Guidance is required under AR 304(a) and (c).

C. __POLYGRAPH EVIDENCE__. Exclusion of this evidence came from a misuse of <u>Pulakis v. State</u>, <u>supra</u>. Where the state elected to make polygraphs part of the witnesses' plea agreements and elicited testimony about the agreements, under <u>Braham v. State</u>, <u>supra</u>, evidence that polygraphs were part of the deals and that the witnesses failed them and had their deals rewritten, was proper inquiry to show the witnesses' bias for the prosecution and motive to lie. Review is mandated under AR 304(a).

D. __WOODARD'S NEWSPAPER PHOTOS__. This issue is one of first impression. Review is mandated under AR 304(c).

E. __SHOTGUN VIDEO__. This video had no relevance. It was undeniably prejudicial. It should have been excluded under <u>Brown v. State</u>, <u>supra</u>. Review is mandated under AR 304(a).

F. __VANHOUSEN'S VIDEOTAPED INTERVIEW__. This videotape should have been admitted under <u>Bentley v. State</u>, <u>supra</u>, and ARE 613(a). The interplay between that case, the subsequently passed rule concerning evidence of bias, and the substitution of an interview with the watered down description, come under AR 304(a) and (c).

G. __ROBIN CONAWAY'S IDENTIFICATION__. This identification was impermissibly tainted by the prejudicial photograph on which Conaway based her purported identification of Woodard. It should have been excluded under <u>Manson v. Brathwaite</u>, <u>supra</u>, and <u>Holden v. State</u>, <u>supra</u>. Review is mandated by AR 304(a).

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
500 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158

Ex. 6, p. 14

H.  **THE SEARCH WARRANTS**.  The Court of Appeals is in conflict as to Malkin and the requisite burdens of proof and production. Review is mandated under AR 304(a) and (d).

DATED this _23rd_ day of February, 1999.

SUDDOCK & SCHLEUSS

By: _____
Christine S. Schleuss
Ak. Bar No. 7811132

This is to certify that a copy of the
foregoing Petition for Hearing
was served by  hand on the _23_ day
of February, 1999, as follows:

W.H. Hawley
Office of Special Prosecutions & Appeals
310 K Street, Suite 308
Anchorage, Alaska 99501

_____
Marty Callison

SUDDOCK & SCHLEUSS, P.C.
ATTORNEYS AT LAW
500 L STREET, SUITE 300
ANCHORAGE, ALASKA
99501-5910
TEL: (907) 258-7807
FAX: (907) 276-1158