IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JON A. WOODARD                )
                              )
                  Appellant,  )
                              )
    vs.                       )
                              )
STATE OF ALASKA               )
                              )
                  Appellee    )
_____) Court of Appeals No. A-08243

Trial Court No. 3AN-00-06982 CI

---

CERTIFICATE OF COMPLIANCE WITH VICTIMS' RIGHTS ACT OF 1991

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140, or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the Court

---

APPEAL FROM THE SUPERIOR COURT,
THIRD JUDICIAL DISTRICT AT ANCHORAGE,
THE HONORABLE JOEL H. BOLGER, SUPERIOR COURT JUDGE PRO TEM

APPELLANT'S REPLY BRIEF

> Christine Schleuss (7811132)
> 1227 West 7th Avenue, 2nd Floor
> Anchorage, Alaska 99501
> (907) 258-0704
> Attorney of Appellant
> Jon A. Woodard

Filed in the Court of Appeals of
the State of Alaska, this 21st
day of May, 2004.

MARILYN MAY
Clerk of the Appellate Court

By: _____
    DEPUTY CLERK

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................... ii

I.  JON WOODARD PROVED THAT HE WAS ENTITLED TO
    A NEW TRIAL ......................................... 1

II. AT A MINIMUM, JON WOODARD IS ENTITLED TO A
    REMAND SO THAT HE HAS A FULL AND FAIR OPPORTUNITY
    TO PRESENT HIS CASE BASED ON THE EVIDENCE IN
    THE STATE'S FILES WHICH WAS NOT PRODUCED AT THE
    EVIDENTIARY HEARING ................................. 6

TURLINGTON/WOODARD TIME LINE ............................ 8

CONCLUSION ............................................. 11

## TABLE OF AUTHORITIES

**CASES:**

Atkinson v. State,
869 P.2d 486 (Alaska App. 1994)..............................1

Ellenwworth v. Warden,
333 F.3d 1 (1st Cir. 2003) ..................................1

Kyles v. Whitley,
514 U.S. 419, 434 (1995)....................................2

Monroe v. Angelone,
323 F.3d 286, 299 (4th Circuit 2003) .......................5

Paradis v. Arave,
240 F.3d 1169, 1197 (9th Cir. 2001) ........................2

U.S. v. Bagley,
473 U.S. 667, 678 (1985) ...................................2

U.S. v. Gil,
297 F.3d 93, 104 (2nd Cir. 2002) ...........................2

U.S. v. Vallejo,
237 F.3d 1008, 1023 (9th Cir. 2001) ........................6

I.  **JON WOODARD PROVED THAT HE WAS ENTITLED TO A NEW TRIAL.**[1]

There is no requirement that a person seeking post-conviction relief must show that the evidence suppressed by the government was admissible at trial. The State is wrong to claim otherwise. (Appellee's brief at 23.) Instead, what needs to be shown is that the State suppressed ``material evidence;'' meaning any evidence where there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different. Atkinson v. State, 869 P.2d 486 (Alaska App. 1994), cited in Appellant's opening brief at 20.

To be material, evidence must be admissible *or have led to admissible evidence*. In Ellenwworth v. Warden, 333 F.3d 1 (1st Cir. 2003) (en banc), the prosecution withheld an intake note stating that the alleged victim in a sexual assault case, who was in a home for emotionally disturbed boys, had made a similar accusation in his earlier home and had voiced a fear of sexual assault in the new home. The writer of the intake note voiced a concern about protecting the staff against false accusations.

---

[1] The State chastises Jon Woodard's counsel for citing to the trial record and transcript to the extent they were not made part of the record before Judge Bolger as part of the post-conviction relief proceedings. Appellee's brief at 3, n. 1. As a practical matter, nearly all of the references in Woodard's brief also included a reference to the page in Woodard v. State, 1198 WL 849246 (Alaska App. 1998) where the facts and proceedings discussed in the brief were set out. And at the same time the State chastises Woodard, it includes in its own brief favorable versions of the facts without accurate citation to any record. Appellee's brief at 3-4, 35-36. As alternative relief, Woodard is asking for a remand to the trial court to continue the hearing after the State produces the files of Assistant D.A. John Novak. At a remand, Woodard will make the entire criminal file part of the record.

1

After being convicted of sexual assault, and having the convictions affirmed in state appellate court, the defendant brought claims in federal court based on governmental suppression of the note. The First Circuit noted that the note was double hearsay and inadmissible. Nonetheless, the Court held the note was material because it could have been investigated and the investigation could have led to admissible evidence. Accord, Paradis v. Arave, 240 F.3d 1169, 1197 (9th Cir. 2001) (hearsay evidence need not be independently admissible in order to be material); U.S. v. Gil, 297 F.3d 93, 104 (2nd Cir. 2002) (memorandum containing hearsay although all or partially inadmissible can be material because it could lead to other, admissible, evidence or could be used in cross-examining witnesses.)

This showing of materiality does not require proof by a preponderance that disclosure of the suppressed evidence would have resulted in an acquittal. Instead, what must be shown is that in the absence of the evidence suppressed by the government, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." Kyles v. Whitley 514 U.S. 419, 434 (1995), citing United States v. Bagley, 473 U.S. 667, 678 (1985).

What all this means is that the State is correct in stating that a petitioner must prove all factual propositions by clear and convincing evidence at a post-conviction hearing

2

(Appellee's brief at 2 citing AS 12.72.040). However, as a matter of federal constitutional law, a petitioner is not held to the clear and convincing standard of proof in order to win a new trial for a violation of the rule requiring disclosure of material evidence. Instead, as detailed herein, the standard is considerably lower.

In this case, Attorney John Murtagh testified[2], and Judge Bolger found[3], that he conveyed to Steve Branchflower that his client [soon identified as William Turlington] had been told by John Van Housen that his son David Van Housen had set up the robbery.[4] While Judge Bolger determined that the evidence did not clearly establish that the State failed to disclose Turlington's identity and ``the details surrounding the information he provided,''[5] it is uncontested that the State never disclosed: (1) Van Housen's admission that he set up the robbery; and (2) the extremely favorable treatment given to Turlington--the person who provided it with that information. In addition, Judge Bolger found that the ``tip'' that Turlington provided in the Woodard investigation[6] was one of the reasons for Turlington's favorable plea agreement. That agreement--that lenient treatment be provided to Turlington because of his

---

[2] Sealed Tr. 14.
[3] Exc. 89.
[4] The State did not call Branchflower as a witness and Murtagh's testimony was not challenged. There is no support in the record for the State's assertion that ``On June 10, 1992, Turlington, truly appalled by the murder. . . .'' Appellee's brief at 10.
[5] Exc. 89.
[6] Exc. 90-91.

information in the Woodard case-came before Woodard's trial, but was not disclosed to Woodard's counsel.

The above information met the definition of material. There is a reasonable possibility that if it had been disclosed, the result in Woodard's case would have been different. The fact that the State had evidence that Van Housen lied when he testified at the search warrant hearings and that the State knew that he lied but called him anyway,[7] would have been key evidence for the defense to pursue as part of its challenge to the search warrants under Franks[8]/Malkin.[9] The defense would have made Murtagh's statements part of its offer of proof to support its claim for an evidentiary hearing. At a hearing, it would have called John Murtagh to testify that prior to the search warrant hearings he had told Assistant District Attorney Branchflower, who offered Van Housen as a witness at two search warrant hearings, of the admission by Van Housen that he set up the robbery.

When this Court upheld Judge Hunt's decisions to deny Woodard a hearing and to find there was not a Franks/Malkin violation, it emphasized that, ``In the absence of objectionable governmental activity, neither purpose of the exclusionary rule is served.''[10] But the withheld evidence does show objectional governmental activity, and the purposes of the exclusionary

---

[7] VanHousen's testimony at the first and second search warrant hearings was that he had no involvement in the robbery and did not plan it with Woodard. Exc. 103-04.
[8] Franks v. Delaware, 438 U.S. 154 (1978).
[9] State v. Malkin, 722 P.2d 943 (Alaska 1986).
[10] Exc. 109. This Court recognized that the two purposes of the exclusionary rule are to deter illegal governmental actions and to protect judicial integrity. Exc. 108-09.

4

hearing would be served if Woodard had been given the opportunity to show that the State had evidence that VanHousen had admitted that he set up the robbery but called him anyway at the search warrant hearings to testify to the contrary. Concurring in the Woodard opinion, agreeing that Woodard failed to make sufficient showing to entitle him to a hearing Judge Mannheimer wrote, ``Woodard does not assert that the authorities knew that VanHousen was lying.'' Exc. 148. Had Woodard been given Turlington's statement about VanHousen, that is exactly the assertion he would have made; that the authorities knew that VanHousen was lying when he testified. With this statement in hand, Woodard would have succeeded in making a *prima facie* showing that VanHousen's testimony was false, that the Assistant District Attorney either knew the testimony was false or was at least aware of a substantial and unjustifiable risk that the testimony was false, and that the false testimony was material. Accordingly, under the Malkin analysis set out by Judge Mannheimer in his concurring opinion,[11] Woodard would have been entitled to a <u>Franks/Malkin</u> hearing. And there is a reasonable probability that Judge Hunt's ruling rejecting Woodard's claim of a <u>Franks/Malkin</u> violation would have been different.

Further, the prosecutor's duty to disclose encompasses impeachment material as well as exculpatory evidence, <u>Monroe v. Angelone</u>, 323 F.3d 286, 299 (4th Circuit 2003). Here, had the true nature of VanHousen's statement as relayed by Turlington been known prior to trial, it could have been used to impeach

---

[11] Exc. 156.

5

VanHousen's insistence that Woodard, not he, set up the robbery. Had VanHousen denied the statement, the defense might well have called VanHousen's father and Turlington as witnesses. It could also have been used to show that Turlington, not Woodard, was the person who committed the robbery. It could also have been used to effectively cross-examine the officers who ignored this key lead. See, generally, U.S. v. Vallejo, 237 F.3d 1008, 1023 (9th Cir. 2001)(holding that it is the role of the jury to consider evidence that someone else committed the crime.)

In his opening brief, Woodard also described in detail the uses he would have made at pre-trial hearings and at trial of the information from and about Turlington. Appellant's opening brief at 22-24. These reasons constitute a sufficient showing to entitle him to a new trial.

II. **AT A MINIMUM, JON WOODARD IS ENTITLED TO A REMAND SO THAT HE HAS A FULL AND FAIR OPPORTUNITY TO PRESENT HIS CASE BASED ON THE EVIDENCE IN THE STATE'S FILES WHICH WAS NOT PRODUCED AT THE EVIDENTIARY HEARING.**

In its brief to this Court, the State downplays Turlington's involvement, referring to his information as merely on the order of a crime stoppers tip. Appellee's brief at 11. But that portrayal does not explain why he received years of extraordinarily favorable treatment. Assistant D.A. Novak stated that he did not remember the reasons why Turlington kept receiving such benefits. But what was finally known in 1995 was that one of the reasons why Turlington received his original plea agreement was because he ``provided information that eventually lead [sic] to the prosecution and conviction of Jon A. Woodard on

6

charges of second degree murder, Case No. 3AN-S92-5238 Cr.'' Exc. 44. And what was recognized by Judge Andrews on September 27, 1995, and not disputed by the State at Turlington's sentencing, was that Turlington's history of probation violations without action to revoke him must have been because his information in the Woodard case was so valuable that the State wanted to cut him ``further slack'' than they already had. Exc. 48.

Given what is now known--that the defense was never told the correct details of Turlington's information to Branchflower, and that the defense was never told that Turlington was given favorable treatment because of the information he provided regarding Woodard's prosecution--Woodard should have been given a brief continuance of this trial in order for Novak's files to be produced. Without them, the question remains; exactly what did Turlington do for the State in order to avoid having his probation revoked and in order to receive an illegal SIS? To show the timing of the Woodard proceedings with the events in Turlington's cases, Woodard submits a time-line comparing the two.

The State would not have been prejudiced if the trial court had granted Woodard's attorney a brief continuance so that Assistant D.A. Novak's files could have been produced. Without them, and with Novak's continued insistence that he could not remember the details about Turlington's deals, Woodard was denied a chance to fully develop the record and further prove the materiality of the evidence.

## TURLINGTON/WOODARD TIME LINE

**September 6, 1991**: William Turlington indicted for 5 counts of Misc. III, class B felonies for cocaine sales; D.A. John Novak. Exc. 57-63.

**June 8, 1992**: Carrs Aurora Village Robbery/Homicide

**June 10, 1992**: Attorney John Murtagh told Assistant D.A. Steve Branchflower that John VanHousen told his client Turlington that John's house was close by the Carrs and that John's son David, the manager in the Carrs' produce department had ``set it up.'' And that ``it'' could only have meant the Carrs robbery. Sealed Tr. 13-14.

**June 10, 1992**: Police report states that police told by DA that Murtagh's client Turlington has information on the Carrs murder. The information in the police report was that Turlington's friend John VanHousen told him his son worked at Carrs and knew who the shooter was; that the son said that no one was supposed to get hurt and was upset. Exc. 3.

**June 10, 1992**: Police talk to VanHousen who brings up Woodard's name. Exc. 3.

**June 10, 1992**: First search warrant - Turlington called Defendant X. D.A. does not disclose fact that Murtagh conveyed information from Turlington that Van Housen had admitted to his father that he had set up the robbery. Exc. 27.

**July 8, 1992**: Murtagh spoke with D.A. McNalley regarding Turlington. In telephone calls Murtagh seeks a favorable deal for Turlington and points out Turlington provided specific information in Woodard case. Sealed Tr. 29, 30, 33.

**July 27, 1992**: McComas memo related that Murtagh's client in a drug case was the one who had been represented in search warrant hearings as the one who provided information regarding Van Housen; no specific deal made; case not resolved but if client's information important, client might receive a benefit in future. Exc. 2.

**August 19, 1992**: Murtagh spoke with McNally regarding Turlington. Sealed Tr. 29, 33.

**September 29, 2002**: Murtagh spoke with Novak regarding Turlington. Sealed Tr. 43.

**October 6, 1002**: Murtagh spoke with both McNalley and Novak regarding Turlington. Sealed Tr. 19.

8

**October 27, 1992:** Judge Hunt ordered discovery in Woodard's case including of informants and making it continuing. Exc. 29-30.

**November 16, 1992:** Murtagh spoke with Novak regarding Turlington. Sealed Tr. 43.

**December 15, 1992:** Turlington's indictment in No. 3AN-S91-6378 Cr. replaced by information charging him with 2 counts of Misc. III, class B felonies; D.A. Edward McNally and Asst. D.A. John Novak. Exc. 31-32.

**December 15, 1992:** Murtagh spoke with Novak regarding Turlington. Sealed Tr. 43.

**December 15, 1992:** Turlington entered into a Rule 11 Plea Agreement in No. 3AN-S91-6378 Cr. for a suspended sentence on consolidated counts; signed by DA Edward McNally (no mention of cooperation regarding Woodard as being one of the reasons for the deal). Exc. 33-35. Agreement conditioned on Turlington having no prior felony convictions. Exc. 34.

**December 17, 1992:** Turlington's Judgment and Sentence was imposed in No. 3AN-S91-6378 Cr. Special Conditions of Probation include immediate submission to a urinalysis when directed. Exc. 69.

**February 4, 1993:** Turlington tested positive for cocaine. State does not file Petition to Revoke Probation. Exc. 45.

**May 13, 1993:** Turlington failed to appear for urinalysis testing as ordered by his conditions of probation. State does not file Petition to Revoke Probation. Exc. 45.

**June 1993:** Turlington committed crime of shoplifting. State did not file Petition to Revoke Probation. Exc. 45.

**May-June 1993:** Woodard's trial.

**June 7, 1993:** Woodard Convicted.

**September 24, 1993:** Woodard sentenced.

**December 9, 1994:** Turlington indicted for two counts of Misc. III, two class B felonies, in No. 3AN-S94-8516 Cr. Asst. D.A. Novak signed indictment. Exc. 78-79.

**December 14, 1993:** Second of Woodard's Motions for New Trial denied.

**January 7, 1994:** Woodard filed notice of merit appeal.

**April 11, 1995:** State reduced charges to two class C felonies in No. 3AN-S94-8516 Cr. Asst. D.A. Novak signed Information Replacing Indictment. Exc. 8-81.

**August 23, 1995:** For the first time in a pleading in Turlington's cases, (Nos. 3AN-S91-6378 and 3AN-S94-8516 Cr.), State disclosed that one of the reasons for Turlington's original agreement was that ``*defendant, through his attorney, contacted the District Attorney's Office and provided information that eventually lead [sic] to the prosecution and conviction of Jon A. Woodard on charges of second degree murder, Case No. 3AN-S92-5238 Cr.*''[12] Exc. 44. Pleading was a Supplemental Sentencing Memorandum by Asst. D.A. Novak. And for the first time in a pleading, the State revealed Turlington's misconduct while on probation as detailed above. Pleading also revealed Turlington had two prior out-of-state felony convictions in violation of prior statement that he had no prior felony convictions. Exc. 36-44. Pleading signed by Asst. D.A. Novak.

**September 27, 1995:** Judge Andrews comments at Turlington's sentencing on both cases that, ``I have not seen in my experience, so much non-compliance on probation without a petition to revoke. Now the only thing I can think of is that because your information was so valuable [in] the Woodard murder case, that they wanted to cut you further slack than they already cut you . . .'' Exc. 48.

**September 27, 1995:** Turlington sentenced to one year to serve in No. 3AN-S94-8516 Cr. Exc. 82-87.

**October 17, 1995:** Turlington is ordered to be on probation for one additional year on a probation revocation. State represented by Asst. D.A. Moberly and Turlington represented by Michael Dieni. Exc. 73.

**December 9, 1998:** Woodard's convictions affirmed by this Court, Judge Mannheimer concurring, Chief Judge Bryner dissenting. 1198 WL 849256.

**January 20, 1998:** Turlington granted an Order of Discharge after Suspended Imposition of Sentence in Case No. 3AN-S91-6378 Cr. even though he had not received an SIS. Exc. 74.

**September 16, 1999:** Alaska Supreme Court denied Woodard's Petition for Hearing in a two-two decision (Justice Bryner not participating.

---

[12] Emphasis added.

10

## CONCLUSION

The State of Alaska was required to disclose to Jon Woodard prior to his trial the identity of Defendant X and the extraordinary benefits conferred on X (William Turlington) in return for the key information he supplied which led to Woodard's prosecution and conviction. At a minimum Woodard was entitled to a full and fair hearing on his Application for Post-Conviction Relief which included production by the State of its complete files on Turlington. The State's failure to disclose entitles Woodard to a new trial. At a minimum he is entitled to a remand, to an order that the State produce Turlington's files, and to a continued hearing on his Application.

DATED this 21st day of May 2004.

By: _____
CHRISTINE S. SCHLEUSS
ABA No. 7811132