NOTICE
*Memorandum decisions of this court do not create legal precedent. See Alaska Appellate Rule 214(d) and Paragraph 7 of the Guidelines for Publication of Court of Appeals Decisions (Court of Appeals Order No. 3). Accordingly, this memorandum decision may not be cited as binding precedent for any proposition of law.*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JON ARNOLD WOODARD,<br><br>    Appellant,<br><br>    v.<br><br>STATE OF ALASKA,<br><br>    Appellee. | Court of Appeals No. A-8243<br>Trial Court No. 3AN-00-6982 CI<br><br>MEMORANDUM OPINION<br><br>AND JUDGMENT<br><br>[No. 4931 — September 29, 2004] |

Appeal from the Superior Court, Third Judicial District, Anchorage, Joel H. Bolger, Judge.

Appearances: Christine Schleuss, Anchorage, for the Appellant. W. H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: Coats, Chief Judge, and Mannheimer and Stewart, Judges.

STEWART, Judge.

Jon Arnold Woodard appeals the denial of his application for post-conviction relief. Woodard's application went to hearing before Superior Court Judge pro tem Joel H. Bolger, and Judge Bolger rejected Woodard's claims.

Woodard argues that Judge Bolger erred because he did not grant a mid-hearing continuance to seek additional discovery. We conclude that Judge Bolger did not abuse his discretion when he denied that request. Woodard also argues that Judge

Bolger should not have rejected his claim that the State withheld exculpatory evidence by failing to inform Woodard's trial attorney that a person who supplied an early investigative lead entered into a plea agreement with the State in the person's own pending criminal case. But Judge Bolger found that Woodard's trial attorney knew about the lead, knew the identity of the person who supplied it, knew that the person was facing criminal charges, and knew of the potential for a plea agreement. Judge Bolger also found that the plea agreement was not exculpatory evidence. Because Judge Bolger's findings are not clearly erroneous, and because those findings support his decision denying Woodard's application, we affirm.

### *Background facts and proceedings*

On June 8, 1992, during an armed robbery of the Aurora Village Carrs Store in Anchorage, Woodard shot and killed Terrence Becker, a security guard. A jury convicted Woodard of first-degree robbery and second-degree murder for killing Becker during the course of the robbery.[1] On direct appeal, this court affirmed Woodard's convictions.[2]

While the investigation was under way, a defense attorney representing a defendant in an unrelated criminal case informed an assistant district attorney that his client (William Turlington) had information regarding the Carrs robbery and homicide. The defense attorney told the prosecutor that his client had a friend named John VanHousen whose son, David VanHousen, worked in the produce section of Carrs.

---

[1] AS 11.41.500(a) and AS 11.41.110(a)(3), respectively.

[2] *Woodard v. State*, Alaska App. Memorandum Opinion and Judgment No. 3933 at 48 (Dec 9, 1998), 1998 WL 849246 at *23.

According to the defense attorney, John VanHousen had expressed the fear to the defense attorney's client that David VanHousen was involved in the robbery and homicide.

Before long, the prosecuting authorities concluded that the person identified by the defense attorney was Turlington. The district attorney's office passed this information on to the Anchorage Police. The police did not contact Turlington. Instead, they located David VanHousen and confronted him. VanHousen eventually admitted that he was involved in the robbery and identified Woodard as the person who shot Becker.

Details of the lead supplied by Turlington's defense attorney to the assistant district attorney were included in the police report prepared by Anchorage Police Detective Bill Reeder and provided to Woodard during discovery. During preparation for trial, Woodard's trial attorney spoke with Turlington's defense attorney. They discussed the potential that Turlington would reach a plea bargain with the State.

Over six months after the homicide, Turlington reached a plea agreement in his case and received a suspended sentence. Turlington tested positive for cocaine several times beginning in February 1993, a few weeks before Woodard's trial began on March 25, 1993. Although Turlington's plea agreement was premised on the fact that Turlington had no prior felony convictions, the State learned after Woodard's trial that Turlington had a 1962 New York conviction for conspiracy to commit robbery and a 1964 New Jersey conviction for robbery. Before Woodard's trial started, the State did not provide any additional information to Woodard about Turlington's plea agreement or his performance on probation. Turlington was never called as a witness, and was never interviewed by police or prosecutors about Woodard's case.

Woodard sought post-conviction relief, arguing that the State had violated Criminal Rule 16 and Woodard's right to due process by failing to disclose Turlington's identity and Turlington's plea bargain. After hearing testimony at an evidentiary hearing

on Woodard's post-conviction relief application, Judge Bolger denied Woodard's application.

*Discussion*

*Did the State breach its duty to disclose exculpatory evidence?*

The State must disclose favorable, material evidence, as required by *Brady v. Maryland*[3] and Alaska Criminal Rule 16(b)(3).[4] Woodard argues that the State breached this duty by not disclosing Turlington's plea agreement, criminal record, and poor performance on probation.

Woodard first argues that if the State had disclosed more information about Turlington, he would have been able to show that David VanHousen lied at a search warrant hearing, and thus that Woodard would have succeeded in suppressing the evidence obtained as a result of the warrants used by the State in the investigation. But Woodard did not raise this argument in the superior court; therefore it is not preserved.[5]

Woodard also argues that if the State had disclosed additional information about the substance of Turlington's tip, Woodard might have succeeded in portraying Turlington as the perpetrator of the crime. Yet Woodard does not challenge Judge Bolger's finding that the State revealed Turlington's identity and the details of the information he provided. Instead, Woodard argues that the State failed to disclose (1)

---

[3]   373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[4]   *Putnam v. State*, 629 P.2d 35, 43 (Alaska 1980) (rejected on other grounds in *Stephan v. State*, 711 P.2d 1156, 1163 (Alaska 1985)).

[5]   *See Plate v. State*, 925 P.2d 1057, 1067 (Alaska App. 1996) (order on rehearing); see also *Moreau v. State*, 588 P.2d 275, 279-80 (Alaska 1978) (holding that Fourth Amendment claims generally cannot be raised for the first time on appeal).

substantive details of Turlington's tip that were not contained in Detective Reeder's report and (2) the favorable treatment given Turlington by the State in exchange for his tip.

The first part of the answer to these claims lies in Judge Bolger's decision. Judge Bolger concluded that the details of the lead supplied by Turlington's defense attorney, Turlington's record, and Turlington's plea agreement did not constitute exculpatory evidence. Judge Bolger noted that Turlington's tip did not even mention Woodard's name. Judge Bolger also found that Woodard had not shown that Turlington could give any helpful testimony on the issue of Woodard's guilt or innocence.

The second part of the answer to these claims lies in the privilege of the State to refuse to disclose the identity of an informer. In *Schmid v. State*,[6] the Alaska Supreme Court followed the approach to the informer's privilege established in *Roviaro v. United States*.[7]

The *Roviaro* Court developed a test which requires that the public's interest in protecting the flow of information to the authorities be balanced against the defendant's right to prepare a defense to determine if disclosure is justified. Whether disclosure should be compelled "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."[8]

The *Schmid* court described the burden that a defendant seeking disclosure of an informant's identity must meet:

> The defendant has the burden of showing a need for the informant's disclosure which is material to his defense. *United States v. Calhoun*, 542 F.2d 1094, 1098 (9th Cir.

---

[6] 615 P.2d 565, 573 (Alaska 1980).

[7] 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

[8] *Id.* at 62, 77 S.Ct. at 629.

1976); *United States v. Prueitt*, 540 F.2d 995, 1004 (9th Cir. 1976); Annot., 76 A.L.R.2d 262, 269-70 & 298 (1961). A simple assertion that the information is needed is insufficient to meet that burden for the reason that allowing mere speculation would effectively defeat the informer's privilege. *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45; *State v. Gill*, 22 Or.App. 484, 539 P.2d 1138, 1139-40 (1975). But the defendant should not have to prove before disclosure the very fact that he or she seeks to obtain through disclosure. *See Williams v. Superior Court*, 38 Cal.App.3d 412, 112 Cal.Rptr. 485, 489 (1974). We believe that the California Supreme Court has established a reasonable burden of proof on this issue. It requires that the defendant demonstrate a *reasonable possibility* that the anonymous informant *could* give evidence on the issue of guilt or innocence which *might* result in the defendant's exoneration. *People v. Garcia*, 67 Cal.2d 830, 64 Cal.Rptr. 110, 114, 434 P.2d 366, 370 (1967); *see also Williams v. Superior Court*, 112 Cal.Rptr. at 488.[9]

The *Schmid* court then described contrasting factors that militate for or against disclosure:

> Circumstances which weigh in favor of disclosure include the following: where the informant is a crucial participant in the illegal transaction, *Roviaro v. United States*, 353 U.S. at 64, 77 S.Ct. at 629, 1 L.Ed.2d at 47 (1957) (informant was buyer of narcotics in transaction where accused was charged with making the sale); where the informant was active in setting the stage for illegal transaction, *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45 (introduced defendant to undercover police officer); where the informant was an eyewitness, *United States v. Tucker*, 552 F.2d 202, 207 (7th Cir. 1977); *People v. Goggins*, 356 N.Y.S.2d at 574, 313 N.E.2d at 44; and where the evidence

---

[9] *Schmid*, 615 P.2d at 571-72 (emphasis in original).

is equally balanced, *United States v. Tucker*, 552 F.2d at 207; *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45.

On the other hand, circumstances which weigh against disclosure include the following: where the prosecutor is able to present the case-in-chief without reference to the informant, Annot., 76 A.L.R.2d at 281; where the informant is a witness but other witnesses are available but are not called by the defense, *State v. Gill*, 539 P.2d at 1139-40 (other witnesses to alleged entrapment not called by defendant); where disclosure would endanger the informant, *United States v. Palermo*, 410 F.2d 468 (7th Cir. 1969); and where the informant is a mere "tipster" who only "points the finger of suspicion toward a person who has violated the law," *People v. Garcia*, 64 Cal.Rptr. at 114, 434 P.2d at 370; *see also United States v. Fischer*, 531 F.2d 783, 787 (5th Cir. 1976); *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45.

The most important consideration in determining whether the defendant has made a sufficient showing to compel disclosure is the degree of the informant's participation in the charged offense. Where the informant is only a tipster who has played no part in the criminal act with which the defendant had been charged, the benefit of any testimony to the defendant's case is probably minimal when compared to the public's interest in protecting the identity of the informant.[10]

Under this balancing test, the State would have been justified in refusing to reveal Turlington's identity because the information that Turlington's defense attorney supplied to the State only pointed the authorities to David VanHousen. It was David VanHousen who revealed Woodard's identity and Woodard's participation in the crimes, not Turlington. As Judge Bolger found, there was no evidence that Turlington had any part in Woodard's crimes. Judge Bolger also found that there was no evidence that

---

[10] *Id.* at 572.

Turlington had any knowledge of the crimes other than the hearsay report he received from John VanHousen, indicating that VanHousen's son may have been involved. Thus, under the balancing test adopted in *Schmid*, the State could have legitimately declined to reveal Turlington's identity. Because Woodard was not entitled to Turlington's identity, the State would have committed no error if it had refused to disclose Turlington's identity or the details of his case. Thus, the State did not breach its duty to disclose exculpatory evidence.

### *Should Judge Bolger have continued the hearing?*

Woodard argues that Judge Bolger erred by denying his mid-hearing motion to continue, so he could pursue additional discovery. Criminal Rule 35.1(g) provides that all civil pre-trial and discovery procedures are available to the parties.

On January 22, 2002, the day before the post-conviction evidentiary hearing, Woodard served a subpoena on the original prosecutor who had handled Turlington's case, ordering him to appear and to bring with him all the records pertaining to Turlington. At the beginning of the hearing, the State informed the judge that the requested records had been archived, and would not be available for one to two weeks. Judge Bolger took the matter under advisement, yet indicated that he was not inclined to allow Woodard additional time to obtain the records. Turlington's prosecutor testified but could not answer all of Woodard's questions without access to the archived records.

Judge Bolger ultimately denied Woodard's request for additional discovery from the State. Noting that the case had been pending for "nearly two years," Judge Bolger found that Woodard had had an adequate opportunity to conduct discovery in the case.

A party moving to continue a case set for trial must show that the party acted with due diligence upon the grounds for which the continuance is sought.[11] Furthermore, a trial court can properly deny a continuance to seek evidence if the moving party did not show due diligence to produce the evidence through the use of normal discovery.[12] It appears from this record that Judge Bolger did not abuse his discretion when he denied additional discovery. Furthermore, as we noted above, the State could have declined to reveal Turlington's identity in the first instance, so additional details about Turlington and how his criminal case was processed were immaterial. Thus, Judge Bolger did not abuse his discretion when he refused to continue the hearing to allow additional discovery.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[11] *Sparks v. Gustafson*, 750 P.2d 338, 341 (Alaska 1988).

[12] *Id.*