IN THE SUPREME COURT FOR THE STATE OF ALASKA

JON ARNOLD WOODARD,
                Petitioner,     )
                              )
                              )
      vs.                    )    No. S - _____
                              )
STATE OF ALASKA,         )
               Respondent.  )

RECEIVED
DEPARTMENT OF LAW

OCT 1 4 2004

Ct. App. No. A-8243
Superior. Ct. No. 3AN-00-6982 CI

OFFICE OF SPECIAL PROSECUTION
AND APPEALS

CERTIFICATE OF COMPLIANCE WITH VICTIMS' RIGHTS ACT OF 1991

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140, or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the Court.

## PETITION FOR HEARING

### INTRODUCTION AND PRAYER FOR REVIEW

This is the second Petition for Hearing filed by Jon Woodard stemming from his convictions in *State v. Woodard*,[1] for felony murder and robbery. The first Petition was from the decision by the Alaska Court of Appeals affirming Mr. Woodard's convictions in a one hundred forty-seven page opinion, Chief Judge Bryner dissenting. The first Petition was denied by this Court in a two-two vote (Justice Bryner not participating).

A key issue then concerned the constitutionality of the issuance of a series of search warrants from which the State obtained evidence which served as the basis for its case. In pre-trial motions, Woodard had argued that the sworn testimony of those

---

[1] 1198 WL 849246 (Ak. App. 1998), Trial Court, 3AN-S92-5238 CR. ("M. O. & J.")

Petition for Hearing
Page 1

to: _____

Ex. 13, p. 1

1    seeking the search warrants was filled with false statements and omissions. The

2    witnesses presented by the State to support the issuance of the search warrants included

3    a man named Dave VanHousen. Woodard argued that VanHousen's false testimony,

4    and false testimony by other witnesses, violated the *Malkin[2]/Latham[3]* rules that

5    intentional misstatements automatically require suppression; that reckless material

6    misstatements require suppression; and that knowing or reckless withholding of

7    evidence bearing on a testifying informant's truthfulness requires suppression.

8    Woodard sought, but was denied, an evidentiary hearing regarding the issues.

9

10        On appeal, dissenting Chief Judge Bryner stated that, because Woodard had

11   expressly alleged intentional misstatements and because "[a] deliberate attempt to

12   mislead a judicial officer in a sworn affidavit deserves the most severe deterrent

13   sanction that the exclusionary rule can provide,"[4] he felt that Woodard had made out a

14   prima facie case of intentional misstatement and was likely entitled to an evidentiary

15   hearing. And he also felt that Woodard's case should have been remanded to the trial

16   court for an initial decision on whether Woodard had, in fact, made the necessary

17   showing, after the trial judge correctly applied the law, which he felt had not been done.

18        In its successful Opposition to Woodard's Petition for Hearing, the State told this

19   Court that, "Even if Woodard has an evidentiary hearing, he will not obtain relief. The

20

21   _____

22   [2] *State v. Malkin,* 722 P.2d 943 (Alaska 1986).

     [3] *Latham v. State,* 790 P.2d 717 (Alaska App. 1990).

     [4] M. O, & J., at 107, citing *Malkin,* at 946 n. 6.

Petition for Hearing
Page 2

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

1    contention that the State intentionally misrepresented anything to Judge Andrews [the

2    search warrant judge] is wrong and absurd."[5]  But information came to light after

3    Woodard's conviction which cast serious doubt on the accuracy of that statement.  In

4    his application for post-conviction relief, and consequent hearing, Woodard established

5    that the State knew at the time of the search warrants that some of its information told to

6    Judge Andrews was not true and that the State knowingly withheld other information.

7         Jon Woodard prays for review from the decision by the Court of Appeals in

8    *Woodard v. State,* No. 4931 (September 29, 2004). (M. O. &. J. II.)  He requests that

9    this Court grant him a new trial or at least a remand for an evidentiary hearing.

10                                    **FACTS**

11        On June 8, 1992, a lone gunman robbed the Aurora Village Carrs store.  The

12   gunman disguised his identity by wearing a ski mask, sunglasses, and a cap.  He hid his

13   eyes behind sunglasses.  He wore a cap.  M. O. & J., at 2.  In the course of the robbery,

14   the gunman shot and killed a Loomis security guard.  *Id.*  The gunman grabbed money

15   from the manager's booth and fled the store, using a back entrance.  *Id.,* at 3.

16   Eyewitnesses to the robbery/homicide could not provide any useful descriptions of the

17   perpetrator.  But within two days police focused their investigation on Jon Woodard, to

18   the exclusion of other suspects.  *Id.*  First police built their case through a number of

19   surreptitious tape recordings of conversations between Woodard and his acquaintance,

20   David VanHousen who worked at the Aurora Village Carrs.  These led to searches of

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

---

[5] State's Response to Petition for Hearing, dated April 19, 1999, at 15.

Petition for Hearing
Page 3

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK  99501
907-258 0704 ~ Fax: 907 278-6449

1   Woodard's home and telephone calls.  These searches led to more surreptitiously taped

2   conversations and still more searches.  All of the subsequent search warrant hearings

3   incorporated testimony from the earlier hearings.  *Id.,* at 3-4.  At the first search warrant

4   hearing, on June 10, 1992, as set out in the opinion by the Court of Appeals, Detective

5   Reeder testified that he contacted VanHousen because he received a tip that VanHousen

6   had told his father that no one was supposed to get hurt in the robbery and because

7   VanHousen worked at Carrs.  *Id.,* at 4.  Exc. 27.

8

9       VanHousen testified at the same hearing, incriminating Woodard but denying

10  being involved.  *Id.,* at 5.  Judge Andrews issued a search warrant to tape record

11  conversations between VanHousen and Woodard.  The next day, June 11, 1992,

12  claiming that it had just found that VanHousen had not been entirely truthful, the State

13  called VanHousen to a second hearing. He provided more incriminating testimony

14  against Woodard.  Again, he denied any direct involvement.  Judge Andrews concluded

15  there was still probable cause for the warrant.

16      In affirming Judge Hunt's denial of Woodard's motion to suppress, Judge Coats

17  concluded that the police had made no misrepresentations or omissions, including about

18  VanHousen and, "The record shows that the state made every effort to encourage

19  VanHousen to be truthful and immediately returned to court when VanHousen changed

20  his version of his own involvement."  *Id.,* at 12-13.  Most important, Judge

21  Mannheimer, concurring, wrote, "Woodard does not assert that the authorities knew that

22  VanHousen was lying." *Id.,* at 50.  But at the evidentiary hearing on his motion for post

    conviction relief, Woodard found out that, in fact, the State intentionally misrepresented

Petition for Hearing
Page 4

FRIEDMAN, RUBIN & WHITE
1227 W. 9ᵗʰ Avenue, Second Floor
Anchorage, AK  99501
907-258 0704 ~ Fax: 907 278-6449

1    and omitted at the search warrant hearing because the State's attorneys knew prior to

2    VanHousen's testimony on June 10 that he was lying.

3         Defendant X  was a man named William Turlington.  The only information

4    concerning Turlington that was written down prior to Woodard's trial was in a one

5    paragraph police report.  To summarize, the report said that John Murtagh, Turlington's

6    attorney, contacted the D.A.'s office and told that office that his client had information

7    on the Carr's murder.  Exc. 1.  According to the report, Turlington was told by his

8    friend John VanHousen that John's son worked at Carrs, knew who the shooter was, and

9    had commented that no one was supposed to get hurt.  Woodard was represented by

10   James McComas. It was unclear whether McComas even received this police report.

11   But assuming that he did, what the report omitted, and what was learned by Woodard

12   and his counsel for the first time at the post-trial evidentiary hearing, was that Murtagh

13   told Steve Branchflower and other Assistant District Attorneys far more incriminating

14   details about VanHousen than were ever told to Judge Andrews or to the defense.

15        Murtagh relied on his time sheets to provide some detail concerning his

16   communications with the District Attorney's Office.   At the evidentiary hearing, he

17   stated that he first spoke with Steve Branchflower on June 10, 1992.  Sealed Tr. 10.

18   Murtagh conveyed to Branchflower on that date the information told to him by

19   Turlington.  His notes read that John VanHousen ". . . told Mr. Turlington that his -

20   John VanHousen's house is close by the Carrs, and that his son, that is, *John

21   VanHousen's son David*, the manager in the Produce Department, *had set it up*.   Sealed

22   Tr. 13-14 (emphasis added).  Murtagh elaborated, "John VanHousen told Bill

Petition for Hearing
Page 5

[Turlington] that John's son, David, the manager at the Produce Department, had set

this up. *And that was told.*   Sealed Tr. 14 (emphasis added).

In addition to the above evidence that the State's attorneys intentionally

withheld information from Judge Andrews that VanHousen had set up the Carrs

robbery, there was evidence that the State's attorney's intentionally withheld

information that Turlington was receiving incredibly favorable treatment from the State

for his own criminal misconduct because of the information he provided which led to

VanHousen and to Woodard.

As McComas explained it in a memo he wrote on July 27, 1992, the testimony at

the search warrant hearings indicated that Turlington had a drug case but that no deals

would be made and no benefit was provided in return for the information.   Exc. 2.

On July 27, after he read discovery naming Murtagh as the attorney discussed at

the search warrant hearing, McComas contacted him.   Murtagh told McComas that no

deals had been made, but that Murtagh had a subjective belief that if the information

turned out to be important, there might be some benefit to his client.   *Id.*

In October of that year, Judge Hunt ordered the State to produce discovery

concerning the case, including discovery about informants.   She also ordered the State

to continue to produce discovery as it was generated.   Exc. 29-30.

In direct violation of Judge Hunt's Order as well as in violation of court rule,

constitutional provisions, and case law requiring disclosure, the State never told

Woodard's trial attorney the extraordinary favors it gave to Turlington.   Nearly three

months after McComas spoke with Murtagh and only about six weeks after Judge Hunt

FRIEDMAN, RUBIN & WHITE
1227 W. 9ᵗʰ Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

ordered continued discovery, by way of Information replacing Indictment, the State

charged Turlington with two Class B felony drug sales. (State v. Turlington, Case No.

3AN-S 91-6378 Cr.)[6] That same date the State entered into a cooperation/plea

agreement with Turlington whereby he received a completely suspended sentence and

was placed on probation. The information replaced an indictment which alleged five

counts of sale of cocaine and one count of possession of cocaine. The indictment was

dated September 6, 1991. Assistant District Attorney Novak described Turlington's

conduct as "The two counts incorporate defendant making deliveries of cocaine on four

separate occasions (involving quantities of an ounce to two ounces) and possessing

more than a pound of cocaine with intent to deliver. Exc.44. The agreement was

expressly conditioned on Turlington never previously having been convicted of a

felony. Exc. 34. Nothing in the agreement indicated that it was made in return for

Turlington's assistance in prosecuting Woodard. Thus, someone looking through the

public files would not know that Turlington's information about Woodard was one of

the bases for the favorable agreement. That fact did not become part of a public

document until 1995. Tr.23-24.

Turlington continued to commit crimes. On August 23, 1995, Mr. Novak filed a

Supplemental Sentencing Memorandum in the above case as well as in Turlington's

subsequent criminal case. (State v. Turlington, Case No. 3AN-S 94-8516.) Turlington's

---

[6] Woodard attached most of the court records from Turlington's case to his Original Application. Exc.31-49. A complete set of the court judgments related to three of Turlington's cases was Exhibit 1 at the evidentiary hearing on Woodard's Application. Exc.57-87, Tr. 23.

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

subsequent charge was also for trafficking in cocaine. The Memorandum described

Turlington'ontacts with the State. For the first time in public, the State told the reasons

for the lenient charge and sentence. Included among the reasons was the fact that

Turlington provided information "that eventually lead to the prosecution and conviction

of Jon A Woodard. . . ." The Memorandum described that Turlington's only verified

job was narcotics trafficking. It noted that he repeatedly violated probation for such

violations as failing to submit to urinalysis, including during the time prior to

Woodard's trial; yet no petition to revoke probations was filed. It noted that on three

occasions, including one prior to Woodard's trial, he tested positive for cocaine; yet no

petition was filed. And most extraordinarily, despite the fact that Turlington was not

even granted a Suspended Imposition of Sentence in the first place, and despite all his

probation violations and crimes, on January 20, 1998, Turlington's Judgment of

Conviction in the 1991 case was ordered set aside.

The extent of Turlington's misdeeds as well as the favors and benefits provided

to him by the State were withheld from Woodard and his attorney. It was only in 1995,

after Woodard's conviction, that the State publicly disclosed in a written document the

favors it provided him and disclosed that one of the reasons for its favors was his

assistance in the Woodard case.

When Woodard found out that which had been hidden from him, he filed his

Application for Post-Conviction Relief. Needless to say, John Novak was a key witness

for Woodard. Defense Attorney Leslie Hiebert listed him on her witness list dated

November 2, 2001. Exc. 55.

Petition for Hearing
Page 8

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

The day before the evidentiary hearing she had Novak served with a Subpoena to Appear & Produce which ordered him to bring with him all records in the possession of the District Attorney's office pertaining to William Turlington. Exc. 56, tr. 4. But when Novak appeared at the hearing on January 23, he did not bring the files with him.

Instead, before any witnesses were called, Assistant District Attorney Mary Anne Henry told the court that the files were in archives. If archived in Anchorage, it would take a week to obtain them. If archived in Juneau, it would take two weeks to retrieve them. Tr. 4. Accordingly, she sought to quash the subpoena to the extent that it called for the production of files. Tr. 4.

Ms. Hiebert responded that it had long been known [indeed since Mr. Woodard filed his application] that the basis for the application was the State's failure to disclose all of the information in its possession concerning Turlington in violation of the trial court's order. Tr. 5. She explained that in light of that fact and in light of the fact that she listed Mr. Novak on her witness list, "I didn't anticipate that the state wouldn't have retrieved those documents already in the course of proceedings because you would have had to consult those docu--those files in order the answer the request for admission." Tr. 5. Ultimately, the court denied a brief continuance.

## ARGUMENT

I.    THE STATE'S MISREPRESENTATION AS TO THE DETAILS OF TURLINGTON'S TIP AS WELL AS ITS SUPPRESSION OF THE FAVORABLE TREATMENT PROVIDED TO TURLINGTON ENTITLES WOODARD TO A NEW TRIAL.

A.    The misrepresentation about the details of Turlington's tip.

The Court of Appeals rejected this argument in a single line by summarily concluding that Woodard did not raise it in the superior court; and so it was not preserved. M. O. & J. II, at 4. But this is not correct. In Woodard's Application, he stated as his first three grounds for relief that the prosecutors violated constitutional and court disclosure rules by failing to disclose relevant and material information pertaining to Turlington. Included was an allegation that the State "possessed relevant and material information pertaining to the ongoing relationships and social interactions of David VanHousen, John VanHousen, and William Turlington, and withheld this information from the court and the defense." And he stated that his overall defense to the charges was that if the evidence had been disclosed early on his prosecution may not have occurred or would at least have counterbalanced the State's evidence, resulting in a different outcome. Exc. 3-10. Judge Bolger dealt with the issue. His findings included that VanHousen had said that he "set it up." Exc. 89. He recognized that Woodard's application argued a constitutional violation because of the State's failure to disclose Turlington's identity *and the details surrounding the information he provided.* Exc. 92 (emphasis added). But he concluded that the details of the tip were not exculpatory evidence. Exc. 94  This was sufficient to preserve this issue. And Woodard should not be punished by a court finding waiver of an issue where the misrepresentation came out for the first time at the evidentiary hearing and where the judge denied a continuance so that the defense could have time to obtain further information.

As to the merits, a defendant has a due process right to disclosure of information about informants. The Court of Appeals rejected Woodard's appeal because it applied

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK  99501
907-258 0704 ~ Fax: 907 278-6449

1  the balancing test of *Schmid v. State*, 615 P.2d 565 (Alaska 1980) and *Roviaro v. U.S.*,

2  1353 U.S. 53 (1957), which is used to justify keeping an informant's identity secret.

3  But in this case, there was a finding that Turlington's identity was revealed, so the

4  balancing test to protect identity did not apply.  Instead, what matters was whether the

5  State was justified in withholding the informant's correct words and allowing him to

6  testify falsely, and was justified in withholding the lenient treatment provided to him.

7  B.    <u>Withholding information about the favorable treatment provided Turlington.</u>

8  

9       The requirement of disclosure includes information pertaining to informants.

10  *U.S. v. Bagley*, 473 U.S. 667 (1985); *Sledge v. State*, 763 P.2d 1364 (Alaska App.

11  1988); *Atkinson v. State*, 869 P.2d 486, 492 (Alaska App. 1994).  An informant's

12  leniency agreement must also be disclosed.  *Giglio v. U.S.*, 405 U.S. 150 (1972). And

13  information affecting the credibility of an informant must be disclosed even though the

14  informant does not testify at trial.  *Kyles v. Whitley*,  514 U.S. 419 (1995).

15       The *Kyles* case was before the Supreme Court on a federal habeas after the state

16  court had denied the defendant's appeal and his application for collateral relief.  In that

17  case, as here, it was revealed on collateral review that the state had not disclosed

18  evidence favorable to the defendant. The court held that where the undisclosed evidence

19  was material, constitutional error results from its suppression by the government, if

20  there is a reasonable probability that, had the evidence been disclosed, the result of the

21  proceeding would have been different.  514 U.S., at 434.

22       A number of other federal cases followed *Kyles, finding* that due process requires

disclosure of information about informants.  *Singh v. Prunty*, 142 F.3d 1157 (9th Cir.

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

Petition for Hearing
Page 11

1998) (government violated due process by withholding informant's cooperation

agreement); *Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997) (government violated due

process by withholding information about informant); *U.S. v. Steinberg*, 99 F.3d 1486

(9th Cir. 1996) (government violated due process by withholding impeachment

evidence).

> C.   If Woodard's attorney had known early on about the true tip provided by Turlington or had known about his deals with the prosecutor, Woodard would have succeeded in suppressing evidence seized pursuant to the search warrants, or would have been acquitted.

Van Housen specifically testified on June 10 that he did not plan the robbery

with Woodard. M.O.&J. 5. But Murtagh testified that before this date he had told an

Assistant District Attorney that John VanHousen told Bill [Turlington] that John's son,

David, the manager at the Produce Department, had set this up. Sealed Tr. 14. Judge

Bolger found that this information had been conveyed from Murtagh to the State. Exc.

89. But it was not in the police report, was not told to McComas, and was not told at

the first search warrant hearing. Indeed, it was not told in any of the search warrant

hearings. VanHousen went from denying any involvement to reluctantly admitting to

being the inside man. But he never admitted that he set up the robbery. M.O.& J. 5-6.

Had this material misstatement/falsehood been know to McComas he would have

used it as part of Woodard's suppression motion, and the result would have been

different. Once this deception came to light, it would have been clear that the State

misled Judge Andrews throughout the search warrant hearings. Woodard would have

met the showing required by *Malkin* and its progeny. In addition, under the recent case

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

of *Banks v. Dretke,* 540 U.S. 668 (2004), knowingly allowing a witness to testify

falsely, as happened here, is so egregious a violation of constitutional rights that it even

entitled a defendant to a new trial on a federal habeas petition where he did not raise the

issue in state court.

A key focus of Woodard's defense at trial was that David VanHousen, Sean

Pearce, and Carl Bolhin, the three men who testified that Woodard planned and carried

out the robbery, were lying to save their own skins. His attorney argued that the three

received extremely lenient sentences in return for implicating Woodard. His attorney

argued that they were covering up the identity of the true robber/shooter and were

falsely blaming Woodard instead.

His was a close case. A jury acquitted Woodard of the most serious charge, first

degree murder. Disclosure of the favorable treatment provided to Turlington would

have been sufficient to tip the balance of this case in favor of acquittal. Armed with this

evidence, Woodard's attorney would have had the means to plant a reasonable doubt in

the mind of the jury that (1) Turlington was the person who, along with VanHousen, set

up the robbery, not Woodard; (1) Turlington was the robber, not Woodard; (3)

Turlington, whom Woodard did not know, was the instigator of a plot amongst

VanHousen, Pierce, and Bohlin to frame Woodard in order to protect the robber.

With the Turlington information, McComas could have gone after Turlington, at

trial and a jury would have decided whether Turlington he was part of the conspiracy to

shift blame. Tr. 144-45. With the Turlington information McComas would have had

strong grounds to impeach the investigation itself; that is, to impeach the officers as to

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

1   why they failed to investigate Turlington and VanHousen as the instigators of this crime

2   and failed to investigate Turlington as a prime suspect. Tr. 151.

3   II.    AT A MINIMUM, MR. WOODARD IS ENTITLED TO A REMAND SO

4          THAT HE HAS A FULL AND FAIR OPPORTUNITY TO PRESENT HIS
           CASE BASED ON THE EVIDENCE IN THE STATE'S FILES.

5          Jon Woodard established that he was entitled to production of the State's files on

6   Turlington and was entitled to have the case left open for the presentation of additional

7   evidence once his attorney had an opportunity to review the files. The documents and

8   testimony elicited in this case left a huge gap concerning Turlington's connection to

9   Woodard's prosecution. Turlington received extraordinarily favorable treatment. The

10  question as to why he received this treatment in all likelihood would have been

11  answered by the materials in the state's files.

12         It is within the trial court's discretion whether to deny a continuance. *Salazar v.*

13  *State*, 559 P.2d 66, 71-72 (Alaska 1976). But it is also true that it has long been the law

14  in Alaska in both criminal and civil cases that a defendant should rarely be denied an

15  opportunity to present evidence. In *Salazar*, the defendant in a criminal case sought a

16  continuance to enable a key witness to be available to testify. The trial judge denied the

17  request for a continuance, which came in the midst of a jury trial. On appeal the

18  supreme court reversed. It described the considerations which were pertinent as: (1)

19  whether the testimony is material to the case; (2) whether the testimony can be elicited

20  from another source; (3) whether the testimony is cumulative; (4) probability of

21  securing the absent witness in a reasonable time; (5) whether the requesting party was

22  diligent and acting in good faith; (6) the inconvenience to the court and/or others; and

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

Petition for Hearing
Page 14

(7) the likelihood that the testimony would have affected the jury's verdict. *Id.*

Adapting these considerations to the denial of a continuance to enable Woodard's

attorney to obtain, review and present evidence from the District Attorney's files on

Turlington, and to re-call Novak once he had refreshed his memory with documents and

notes from the file, should result in a conclusion that Judge Bolger abused his discretion

when he denied Woodard's request.

## GROUNDS FOR GRANTING PETITION

The issues raised here fall squarely within the parameters for review of Appellate

Rule 304. The Court of Appeals' decision is in conflict with the *Giglio, Kyles, Banks,*

and *Salazar* opinions. It erroneously applies the *Schmid/Roviario* balancing test to a

case where the identity of an informant is known and the question is whether the

favorable treatment provided to him must be disclosed. Appellate Rule 304(a).

Dated at Anchorage, Alaska, this 12th day of October, 2004.

By: _____
    Christine S. Schleuss
    ABA No. 7811132
    FRIEDMAN, RUBIN & WHITE

CERTIFICATE OF SERVICE
I certify that on this
13th day of October, 2004,
a true and correct copy of
the foregoing was mailed to:

W.H. Hawley
Attorney General's Office
Office of Special Prosecutions & Appeals
310 K Street, Suite 308
Anchorage, Alaska 99501

Petition for Hearing
Page 15

FRIEDMAN, RUBIN & WHITE
1227 W. 9th Avenue, Second Floor
Anchorage, AK 99501
907-258 0704 ~ Fax: 907 278-6449

NOTICE

*Memorandum decisions of this court do not create legal precedent. See Alaska Appellate Rule 214(d) and Paragraph 7 of the Guidelines for Publication of Court of Appeals Decisions (Court of Appeals Order No. 3). Accordingly, this memorandum decision may not be cited as binding precedent for any proposition of law.*

## IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JON ARNOLD WOODARD, | ) | |
| | ) | Court of Appeals No. A-8243 |
| Appellant, | ) | Trial Court No. 3AN-00-6982 CI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| STATE OF ALASKA, | ) | AND JUDGMENT |
| | ) | |
| Appellee. | ) | [No. 4931 — September 29, 2004] |
| | ) | |

Appeal from the Superior Court, Third Judicial District, Anchorage, Joel H. Bolger, Judge.

Appearances: Christine Schleuss, Anchorage, for the Appellant. W. H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: Coats, Chief Judge, and Mannheimer and Stewart, Judges.

STEWART, Judge.

Jon Arnold Woodard appeals the denial of his application for post-conviction relief. Woodard's application went to hearing before Superior Court Judge pro tem Joel H. Bolger, and Judge Bolger rejected Woodard's claims.

Woodard argues that Judge Bolger erred because he did not grant a mid-hearing continuance to seek additional discovery. We conclude that Judge Bolger did not abuse his discretion when he denied that request. Woodard also argues that Judge

Bolger should not have rejected his claim that the State withheld exculpatory evidence by failing to inform Woodard's trial attorney that a person who supplied an early investigative lead entered into a plea agreement with the State in the person's own pending criminal case. But Judge Bolger found that Woodard's trial attorney knew about the lead, knew the identity of the person who supplied it, knew that the person was facing criminal charges, and knew of the potential for a plea agreement. Judge Bolger also found that the plea agreement was not exculpatory evidence. Because Judge Bolger's findings are not clearly erroneous, and because those findings support his decision denying Woodard's application, we affirm.

### Background facts and proceedings

On June 8, 1992, during an armed robbery of the Aurora Village Carrs Store in Anchorage, Woodard shot and killed Terrence Becker, a security guard. A jury convicted Woodard of first-degree robbery and second-degree murder for killing Becker during the course of the robbery.[1] On direct appeal, this court affirmed Woodard's convictions.[2]

While the investigation was under way, a defense attorney representing a defendant in an unrelated criminal case informed an assistant district attorney that his client (William Turlington) had information regarding the Carrs robbery and homicide. The defense attorney told the prosecutor that his client had a friend named John VanHousen whose son, David VanHousen, worked in the produce section of Carrs.

---

[1]    AS 11.41.500(a) and AS 11.41.110(a)(3), respectively.

[2]    *Woodard v. State*, Alaska App. Memorandum Opinion and Judgment No. 3933 at 48 (Dec 9, 1998), 1998 WL 849246 at *23.

According to the defense attorney, John VanHousen had expressed the fear to the defense attorney's client that David VanHousen was involved in the robbery and homicide.

Before long, the prosecuting authorities concluded that the person identified by the defense attorney was Turlington. The district attorney's office passed this information on to the Anchorage Police. The police did not contact Turlington. Instead, they located David VanHousen and confronted him. VanHousen eventually admitted that he was involved in the robbery and identified Woodard as the person who shot Becker.

Details of the lead supplied by Turlington's defense attorney to the assistant district attorney were included in the police report prepared by Anchorage Police Detective Bill Reeder and provided to Woodard during discovery. During preparation for trial, Woodard's trial attorney spoke with Turlington's defense attorney. They discussed the potential that Turlington would reach a plea bargain with the State.

Over six months after the homicide, Turlington reached a plea agreement in his case and received a suspended sentence. Turlington tested positive for cocaine several times beginning in February 1993, a few weeks before Woodard's trial began on March 25, 1993. Although Turlington's plea agreement was premised on the fact that Turlington had no prior felony convictions, the State learned after Woodard's trial that Turlington had a 1962 New York conviction for conspiracy to commit robbery and a 1964 New Jersey conviction for robbery. Before Woodard's trial started, the State did not provide any additional information to Woodard about Turlington's plea agreement or his performance on probation. Turlington was never called as a witness, and was never interviewed by police or prosecutors about Woodard's case.

Woodard sought post-conviction relief, arguing that the State had violated Criminal Rule 16 and Woodard's right to due process by failing to disclose Turlington's identity and Turlington's plea bargain. After hearing testimony at an evidentiary hearing

-3-

4931

on Woodard's post-conviction relief application, Judge Bolger denied Woodard's application.

*Discussion*

*Did the State breach its duty to disclose exculpatory evidence?*

The State must disclose favorable, material evidence, as required by *Brady v. Maryland*[3] and Alaska Criminal Rule 16(b)(3).[4] Woodard argues that the State breached this duty by not disclosing Turlington's plea agreement, criminal record, and poor performance on probation.

Woodard first argues that if the State had disclosed more information about Turlington, he would have been able to show that David VanHousen lied at a search warrant hearing, and thus that Woodard would have succeeded in suppressing the evidence obtained as a result of the warrants used by the State in the investigation. But Woodard did not raise this argument in the superior court; therefore it is not preserved.[5]

Woodard also argues that if the State had disclosed additional information about the substance of Turlington's tip, Woodard might have succeeded in portraying Turlington as the perpetrator of the crime. Yet Woodard does not challenge Judge Bolger's finding that the State revealed Turlington's identity and the details of the information he provided. Instead, Woodard argues that the State failed to disclose (1)

---

[3]    373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[4]    *Putnam v. State*, 629 P.2d 35, 43 (Alaska 1980) (rejected on other grounds in *Stephan v. State*, 711 P.2d 1156, 1163 (Alaska 1985)).

[5]    *See Plate v. State*, 925 P.2d 1057, 1067 (Alaska App. 1996) (order on rehearing); *see also Moreau v. State*, 588 P.2d 275, 279-80 (Alaska 1978) (holding that Fourth Amendment claims generally cannot be raised for the first time on appeal).

4931

Ex. 13, p. 19

substantive details of Turlington's tip that were not contained in Detective Reeder's report and (2) the favorable treatment given Turlington by the State in exchange for his tip.

The first part of the answer to these claims lies in Judge Bolger's decision. Judge Bolger concluded that the details of the lead supplied by Turlington's defense attorney, Turlington's record, and Turlington's plea agreement did not constitute exculpatory evidence. Judge Bolger noted that Turlington's tip did not even mention Woodard's name. Judge Bolger also found that Woodard had not shown that Turlington could give any helpful testimony on the issue of Woodard's guilt or innocence.

The second part of the answer to these claims lies in the privilege of the State to refuse to disclose the identity of an informer. In *Schmid v. State*,[6] the Alaska Supreme Court followed the approach to the informer's privilege established in *Roviaro v. United States*.[7]

The *Roviaro* Court developed a test which requires that the public's interest in protecting the flow of information to the authorities be balanced against the defendant's right to prepare a defense to determine if disclosure is justified. Whether disclosure should be compelled "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."[8]

The *Schmid* court described the burden that a defendant seeking disclosure of an informant's identity must meet:

> The defendant has the burden of showing a need for the informant's disclosure which is material to his defense. *United States v. Calhoun*, 542 F.2d 1094, 1098 (9th Cir.

---

[6]    615 P.2d 565, 573 (Alaska 1980).

[7]    353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

[8]    *Id*. at 62, 77 S.Ct. at 629.

1976); *United States v. Prueitt*, 540 F.2d 995, 1004 (9th Cir. 1976); Annot., 76 A.L.R.2d 262, 269-70 & 298 (1961). A simple assertion that the information is needed is insufficient to meet that burden for the reason that allowing mere speculation would effectively defeat the informer's privilege. *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45; *State v. Gill*, 22 Or.App. 484, 539 P.2d 1138, 1139-40 (1975). But the defendant should not have to prove before disclosure the very fact that he or she seeks to obtain through disclosure *See Williams v. Superior Court*, 38 Cal.App.3d 412, 112 Cal.Rptr. 485, 489 (1974). We believe that the California Supreme Court has established a reasonable burden of proof on this issue. It requires that the defendant demonstrate a *reasonable possibility* that the anonymous informant *could* give evidence on the issue of guilt or innocence which *might* result in the defendant's exoneration. *People v. Garcia*, 67 Cal.2d 830, 64 Cal.Rptr. 110, 114, 434 P.2d 366, 370 (1967); *see also Williams v. Superior Court*, 112 Cal.Rptr. at 488.[9]

The *Schmid* court then described contrasting factors that militate for or against disclosure:

Circumstances which weigh in favor of disclosure include the following: where the informant is a crucial participant in the illegal transaction, *Roviaro v. United States*, 353 U.S. at 64, 77 S.Ct. at 629, 1 L.Ed.2d at 47 (1957) (informant was buyer of narcotics in transaction where accused was charged with making the sale); where the informant was active in setting the stage for illegal transaction, *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45 (introduced defendant to undercover police officer); where the informant was an eyewitness, *United States v. Tucker*, 552 F.2d 202, 207 (7th Cir. 1977); *People v. Goggins*, 356 N.Y.S.2d at 574, 313 N.E.2d at 44; and where the evidence

---

⁹    *Schmid*, 615 P.2d at 571-72 (emphasis in original).

is equally balanced, *United States v. Tucker*, 552 F.2d at 207; *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45.

On the other hand, circumstances which weigh against disclosure include the following: where the prosecutor is able to present the case-in-chief without reference to the informant, Annot., 76 A.L.R.2d at 281; where the informant is a witness but other witnesses are available but are not called by the defense, *State v. Gill*, 539 P.2d at 1139-40 (other witnesses to alleged entrapment not called by defendant); where disclosure would endanger the informant, *United States v. Palermo*, 410 F.2d 468 (7th Cir. 1969); and where the informant is a mere "tipster" who only "points the finger of suspicion toward a person who has violated the law," *People v. Garcia*, 64 Cal.Rptr. at 114, 434 P.2d at 370; *see also United States v. Fischer*, 531 F.2d 783, 787 (5th Cir. 1976); *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45.

The most important consideration in determining whether the defendant has made a sufficient showing to compel disclosure is the degree of the informant's participation in the charged offense. Where the informant is only a tipster who has played no part in the criminal act with which the defendant had been charged, the benefit of any testimony to the defendant's case is probably minimal when compared to the public's interest in protecting the identity of the informant.[10]

Under this balancing test, the State would have been justified in refusing to reveal Turlington's identity because the information that Turlington's defense attorney supplied to the State only pointed the authorities to David VanHousen. It was David VanHousen who revealed Woodard's identity and Woodard's participation in the crimes, not Turlington. As Judge Bolger found, there was no evidence that Turlington had any part in Woodard's crimes. Judge Bolger also found that there was no evidence that

---

[10]    *Id.* at 572.

Turlington had any knowledge of the crimes other than the hearsay report he received from John VanHousen, indicating that VanHousen's son may have been involved. Thus, under the balancing test adopted in *Schmid*, the State could have legitimately declined to reveal Turlington's identity. Because Woodard was not entitled to Turlington's identity, the State would have committed no error if it had refused to disclose Turlington's identity or the details of his case. Thus, the State did not breach its duty to disclose exculpatory evidence.

### *Should Judge Bolger have continued the hearing?*

Woodard argues that Judge Bolger erred by denying his mid-hearing motion to continue, so he could pursue additional discovery. Criminal Rule 35.1(g) provides that all civil pre-trial and discovery procedures are available to the parties.

On January 22, 2002, the day before the post-conviction evidentiary hearing, Woodard served a subpoena on the original prosecutor who had handled Turlington's case, ordering him to appear and to bring with him all the records pertaining to Turlington. At the beginning of the hearing, the State informed the judge that the requested records had been archived, and would not be available for one to two weeks. Judge Bolger took the matter under advisement, yet indicated that he was not inclined to allow Woodard additional time to obtain the records. Turlington's prosecutor testified but could not answer all of Woodard's questions without access to the archived records.

Judge Bolger ultimately denied Woodard's request for additional discovery from the State. Noting that the case had been pending for "nearly two years," Judge Bolger found that Woodard had had an adequate opportunity to conduct discovery in the case.

-8-                                                            4931

A party moving to continue a case set for trial must show that the party acted with due diligence upon the grounds for which the continuance is sought.[11] Furthermore, a trial court can properly deny a continuance to seek evidence if the moving party did not show due diligence to produce the evidence through the use of normal discovery.[12] It appears from this record that Judge Bolger did not abuse his discretion when he denied additional discovery. Furthermore, as we noted above, the State could have declined to reveal Turlington's identity in the first instance, so additional details about Turlington and how his criminal case was processed were immaterial. Thus, Judge Bolger did not abuse his discretion when he refused to continue the hearing to allow additional discovery.

### Conclusion

The judgment of the superior court is AFFIRMED.

---

[11] *Sparks v. Gustafson*, 750 P.2d 338, 341 (Alaska 1988).

[12] *Id.*

-9-                                                              4931