IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA


JON WOODARD                          )
                                     )
            Petitioner,              )
                                     )
        vs.                          )
                                     )
JOHN CRAIG TURNBULL                  )
                                     )
            Respondent.              )
_____ ) CASE NO:3-05-0089-CV (TMB)


**MEMORANDUM IN OPPOSITION TO
STATE'S MOTION TO DISMISS AND ANSWER
TO RESPONSE TO ORDER TO SHOW CAUSE**


Petitioner, Jon Woodard, through his attorney Hugh W. Fleischer, hereby opposes the State of Alaska's Motion to Dismiss Mr. Woodard's Petition for Habeas Corpus.

Jon Woodard filed his petition for habeas corpus, citing eleven separate grounds there for.

The State has argued that Mr. Woodard has failed to exhaust claims 2, 4, 5, 6, 7, 8, 10, 11 and 12.

**INTRODUCTION**

The Court said in ***Rose v. Lundy***, 455 U.S. 509 (1982), citing ***Ex parte Royall***, 117 U.S. 241, 251 (1866) "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a

constitutional violation", federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." **Darr v. Burford**, 339 U.S. 200, 204 (1950)" In the case at bar, the petitioner gave the Alaska Supreme Court and the other Alaska courts full and more than adequate notice of the federal claims that he raised.

B.)* As to claim 2, the petitioner cited the case of **Chambers v. Mississippi**, 410 U.S. 284 (1973) and **Keith v. State**, 612 P.2d 977 (Alaska 1980). These were the only two cited cases in support of claim 2.[Ex. 6, p.6]** Mr.

* The response to the Motion to Dismiss uses the same letters as the State used regarding the respective grounds

** References to State's Exhibits, unless otherwise indicted.

Woodward is raising issues the directly went to confrontation under the Sixth Amendment to the U.S. Constitution. The petitioner relied on Chambers in a wholly "unveiled" manner in accordance with **Casella v. Clemons**, 207 F. 3d 18, 21 (1st Cir. 2000), cited by the

* The response to the Motion to Dismiss uses the same letters as the State used regarding the respective grounds

** References to States Exhibits, unless otherwise indicted.

State. [Motion to Dismiss, p.4] The State also cited

*Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 2005). The Court in *Johnson*, cited with approval the case of *Duncan v. Henry*, 513 U.S. 364, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995)(per curium), " We made it clear in *Piccard v. Connor*, 440 U.S. 270 (1971), that a prisoner need not place the correct label on his claim, or even cite the Federal Constitution, as long as the substance of the federal claim has been presented." @ 367  This is precisely what Mr. Woodard did as to the second claim, including an actual reference to the *Chambers* U.S. Supreme Court case and thus, it should not be dismissed but rather maintained as a valid claim for relief.

 C) As to claim 4, the State argues that this claim did not raise a federal constitutional claim to the State court.  Such is not the case.  Indeed, the citation of *Kuki v. State*, 483 N.E.2d 788(Ind. App. 1985), is instructive of this point.  The court was dealing, as here with alleged mistaken identity and cited as the authoritative source for this subject, *United States v, Wade*, 388 U.S. 218, 18 L.Ed2d 1149, 87 S. Ct. 1926 (1967). The Supreme Court, in dealing with the subject of mistaken identity, referred to the Five and Sixth Amendments to the U.S. Constitution.  Given the heavy import of due process, the right to not have to be a witness against oneself and

3

the right to counsel, are all constitutional issues entwined in the question of serious mistaken identity, all of which constitutional issues are present in Mr. Woodard's case, as they were in the case cited by the *Kuki* court. Thus, his 4th claim is ripe for decision by this Court.

D) The State has also challenged Mr. Woodard's fifth claim and, *inter alia*, cites as support in its brief "Exh. 3 at 79-82. (p.10) On page 79, Mr. Woodard pointed out to the court that his rights to a fair trial is a basic constitutional right, citing *Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Estes v. Texas*, 381 U.S. 532 (1964); *Rideau v. Louisiana*, 373 U.S. 723 (1963) and *Irwin v. Dowd*, 366 U.S. 717 (1961). Also, on page 100 of such Exhibit, in specifically discussing the exclusion of the June 25, 1992 videotaped police interview of VanHousen, the defense cited *Gordon v. United States*, 344 U.S.414 (1953.

E) As to ground six, the State argues that *State v. Malkin*, 722 P.2d 943 (Alaska 1986) was central to his claim. However, Mr. Woodard did raise and thus, cited a federal precedent, *Franks v. Delaware*, 438 U.S. 154 (1978) [Ex. 11, p.7] Also, in his Opening Brief to the Alaska Court of Appeals he cited regarding this ground, *Wong Sun v. United States*, 371 U.S. 471 (1963)[Ex. 3, p. 49];

4

*Berger v. New York*, 388 U.S. 41 (1967)[Ex. 3, p. 51];
*Illinois v. Gates*, 462 U.S. 212 (1983) [Ex. 3, p. 56].
Also, in Woodard's Reply Brief to the Alaska Court of
Appeals, he cited *Carroll v. United States*, 267 U.S. 132
(1925) [Ex. 4, p. 12]

F) Mr. Woodard acknowledges that ground seven was not
made to the Alaska Supreme Court.  However, Mr. Woodard
made a successful effort in the U.S. District Court to
have the 18 U.S.C. 924 (c) prosecution dismissed, which
prosecution, at the time carried a mandatory minimum of
five years incarceration, if convicted.  The federal
prosecution was dismissed in *United States Woodard*, Case
Number A92-113 CR (HRH).  Such federal statute and
dismissal dealt specifically with whether the statute was
violated by having firearms and an illicit drug operation
intertwined.  It was determined by this Court that Mr.
Woodard had not violated the statute and his federal
prosecution was dismissed in the Fall of 1999.  Mr.
Woodard asserts that such facts constitute sufficient
cause and prejudice under the authority of *Wainright v.
Sykes*, 433 U.S. 72, 86-87 (1977).

G) As to ground eight, the State is flat wrong.  Mr.
Woodard did raise the shackling issue to the Alaska
Supreme Court in which Jon Woodard cited *Spain v. Rushen*,

883 F.2d 712 (9th Cir. 1989) [Ex. 3, p. 115] and **Holbrook v. Flynn**, 475 U.S. 560 (1986) [Ex. 3, p. 115] in which the Court held that "an inherently prejudicial practice …like shackling should only be permitted by an essential State interest. [*id.*] In addition Woodard, in his Petition to the Alaska Supreme Court, [Ex. 6, pp. 1-4] cited the U.S. Ninth Circuit Court of Appeals standard regarding shackling, noting that the trial court 1) must "be persuaded by compelling circumstances that some measure was needed to maintain the security of the courtroom." 2) the trial court must "pursue less restrictive alternatives before imposing physical restraints." **Jones v. Meyer**, 899 F.2d 883 (9th Cir. 1990) and other Ninth Circuit authorities.  Woodard went on to specifically reference the key issue being raised in the matter at bar, when he said in his Petition to the Alaska Supreme Court, "No jury could have failed to notice his immobility.  Being shackled affected his mental faculty, impaired communications with counsel, impacted his decision not to testify and was painful.  See **Kennedy v. Cardwell**, 487 F.2d 101, 105-06 (6th Cir.1973, cert. den, 416 U.S. 959 (1974)." (Ex. 6, p.4).  Moreover, in his dissent in the Alaska Court of Chief Judge of the Alaska Court of Appeals, Justice Bryner stated,

6

Although Woodard sat behind a table that was skirted to obstruct the jury's view, it is difficult to imagine how the jury could have failed to notice the situation after Woodard appeared before it in this condition, day after day, during two months of trial: Woodard could never stand; or pour himself a drink without assistance; or flip the pages of his legal pad without putting down his pen or pencil; or even rest his hands and elbows on the table. Myriad clues would surely have alerted jurors that Woodard was restrained and would have served as a constant reminder that the prosecution, the Court, and perhaps even his own counsel considered him dangerous.   [Ex. 5, p. 145]

The issue raised in this petition regarding shackling being observed by the jury was forefront before the Alaska courts on federal constitutional grounds and is therefore, properly before this Court.

 H) On ground ten, the State has argued, once again, that Woodard failed to make any federal constitutional issue of matters pertaining to William Turlington, a key informant in the case and one who had told his attorney, John Murtaugh, that VanHousen was involved in the robbery/murder, which was the subject of the case below. Woodard also claimed that the State failed to disclose Turlington's past prior convictions for robbery and theft as well as a drug conviction.  In the Supplemental Briefing to Judge Bolger in the Post-Conviction Relief case, dated January 30, 2002, Mr. Woodard cited as the principal authority on the questions posed by the Tarlington-VanHousen situation, **Brady v. Maryland**, 373 U.S. 83 (1963) Similarly, in Judge Bolger's Findings of

7

Fact, he cites the same said case in reviewing the question of the State's failure to disclose Turlington's identity and the details surrounding the information he provided. [Ex. 9, pp.5-6] Therefore, ground ten is viable and should be given full consideration by this Court.  In addition, the State asserts that Exhibit 10 at 8-9 establishes that he had not met the test of having filed a federal constitutional claim in the Alaska court.  Exhibit 10, p.9 contains this entry, "At post-conviction relief proceedings, where the government withheld material evidence, reversal is required if there is a 'reasonable probability' that, had the evidence disclosed, the result of the proceeding would have been different. ***Kyles v. Whitley***, 514 U.S. 419, 434, 115 S.Ct. 1555, 1556, 131 L.Ed 2d 490 (1995).  This claim conclusively is properly before this Court.

 I) Regarding ground eleven, in which Woodard claims that the State failed to disclose favorable evidence regarding Turlington/VanHousen matter as discussed, in major part, in Woodard's response to H above, which shows, definitively, that both Grounds ten and eleven should be recognized as legitimate grounds before this Court.

 J)  Ground twelve deals with Woodard's claim that the admission into evidence at trial of a highly prejudicial

videotape of him firing a shotgun during target practice violated his due process, confrontation and compulsory process.    Although this conclusion regarding the evidentiary determination is undoubtedly correct, it was not so couched in the State proceedings, and, thus, should be withdrawn.

This reply will now relate to the State's Response to the Order to Show Cause.

In reply to the first seventeen pages of the State's Response, Mr. Woodard denies the alleged statements of fact contained in paragraph 2 in the State's brief.    Mr. Woodard insists that he is innocent of charges for which he was convicted.    It must also be noted that this was an extremely close case.    Mr. Woodard was acquitted of the most serious charge, Murder in the First Degree.    The Court of Appeals decision [Ex. 5] came some three years and six months after the Mr. Woodard's opening brief and then was decided two to one, with a stinging dissent by then Chief Judge Alex Bryner.    Moreover, the vast majority of the abovementioned statements were based upon the testimony of Messrs. VanHousen and Pierce, both of who lied repeatedly about the matters regarding Woodard, as their failed polygraphs showed, but which failures were not allowed into evidence.    The issue of failed polygraphs was identified in the Petition for Hearing [Ex. 6] as II

9

B.2-resulting in the dissent of one Justice of the Alaska Supreme Court. [Ex. 7]

1)    *As to Ground one, Mr. Woodard asserts that he was denied due process under the Fourteenth Amendment to the U.S. Constitution relating to the allowance of an "unreliable witness", Robin Conaway, who was the <u>only</u> witness to provide alleged eyewitness identification of Mr. Woodard as the shooter.  This response incorporates and includes the text of the statements contained in Exhibit 3, staring on p.57 through the middle of page 47. These facts conclusively show that there is any reasonable way in which the trial court and the two of three Court of Appeals judges could have reasonably found the ***Manson v. Brathwaite***, 432 U.S. 98, 114-116 (1977) factors, which had been set out in the earlier U.S. Supreme Court decision of ***Neil v. Biggers***, 409 U.S. 188, 198 (1972) to have been met by Ms. Conaway as an eyewitness identifier.  The factors make this conclusion clear and well-founded: 1) the opportunity to view.  As noted in the adopted language,

* The number references are keyed to the State's Response

she saw the shooter for only a second inside the store and then outside the store where her view was over 100 feet and she only saw the side of his face.  2) the degree of attention.  She was, understandably, concerned about her

co-employees safety but that , necessarily detracted from her attention to the identification. 3) the accuracy of the description.  This critical element was dramatically failed in Ms. Conaway's identification.  Her answers to the contemporaneous questions at Ex. 3, pp.60-61 make it indelibly clear that she was identifying someone other than Jon Woodard.  Also, she, shortly after the shooting, told fellow employees that she thought the shooter to be a former Carr's employee, Billy Evans, who was described in his physique as 5'8".  These facts as well as the newspaper photographs of Woodard make it wholly questionable as to Ms. Conaway's accuracy.  4) the witness' level of certainty.  Ms. Conaway's certainty is subject to challenge, as shown by the series of events tied to her viewing of the newspaper photograph of Woodard and the police officer's blatant violation in the photo lineup all go to the low level of certainty.  5) the time between the crime and the confrontation.  Here, Ms. Conaway fails again.  Although there was only a brief time between the observation and her description, as stated above, her initial description and even the one following her first police interview were at serious odds with any kind of reasonable identification of Woodard.  Therefore, she did not make a timely identification.

Mr. Woodard asserts that the above and the

incorporated material, establish that the trial court and the majority of the Court of Appeals decisions on this point involved an unreasonable application of the U.S. Supreme Court clearly established precedent in ***Manson v. Brathwaite*** and ***Neil v. Biggers***, supra, in violation of ***Williams v. Taylor***, 529 U.S. 362 (2000).

2)    Ground two was dealt with above and Mr. Woodard relies on the replies to the State's Motion to Dismiss in this and the other grounds referenced hereafter.

This reply adopts and incorporates the full discussion of these issues as contained in the Opening Brief by Mr. Woodard to the Court of Appeals, Ex. 3, § B. pp. 87-97. Mr. Woodard would direct this Court to the reliance on ***United States v. Abascal***, 564 F.2d 821 (9th Cir. 1977), *cert. denied*, 435 U.S. 942 (1977), for the proposition that when a trial court admitted one of series of wiretapped conversations, it was error to deny entry of related wiretaps. Just as in the case at bar, there was the assertion by the prosecutor that language in the first tape was being used as code words for drugs. The defense sought to have the other taped conversations admitted, not as hearsay, but rather to show a pattern of verbal behavior between the parties to be consistent with the defendant's claim that the admitted tape was about

12

benign matters.  Similarly, here, Mr. Woodard sought to introduce the additional tapes after the prosecution had introduced the first tape, to which the prosecution had attached guilty implications. Mr. Woodard contended that the additional tapes would not be offered to prove the truth of the matters asserted therein but rather the context in which his actions took place.  These were the same type reasons, verbal acts, as were allowed in *Abascal*, *infra*.  So they should be here, as well.

3)         Ground three is a valid issue to be resolved by this Court.  Again, this brief incorporates Exhibit 3, § D. pp. 101-105.

        The federal authorities make it clear that, under the circumstances present here, that VanHousen and Pierce had failed their respective polygraphs, which were a part of their original plea agreements, should be admissible to the jury.  These pleas agreements threatened the two witnesses that if they were to fail the polygraph examination they could and probably would face dire consequences.  *United States v. Lynn*, 856 F.2d 430 (1st Cir. 1988).  A reading of the case makes it clear that it is comparable to Mr. Woodard's case.  The defense was able to cross examine the witness regarding the plea agreement on two occasions but was not allowed to inquire as to the

failure of the polygraph as having anything to do with the witness' proclivity to lie to please the law enforcement agents.  Indeed, the Court, in speaking of Federal Rule of Evidence 403, said, "Although the district court announced first to the attorneys and then to the jury that polygraph results were inherently unreliable, no mention was made of their potential probative value, nor were any intermediate solutions considered, such as permitting questioning on the results without actually admitting them in evidence." [Emphasis added]  The latter resolution, offered by the Court is precisely what Mr. Woodard sought and was denied.  This Court should remedy this Constitutional  infraction.

4)      Ground four relates to the exclusion of three newspaper photographs while admitting only one in conjunction with the testimony of Ms. Conaway.  As mentioned, infra-§ C, Mr. Woodard cited ***United States v. Wade***, 388 U.S. 218 (1967) in support of his Fifth and Sixth Amendments to the U.S. Constitutional challenges to the court's suppression of the other photographs, when they bore on a highly questionable eyewitness, as is shown in § 1, above.  This brief also incorporates Exhibit 3, § E, pp. 105-109.  The exclusion of these photographs was, as stated in the Court of Appeals, concurring decision, to be  error.   However,  it  was  not  harmless,  as  the

14

aforementioned decision determined.  Given the important fact that Robin Conaway was the only eyewitness to identify Jon Woodard, it was incumbent on the Alaska courts to permit the introduction of the other photographs to assist in the impeachment of Ms. Conaway.  This Court should correct this injustice.

5)    Ground five.  This claim involves the exclusion of the June 25, 1992 videotaped interview of VanHousen. As referenced above, Mr. Woodard argued that such tape shows that the police had threatened and pressured VanHousen to incriminate Jon Woodard, which would have impeached his credibility and exposed his bias.  Woodard had cited that such exclusion violated, *inter alia*, **Gordon v. United States**, 344 U.S. 414 (1953).  This brief also incorporates Exhibit 3, § C, pp. 97-100.  To disallow a videotape of a key State witness, where the jury could have seen the incredible lengths and the harsh threats issued to VanHousen bring to mind the adage that "One picture is worth ten thousand words."  [Frederick R. Barnard, Printers' Ink, March 10, 1927] Here, Mr. Woodard, faced with prosecution for First Degree Murder, should have been afforded the "moving pictures" that were so valuable and essential to his defense.  The fact that he was not violated his aforementioned federal Constitutional

rights.

6)          Ground six.  This claim concerns alleged Fourth Amendment unconstitutional searches and seizures by State and Federal authorities.  As noted above, under § E, Mr. Woodard did cite ***Franks v. Delaware***, 438 U.S.154 (1978)[Ex. 11, p.7] and the other federal authorities referenced therein, make it clear that he should have been afforded an evidentiary hearing.  This brief incorporates Exhibit 3, § I, pp.32-57.  For the reasons cited therein and the federal cases cited by the defense in the State courts, it is submitted that the failure to provide an evidentiary hearing did violate his constitutional rights, which should be addressed by this Court.

7)          Ground seven.  This was fully discussed, infra, at § F and Mr. Woodard relies on such argument in response to this paragraph.

8)          Ground eight.  This is the shackling issue and, as has been shown above, in § G, Mr. Woodard, contrary to the allegations of the State, has identified clearly the federal bases for this claim and, moreover, has made the case that the State courts were on notice that the defense was raising the issue of his being seen by the jury in his chains and shackles.  What could be more clear than the petition to the Alaska Supreme Court, in which Woodard said, "…it is a denial of due process if a trial court

16

orders a defendant shackled without first engaging in a two-step process. *Duckett v. Godinez*, 67 F. 3d 734 (9th Cir. 1995). See, *Holbrook v. Flynn*, 475 U.S. 560 (1986)."? These cases verify that the two-step process requires the defendant be given notice and a hearing before the decision is made. Neither was provided in this case. Woodard went on to say, again, "No jury could have failed to notice his immobility." There has been a consistent effort to challenge the chains and shackling, from the time such were introduced to the current day.

The State has averred that Mr. Woodard's petition is beyond the statute of limitations. This is simply not the case. The time limit for Mr. Woodard's § 2254 petition was one year from the service of the denial of the second petition by the Alaska Supreme Court, which occurred on December 29, 2004. Thus, he had until, at least, December 28, 2005, within which to file his petition. He filed the petition on April 27, 2005, approximately eight months prior to the end of the statute of limitations. The amended petition was filed in accordance with orders from the U.S. District Court.

The State also has raised the issue of whether the amended petition properly relates back, citing *Mayle v. Felix*, 545 U.S. 644 (2005). Such case is inapposite.

17

Petitioner had filed timely, alleging a Sixth Amendment violation.  The amended petition attempted to add a Fifth Amendment claim.  Under such circumstances the Court found that the amended claim did not relate back.  However, in this case, Mr. Woodard's petition stated, *inter alia*, " The Superior Court committed constitutional error by issuing a *sua sponte* order to shackle Woodard's legs, body and hands in the presence of jurors in the courtroom…" [emphasis added].[Ex. 1, p. 19] He also listed as part of what would have been requested, had a hearing been permitted, to "determine if jurors could see or were otherwise aware of Woodard's shackles in the courtroom,.." [*id*.] He went on to say, "that if the Superior Court did hold a hearing, facts would have confirmed…, that jurors were exposed to or otherwise aware of Woodard's shackles in the courtroom,.." [Ex. 1, p.20]  Later, he stated, "..that Judge Mannheimer made an incorrect presumption of fact that jurors could not see or were otherwise unaware of Woodard's shackles in the courtroom,..".[*id*.]  These assertions "are tied to a common core of operative facts"- " " when the new claim is based on the same facts as the original pleading." **Mayle** @ 664.

Therefore, Mr. Woodard has made the case for a new trial given the jurors' having had to and, in fact, seen the chains and shackles on Jon Woodard, providing him an

18

unconstitutional trial, under the authorities cited at the time of his initial appeal.

9)        Claim ten.  This is a claim regarding the State's unconstitutional failure to inform Mr. Woodard of the informant, William Turlington, who had indicated through his counsel, John Murtaugh, that VanHousen was involved in the robbery/murder and that he was denied a full and fair opportunity to raise this claim in State court. [Ex. 1, p. 22].  Mr. Woodard claims that the State failed to disclose Turlington's criminal convictions for robbery, theft and drugs.  Turlington also had probation violations, questions about his plea bargain, the favorable treatment from the State and his relationship with VanHousen's Father.[*id.*]  Woodard further alleges that the Turlington evidence could have been used 1) to show that VanHousen and Turlington committed the subject offense, 2) to find other favorable evidence, and 3) to impeach the investigation.  [*id*].  As stated above, Woodard specifically cited the landmark federal Supreme Court case, **Brady v. Maryland**, 373 U.S. 83 (1963), in which the Court held that suppression of evidence favorable to the accused violated the Due Process Clause of the U.S. Constitution, Amendment Fourteen, where the evidence was to guilt or punishment, regardless of the State's good or bad faith.

19

The State has argued that Turlington was only a "tipster", but this, by no means, ends the inquiry. Woodard had the right to have this information about Turlington under *Brady*, *infra*. Had he received the information he may very well have been able to develop information about the possibility of guilt for the subject crime. However, Woodard was not given the information, so it is impossible to say, as the State is attempting to say, that there was no moment to the Turlington information.

10) Ground 11. This claim relates to the last claim, in that it cites the Court's holding of the State for its unconstitutional failure to disclose to Woodard material and favorable evidence that witness VanHousen was the person who "set up" the Carr's robbery, which, if disclosed, 1) could have been used in search warrant proceedings, grand jury, or trial to exculpate Woodard and impeach the credibility of VanHousen and to support Woodard's defense that VanHousen was the perpetrator of the offense, 2) could have led to other admissible material and favorable evidence and 3) could have been used at trial to impeach State authorities and other witnesses.

The State has misinterpreted his claim. He was not saying that he had a constitutional right to an indictment

20

by a grand jury.  He was simply saying that had he received the referenced information it might have had an impact in a number of different ways, including that the information may have led to an indictment of VanHousen/Turlington as well as at trial.  He is basing his constitutional claim on the same authority that was cited in § 9 above.

 Based on the above, Mr. Woodard believes that this is a valid and reasonable ground for relief.

11. Ground 12.  This claim is withdrawn as reference in § J.

    Mr. Woodard notes that the State did not, in any way, respond to the specific assertion by Mr. Woodard that Mr. Woodard re-stated his innocence of the crimes in question and asserts that Robert F. Kane was the true murderer/robber of the subject case. We respectfully ask the State to initiate the case against Mr. Kane and bring him to justice for the acts for which Mr. Woodard has been wrongfully convicted.


## CONCLUSION

    For the reasons set out above, the petitioner respectfully requests That this Court allow the Mr. Woodard's request for a withdrawal of Ground 12, and deny the States Motion to Dismiss as to the remaining

counts and grant the relief requested by the petitioner, for reversal of the conviction and remand for a new trial, with the reservation of the right to challenge a new trial.

DATED at Anchorage, Alaska, this 5th day of March, 2007.

LAW OFFICES OF HUGH W. FLEISCHER
Attorney for Petitioner


By:_____S/Hugh W. Fleischer_____
            Hugh W. Fleischer
            AK Bar # 7106012
            Law Offices of Hugh W. Fleischer
            310 K. Street, Suite 200
            Anchorage, AK 99501
            (907) 264-6635
            (907) 264-6602 (fax)
            hfleisch@aol.com

9114.1/551

**CERTIFICATE OF SERVICE**

I certify that on the 5th day of
March, 2007, a true copy of the
foregoing was delivered electronically
to the following counsel:

W. H. Hawley, Jr.
Office of Special Prosecutions and Appeals
310 K. St., Suite 308
Anchorage, AK 99501

S/ Hugh W. Fleischer