Jon Woodard
CCA-CADC
P.O. Box 6200
Florence, AZ. 85232

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

In the Matter of the        )
Application for Post-       )
Conviction Relief Of:       )
                            )
                            )
                            )
                            )
Jon A. Woodard              )
                            )
_____)
Case No: 3AN-00-6982CI



Filed in the Trial Courts
STATE OF ALASKA, THIRD DISTRICT

MAY 3 2000

Clerk of the Trial Courts

**VRA CERTIFICATION.** I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offence listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any crime unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

**APPLICATION FOR POST-CONVICTION RELIEF**
**CRIMINAL RULE 35.1**

COMES NOW THE APPLICANT, Jon A. Woodard, requesting post-conviction relief from the judgment entered in <u>State of Alaska v. Jon A. Woodard</u>, No. 3AN-S92-5238 CR, on 23 December 1993 (amended 16 March 2000) by Judge Karen L. Hunt of the Superior Court, Third Judicial District at Anchorage. At trial he was represented by privately-retained counsel, James McComas (1227 W. 9th Ave., Suite 201 Anchorage, AK. 99501).

Mr. Woodard pled not guilty to all counts. On 7 June 1993 he was found guilty by a ten (10) person jury of the following offenses: Murder in the Second Degree (AS 11.41.110(a)(3), and

-1-

Proposed Exhibit    EXHIBIT A-1

Robbery in the First Degree (AS 11.41.500(a)(1)). He was found not guilty of Murder in the First Degree (AS 11.41.100(a)(1).

On 24 September 1993 he was sentenced to a term of imprisonment of 66 years for Murder in the Second Degree. On 2 and 14 March 2000, he was sentenced to 14 years with 7 suspended for Robbery in the First Degree. The robbery sentence runs concurrently with the murder sentence. See, attached amended judgment.

Mr. Woodard appealed his conviction to the Court of Appeals for the State of Alaska (No. A-5187), and the State cross appealed (No. A-5217). The Appellate Court affirmed and remanded (M.O. & J. No. 3933)(Bryner, C.J., dissenting). A Petition for Hearing to the Alaska Supreme Court was subsequently denied (No. S-0817)(Eastaugh, J., and Carpeneti, J., both dissenting, Bryner, J., not participating). He was represented on appeal by privately retained counsel, Christine Schleuss (500 L. St. suite 300, Anchorage, AK. 99501).

On remand from the State's cross-appeal, he was represented by court appointed counsel, Leslie Heibert, Assistant Public Advocate for OPA (900 W. 5th Ave., Suite 525, Anchorage, AK. 99501).

Mr. Woodard's sentence for Robbery in the First Degree, which was imposed on 14 March 2000, is currently under appeal. The State also filed a cross-appeal. Both appeals are currently pending.

Mr. Woodard is presently in the custody of private prison contractor Corrections Corporation of America (CCA), Central Arizona Detention Center (CADC), at Florence, Arizona (1155 Pinal

Pkwy., Florence, AZ. 85232). Alaska DOC turned him over to the custody of CCA-CADC due to overcrowding in Alaska prisons. Pursuant to AS 33.30.031 et seq., DOC has a contract with CCA-CADC for the custody of the Applicant.

This application for post-conviction relief is brought pursuant to Criminal Rule 35.1 and AS 12.72.010 (1), (4), (5), and (6). The facts and grounds raised in this application will be supported by the attached exhibits, affidavit, and the accompanying memorandum of law.

Claim I of this application alleges that certain state prosecutors violated Mr. Woodard's right to due process of law and Alaska Criminal Rule 16 by failing to disclose material and relevant information pertaining to the criminal background, leniency agreements, and probation violations of a key state's informant-witness. The relief requested is reversal of his convictions and other appropriate sanctions.

Claim II alleges that in addition to their actions in Claim I, state prosecutors committed fraud upon the court, which harmed the integrity of the judicial process when they failed to disclose evidence for the court's consideration. Pursuant to Civil Rule 60(b), Mr. Woodard requests equitable relief in addition to the relief requested in Claim I.

Calim III alleges that by their actions in Claim I, the State violated Mr. Woodard's right to confrontation. The relief requested is reversal of his convictions and other appropriate sanctions.

Claims IV and V jointly allege that Mr. Woodard is cur-

-3-

rently serving a sentence that was rendered illegal due to his being unlawfully committed to the custody, control, and restraint of a private out-of-state corporate prison pursuant to an illegally enacted law. Claim IV specifically alleges that the bill that amended and repealed provisions of the statute (AS 33.30.031) that authorizes DOC to contract with an out-of-state private agency for the commitment of the Applicant is void as being enacted in violation of Article II section 13 of the Alaska Constitution. Claim V specifically alleges that Mr. Woodard's substantive due process rights were violated when legislative and executive branch officials subjected him to the illegally enacted law in claim IV. The combined constitutional violations committed by Alaska State officials has resulted in the loss or waiver of custodial jurisdiction, warranting Mr. Woodard being relieved from the judgment entered in the Superior Court, requiring his release from custody.

## FACTS AND GROUNDS WARRANTING RELIEF

### I

**Whether state prosecutors violated the mandated constitutional and court disclosure rules by failing to disclose relevant and <u>material information pertaining to a key state's informant.</u>**

1. On or about 10 June 1992, during a state <u>Glass</u> warrant hearing (no. 92-915 SW) in the Superior Court at Anchorage, before Judge Elaine Andrews, ADA Branchflower presented to the court a series of hearsay statements made by an informant described only as "Defendant X." No information pertaining to Defendant X's criminal background, self-interest, motive to testify, or his relationship to other state's informants was presented to

-4-

the Court for consideration. <u>See</u>, attached exhibit A.

    2. On 27 October 1992, Superior Court Judge Karen Hunt granted a defense motion to compel disclosure, which, <u>inter alia</u>, directed the State to "Forthwith provide... information to the defense after the date of this order, as such information comes into its knowledge, possession, or control...." The Court also ordered, "[i]t shall forthwith submit such material to the court for its review." <u>See</u>, attached exhibit B.

    3. On or about 15 December 1992, the State charged informant-witness William Turlington with two counts of Misconduct Involving a Controlled Substance in the Third Degree. <u>See</u>, attached exhibit C.

    4. On or about 17 December 1992, the State entered into a cooperation/plea agreement with William Turlington, <u>inter alia</u>, to receive sentencing considerations for providing information to the State which resulted in the prosecution of the Applicant. <u>See</u>, attached exhibit D.

    5. In reference to the agreement described in paragraph 4, provision (9) made the agreement conditioned upon Turlington "[h]aving no previous criminal history of felony convictions." Information pertaining to his prior criminal record was not disclosed to the defense and withheld from the Court's consideration. <u>See</u>, attached exhibits E p. 4-7, F p. 1, and D p. 2.

    6. On or about 4 February 1993, among other dates, Turlington breached the agreement described in paragraph 4, by violating conditions of his probation. No petition to revoke was ever filed. <u>See</u>, exhibits F p. 3, and G p. 2.

-5-

EXHIBIT A- 5

7. On or about 13 June 1993, William Turlington was charged with a theft at Carr's grocery (case no. 3AN-M93-4675 CR). See, attached exhibits H and F p. 3.

8. At all times stated in paragraphs 1 through 7, state prosecutors had disclosure obligations pursuant to U.S. Const. Amend. XIV, AK. Const. Art. I § 7, and Alaska Criminal Rule 16.

9. As described in paragraphs 1 through 7, the State possessed relevant and material information pertaining to the criminal background and ongoing criminal activity of William Turlington, and withheld this information from the court and the defense. See, A through H.

10. At all times listed in paragraphs 1 through 7, the State possessed relevant and material information pertaining to the ongoing relationships and social interactions of David Vanhousen, John Vanhousen, and William Turlington, and withheld this information from the court and the defense.

11. The Applicant has always contended the State's theory alleging that he is the person who committed the robbery/homicide at Carr's Aurora Village on 8 June 1992.

12. The Applicant's overall defense to the State's charges is that the State's informant-witness' have falsely implicated the Applicant by fabricating their statements and testimony to receive consideration and leniency from the State, and to cover-up their own true roles in the crimes for which the Applicant currently stands convicted.

13. The undisclosed evidence was relevant and material to the Applicant's defense, in that had it not been withheld by the State and instead disclosed at the early stages of the State's

investigation, the prosecution of the Applicant may not have occurred, and if disclosed to the defense and effectively used at trial, would have at least counterbalanced the weight of the State's evidence, resulting in a different trial outcome.

II

**Whether state prosecutors committed fraud upon the court by violating the constitutional and court rules that govern the disclosure process.**

14. Paragraphs 1 through 13 are incorporated herein by reference as though fully set forth.

15. State prosecutors withheld information listed in paragraphs 1 through 7 from the Court's consideration, contrary to the order in paragraph 2, and contrary to their duties as officers of the court. See, exhibit B.

16. By the above actions of state prosecutors, the Applicant is entitled to relief from judgment pursuant to Alaska Civil Rule 60(b).

III

**Whether state prosecutors violated Mr. Woodard's right to Confrontation when they withheld material and relevant information used for confronting witness' bias, interest, or motive to testify for the State.**

17. Paragraphs 1 through 16 are incorporated herein by reference as though fully set forth.

18. The Applicant was not able to utilize the undisclosed information described in paragraphs 1 and 10, which was relevant and admissible for effectively confronting State's in-

-7-

formant-witness David Vanhousen on issues pertaining to his relationship and social interactions with William Turlington.

## IV

**WHETHER THE SEVENTEENTH ALASKA LEGISLATURE VIOLATED ARTICLE II SECTION 13 OF THE ALASKA CONSTITUTION BY COMBINING AN ARRAY OF UNRELATED PROVISIONS IN ONE BILL, RESULTING IN THE BILL AND ALL OF THE STATUTORY AMENDMENTS AND REPEALS CONTAINED THEREIN BEING VOID, INVALID, AND UNENFORCEABLE.**

19. Paragraphs 1 through 18 are incorporated herein by reference as though fully set forth.

20. On or about 17 June 1992, the Applicant was arrested by federal authorities and placed in the custody of DOC at the Cook Inlet Pre-Trial Facility (CIPT).

21. On or about 6 July 1992, while the Applicant was being held pursuant to unrelated federal charges, he was charged for the offenses which form the basis of his current convictions. Thereafter, he was indicted, tried, convicted, and sentenced for the above stated crimes.

22. While housed at CIPT, the Applicant held institutional jobs, attended Ohio University through independent study, consulted for a juvenile crime prevention program, and remained disciplinary-free.

23. On or about 27 September 1997, the Applicant was transferred from CIPT to the Spring Creek Correctional Center (SCCC).

24. While housed at SCCC, the Applicant held an institutional job, worked as a woodworker for the Alaska Correctional Industries (ACI) Furniture Division, continued his independent study

college courses, earned computer science and business certificates, and remained disciplinary-free.

25. On or about early March 1998, the Applicant was notified in writing that he was selected to be transferred and committed to the custody of an out-of-state private custodian. He was given a hearing date.

26. At the transfer hearing, the Applicant objected to being transferred, unaware of the illegalities that form a basis of this application. After subsequent administrative appeals, DOC informed him that he would be transferred.

27. On or about 11 April 1998, the Applicant was transferred from SCCC into the custody of CCA-CADC at Florence, AZ.

28. DOC relies on provisions of AS 33.30.031(a) (amended and repealed by FSSLA 1992 Ch. 2 §§ 5 and 37 SCS CSHB 596 (FIN) am S) as authority to enter into a contract with CCA for the custody of the Applicant at CADC. See, attached exhibit I.


**A. Whether House Bill 596, enacted as FSSLA 1992 ch. 2 (SCS CSHB 596 (FIN) am S) is void, invalid, and unenforceable as violative of Article II section 13.**


29. Paragraphs 1 through 28 are incorporated herein by reference as though fully set forth.

30. Article II section 13 of the Alaska Constitution states in relevant part that "Every bill shall be confined to one subject ... The subject of each bill shall be expressed in the title."

31. House Bill 596 (hereafter HB 596) was enacted by the Seventeenth Alaska Legislature during the First Special Session on 14 May 1992. See, attached exhibits J and K.

-9-

EXHIBIT A-9

32. HB 596 contains thirty-seven (37) sections of assorted subject matter, which either amends of repeals various subsections of the Alaska Statutes, ranging from motor vehicle registration (§ 4) and public land leases (§§ 14-18), to water, air, and environmental conservation (§§ 30-32), and public utilities and carriers (§§ 20-26). See, attached exhibit L.

33. Of the many divergent subjects in HB 596, sections 5 and 37 (along with section 6, which is related to contracts for prison telephone systems) were the only sections related to the subject of prisons. See, exhibit L.

34. Prior to the final passage of HB 596, the House Finance Subcommittee held hearings on HB 596 and HB 597. At these hearings, Representative Ulmer referenced a related SB 480, a Senate Bill which combined provisions from both HB 596 and HB 597. On advice from legislative advisory counsel, the subcommitte made a finding that SB 480 was in violation of the single-subject rule (Article II section 13). They also found that HB 596 and 597 should not be combined in order to prevent a similar violation to that of SB 480. See, attached exhibit M.

35. SB 480 contained provisions similar to HB 596 and HB 597. It contained a broad array of subjects in thirteen sections. See, attached exhibit N.

36. SB 480 was never passed by the Senate or the House. Instead, the Senate modified the title of HB 596, and merged both SB 480 and HB 597 into the already overbroad HB 596. It was subsequently passed as SCS CSHB 596 (FIN) am S. Compare, exhibit J with exhibits M and N.

**B. Subsections (a) and (b) of AS 33.30.031, as amended and repealed by sections 5 and 37 of HB 596, are void, invalid and unenforceable.**

37. Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

38. Section 5 of HB 596 amended subsection (a) of AS 33.30.031 by adding the following:

> unless the commissioner finds in writing that (1) there is no other reasonable alternative for detention in the state; and (2) the agreement is necessary because of health and security considerations involving a particular prisoner or class of prisoners, or because an emergency overcrowding is imminent

See, exhibit I.

39. Section 37 of HB 596 repealed subsection (b) of AS 33.30.031 by deleting the following:

> Unless the purpose is to involve prisoners in a program established under AS 33.30.091 - 33.30.131 or 33.30.151 - 33.30.181 or to confine prisoners convicted of a misdemeanor, <u>the commissioner may not enter into an agreement with a privately operated facility under (a) of this section.</u>

See, attached exhibits O and I. (emphasis added).

40. Prior to being merged into sections 5 and 37 of HB 596, similar subject matter relating to prison contracts was originally part of HB 420, entitled "An Act expanding and clairifying the authority of the department of corrections to contract for facilities for the confinement and care of prisoners; and providing for an effective date." HB 420 was a three section bill specifically confined to the subject of prisons, but was never passed by the House or Senate. See, attached exhibit P.

41. HB 420 was introduced by Governor Hickel. His transmittal letter to the Alaska Legislature stated that the main

-11-

objectives of HB 420 were to repeal key provisions of AS 33.30.-031, AS 33.36.020 (the ICC), and AS 33.36.070 (the WICC) in order to effectuate his and DOC's objective to renege on their <u>Cleary</u> obligations. <u>See</u>, exhibit P pp. 2-5.

**C. Whether AS 33.30.031 (a) and (b), as originally enacted in SLA 1986 ch. 88 § 6, without the invalid and unenforceable subsections, is now valid and enforceable law, which clearly precludes DOC from entering into a contract with CCA for the <u>custody, control, and restraint of the Applicant at CADC.</u>**

42. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

43. The original version of AS 33.30.031 et seq. was enacted by the Fourteenth Alaska Legislature (SLA 1986 ch. 88 § 6 (SCS CSHB 114 (Jud)). <u>See</u>, attached exhibits Q and O.

44. Prior to the 1992 amendment of subsection (a), the original version of AS 33.30.031 (a) expressly required DOC to contract with private agencies only for in-state facilities in accordance with subsection (b). <u>See</u>, exhibit O.

45. Prior to the repeal of subsection (b), the original version of AS 33.30.031 (b) expressly precluded private agency contracts for felony prisoners, and then only for in-state detention of misdemeanants, furloughees, and restitution center placements. <u>See</u>, exhibit O.

46. Under the provisions of the originally enacted AS 33.30.031 (a) and (b), DOC is precluded from contracting with CCA-CADC for the custody of the Applicant.

47. DOC currently contracts with CCA for the custody of the Applicant. Therefore, the DOC-CCA contract for the

-12-

custody of the Applicant is void and illegal.

## V

**WHETHER LEGISLATIVE AND EXECUTIVE BRANCH OFFICIALS VIOLATED DUE PROCESS WHEN THEY ARBITRARILY DEPRIVED MR. WOODARD OF MULTIPLE LIBERTY AND PROPERTY INTERESTS, THUS RENDERING HIS SENTENCE UNLAWFUL AND VOID, REQUIRING HIS RELEASE FROM CUSTODY.**

**A.   Whether the Alaska Legislature arbitrarily deprived Mr. Woodard of his right to due process by enacting HB 596 in violation of Article II section 13.**

48.   Paragraphs 1 through 47 are incorporated herein by reference as though fully set forth.

49.   Article II section 13 provides the Applicant with a liberty interest and the expectation that he will not be arbitrarily subjected to or governed by illegally enacted laws.

**B.   Whether DOC arbitrarily deprived Mr. Woodard of his right to due process by subjecting him to the illegally enacted provisions of AS 33.30.031 (a).**

50.   Paragraphs 1 through 49 are incorporated herein by reference as though fully set forth.

51.   Article I section 12 of the Alaska Constitution provides the Applicant with a liberty interest in the right to reformation. In order to effectuate this constitutional mandate, the Applicant has the right to participate in various rehabilitative programs, such as ACI.

52.   AS 33.30.031(a), as originally enacted by SLA 1986 ch. 88 § 6 (SCS CSHB 114 (Jud)), provides the Applicant with a vested liberty interest and the expectation of not being restrained under a private agency contract outside of the State of

-13-

Alaska. See, exhibit O.

53. AS 33.30.031(b), as originally enacted by SLA 1986 ch. 88 § 6 (SCS CSHB 114 (Jud)), provides the Applicant with a vested liberty interest and the expectation that if he would be restrained under a private agency contract, it would be in accordance with the provisions of subsection (b). See, exhibit O.

54. The Cleary FSA/O provides the Applicant with numerous vested liberty and property interests. Among the many, section VIII(A) overcrowding mechanisms are designed to reduce and prevent the burdens caused by overcrowding while not adversely affecting the existing constitutional rehabilitative opportunities or the prisoners still incarcerated in DOC facilities. VIII(A) also provided the Applicant with a vested liberty interest and the expectation that he would not be transferred and committed to an out-of-state private agency in the event of overcrowding. See, attached exhibit R.

55. Ever since 1991, the Alaska Legislature, at the request of executive branch officials of the Hickel and Knowles administrations, have systematically endeavored to relieve the state from the contractual obligations under the Cleary FSA/O. See, attached exhibits P pp. 2-5, and exhibits S, T, U, V, and W.

C. Whether DOC arbitrarily and unlawfully exceeded the statutory scope of Mr. Woodard's sentence by committing him to the illegal custody, control, and restraint of CCA-CADC, resulting in the loss or waiver of custodial jurisdiction over Mr. Woodard, requiring that he be relieved from any further obligations under the judgment of conviction entered in the Superior Court.

56. Paragraphs 1 through 55 are incorporated herein by

-14-

by reference as though fully set forth.

57. AS 44.28.010-020 provides that DOC shall administer Alaska's adult penal system. Various sections of Title 33 of the Alaska Statutes (AS 33.30.011-901, AS 33.32.010-090, AS 33.35.010-040, AS 33.30.010-100) provide power as well as set parameters for the Commissioner of DOC to lawfully carry out the commitment portion of the sentence imposed by the Superior Court. These combined statutes provide DOC with custodial jurisdiction over the Applicant.

58. In 1997, the DOC Population Management Team determined that numerous options were available in the event of overcrowding. Among the many options, the Team selected the following Model Options: Judiciary Option No. 1.09 (Court ordered release of sentenced prisoners), Release Options No. 1.17 and 1.18 (Commutation of sentence). See, attached exhibit X.

**PRAYER FOR RELIEF**

Mr. Woodard respectfully requests that based on the foregoing facts and grounds presented in claims I through V, the exhibits in support, and the attached affidavit, that this court order the following relief:

a. Claims I and III: reversal of convictions and other appropriate sanctions.

b. Claim II: convictions set-aside with other appropriate equitable sanctions pursuant to Civil Rule 60(b).

c. Claims IV and V: Court ordered release (Judiciary Option No. 1.09), or, Court ordered commutation of sentence (Re-

lease Options 1.17 and 1.18).

    d. Any other relief that this Court deems necessary and proper.

RESPECTFULLY SUBMITTED, this 26TH day of APRIL 2000.

_____
Jon Woodard