IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

JON A. WOODARD,            )
                           )
         Petitioner,       )
                           )
    Vs.                    )
                           )
STATE OF ALASKA,           )
                           )
         Respondent.       )
                           )

Case No.: 3AN-00-6982 CI

### FINDINGS OF FACT, CONCLUSIONS OF LAW & ORDER

The court held a hearing on the application for post-conviction relief on January 23, 2002 and both parties appeared and participated. Superior Court Judge Rene Gonzalez had previously entered an order dismissing Counts IV and V of the application on summary disposition. The court now enters the following findings of fact, conclusions of law and order based on the evidence presented at the hearing and the previous submissions to date.[1]

### Findings of Fact

1. On June 8, 1992, a man robbed the Aurora Village Carrs grocery store in Anchorage and killed Terrence Becker, a Loomis security guard. On June 10, 1992, an Anchorage attorney, John Murtagh, called Assistant District Attorney

---

[1] Some of the background findings are taken from the Memorandum Opinion and Judgment in Woodard v. State, 1998 WL 849246 (Alaska App. 1993) that Jon Woodard filed in support of his application.

**Proposed Exhibit**       EXHIBIT C – 1

*FINDINGS, CONCLUSIONS & ORDER - 1*

Steve Branchflower and said that he had a client who had information about the Carrs investigation.

2. Murtagh said that his client had a friend named John VanHousen whose son David VanHousen was the produce manager at Carrs. John VanHousen told the client that he was concerned because his house was close to Carrs, that David had "set it up" and that David had "made the call". He may have said that no one was supposed to get killed in the robbery. The authorities quickly determined that the client was William Turlington.

3. The authorities contacted David VanHousen based on this tip. VanHousen initially lied about his own responsibility for the robbery. But he eventually admitted to playing a major role in the crime and identified Woodard as the robber. Woodard was ultimately indicted for first-degree murder, second-degree murder and first-degree robbery. James McComas was retained to represent him at trial.

4. Woodard alleges that the State failed to disclose the tipster's identity and the details surrounding the information he provided. The evidence does not clearly establish this assertion. Former Detective William Reeder's testimony suggests that sometime after July 20, 1992, the State provided McComas with a copy of Reeder's report that included information about the tip.

EXHIBIT C – 2

FINDINGS, CONCLUSIONS & ORDER - 2          Alaska Court System

5.  The report stated that on June 10, 1992 the Anchorage Police Department had received information from the district attorney's office that attorney John Murtagh had a client William Turlington, who had information on the Carrs investigation. The report also stated that Turlington had a friend named John VanHousen who told Turlington that his son worked at Carrs, knew who the shooter was, and had stated that "no one was supposed to get hurt".

6.  At the hearing, McComas could not say whether or not he received Reeder's report in discovery. But there is no dispute that McComas did receive discovery materials stating that Murtagh was the person who passed along the information from VanHousen's father.

7.  McComas called Murtagh on July 27, 1992 and Murtagh told him that he had learned the information from his client who was facing charges of misconduct involving a controlled substance. He said that the client did not receive any initial deal or benefit for the information. But Murtagh also said that the authorities told him that if the information turned out to be good, the State would take that into account and confer appropriate benefits in the future.

8.  On December 17, 1992, the State entered into a plea agreement with Turlington. One of the reasons for the plea agreement was the tip that Turlington provided in the

EXHIBIT C – 3

Woodard investigation. Turlington agreed to plead no contest to two charges of misconduct involving a controlled substance in the third degree in return for a sentence of four years imprisonment, all suspended.

9. One condition of the agreement was that Turlington have no prior felony convictions. But, in fact, Turlington had previously been convicted of conspiracy to commit robbery in the first degree in New York in 1962, and armed robbery in New Jersey in 1964. The State discovered and relied on this information in a probation revocation proceeding in 1995.

10. Turlington had very poor performance on probation. His urine tested positive for use of cocaine on several occasions beginning on February 4, 1993. He also failed to appear for urine testing on several occasions beginning on May 13, 1993. He was picked up for shoplifting in June of 1993. But the State did not file any petition to revoke Turlington's probation until he again was arrested for cocaine sales in 1994. And in 1998, the court set aside Turlington's conviction, despite that fact that it was originally a judgment of record.

11. Neither the police nor prosecutors ever interviewed Turlington as a witness in the Woodard case. At the hearing, Reeder explained that he felt no need to question Turlington after the tip panned out, because David

EXHIBIT C — 4

FINDINGS, CONCLUSIONS & ORDER - 4             Alaska Court System

VanHousen clearly did have information about the Carrs robbery. Consequently, the State did not provide any pretrial discovery to McComas regarding Turlington's prior record, his plea agreement or the circumstances of his probation.

12. Woodard's jury trial began on March 25, 1993. Turlington did not testify at the trial. Woodard was convicted of murder in the second degree and robbery in the first degree. Woodard filed this application requesting post-conviction relief from these convictions.

## Conclusions of Law

1. In order to qualify for post-conviction relief, Woodard must establish that his "conviction was in violation of the Constitution of the United States or the constitution or laws of this state."[2] He is required to prove all factual assertions by clear and convincing evidence.[3]

2. In Count I of his petition, Woodard alleges that the State violated his right to due process of law and Alaska R. Cr. P. 16 by failing to disclose Turlington's identity and the details surrounding the information he provided. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

---

[2] AS 12.72.010(1).

[3] See AS 12.72.040.

EXHIBIT C – 5

FINDINGS, CONCLUSIONS & ORDER - 5          Alaska Court System

    evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[4]

3. Failure to disclose an informant violates due process if the defendant shows "a reasonable possibility that the anonymous informant could give evidence on the issue of guilt or innocence which might result in the defendant's exoneration."[5] But "[w]here the informant is only a tipster who has played no part in the criminal act with which the defendant had been charged, the benefit of any testimony to the defendant's case is probably minimal when compared to the public's interest in protecting the identity of the informant."[6]

4. Similarly, Alaska R. Cr. P. 16 requires disclosure of evidence showing the bias of a prosecution witness even when discovery would be inconsistent with public safety.[7]

5. Woodard must establish three components to prove a due process discovery violation on collateral review: "The

---

[4] Brady v. Maryland, 373 U.S. 83, 87 (1963).

[5] See Schmid v. State, 615 P.2d 565, 572 (Alaska 1980).

[6] Id. at 572; see also, e.g., Mason v. State, 768 So.2d 981, 1001 (Ala. Crim. App. 1998); Simmons v. State, 431 S.E.2d 721, 723 (Ga. App.1993); State v. Freel, 32 P.3d 1219, 1222 (Kan. App. 2001) (the prosecution is not required to disclose a mere tipster whose information precipitates the investigation).

[7] Braham v. State, 571 P.2d 631, 643 (Alaska 1977).

EXHIBIT C – 6

FINDINGS, CONCLUSIONS & ORDER - 6                Alaska Court System

evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[8]

6. The information about Turlington's identity, the details of the tip, his prior record and the plea bargain is not favorable exculpatory evidence. Turlington was only a tipster; there is no convincing evidence that he played any part in the Carrs robbery. His prior robbery convictions would not be admissible to show that he was involved in the Carrs robbery.[9] And the tip itself did not even mention Woodard's name. Woodard has not shown that Turlington could give any helpful testimony on the issue of guilt or innocence.

7. Woodard could have impeached Reeder by asking about why he did not interview or investigate Turlington. But Woodard has not identified any other favorable impeaching use of Turlington's identity, his prior record or the plea bargain, and this court cannot imagine any. The prior record and the plea bargain could not be used to impeach Turlington unless he testified at trial. And this

---

[8] Strickler v. Greene, 527 U.S. 263, 281 (1999).

[9] See Alaska R. Evid. 404(a).

EXHIBIT C - 7

FINDINGS, CONCLUSIONS & ORDER - 7                    Alaska Court System

information could not have been used to impeach David VanHousen, because there is no evidence that VanHousen had any contact with Turlington.

8. The state did not suppress Turlington's identity and the details of the tip. This information was probably provided to McComas in Reeder's report.

9. The prosecution's duty to investigate and disclose records of criminal convictions is limited to the witnesses the prosecutor intends to call as witnesses at trial.[10] Thus the State's failure to discover and disclose Turlington's New York and New Jersey convictions did not amount to suppression of evidence.

10. The prosecution did not have a duty to discover and disclose Turlington's probation violations prior to the Woodard trial. There is no evidence that the police or the Woodard prosecutors were aware of the violations at the time of the trial.

11. The prosecution did suppress the information about Turlington's plea bargain. But, as noted above, this court cannot identify any favorable use for this evidence.

12. In order to establish prejudice (sometimes called materiality in this context), Woodard must show that there is a reasonable probability that the result of the trial

---

[10] See Alaska R. Cr. P. 16(b)(v).

EXHIBIT C - 8

*FINDINGS, CONCLUSIONS & ORDER - 8*          Alaska Court System

would have been different if the suppressed information had been disclosed to the defense.[11]

13. One possibility is that Woodard could have impeached Reeder by asking about why he did not interview or investigate Turlington. But McComas had sufficient information to ask these questions, even if they were based only on his discussion with Murtagh. And Reeder's explanation at the hearing sounded logical; there is no reasonable probability that this impeachment could have changed the result of the trial.

14. Woodard has not shown any other reasonable possibility that any of the information about Turlington could change the result of the trial. Any error by the State in its failure to disclose further information about Turlington was harmless beyond a reasonable doubt.

15. In Count II of his petition, Woodard alleges that he is entitled to relief from judgment under Alaska R. Civ. P. 60(b). But this civil rule does not authorize relief from a judgment of conviction entered in a criminal case.

16. In Count III of his petition, Woodard alleges that the State violated his right to be confronted with the witnesses against him, by withholding information about

---

[11] See Strickler, 527 U.S. at 289; Atkinson v. State, 869 P.2d 486, 492 (Alaska App. 1994)("[a] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.")

EXHIBIT C – 9

FINDINGS, CONCLUSIONS & ORDER - 9                Alaska Court System

Turlington. But the right to confrontation is primarily a trial right related to the questions counsel may ask during cross-examination. Therefore, the State's failure to make pretrial discovery does not violate the confrontation clauses of the state or federal constitutions.[12]

THE COURT THEREFORE DISMISSES the claims stated in the application for post-conviction relief.

Dated this 1st day of February 2002.

Joel H. Bolger
Superior Court
Judge Pro Tem

I certify that a copy of the
original was forwarded to: M. HENRY
on 2/1/02 by [signature]   L. HIEBERT
                            J WOODARD

---

[12] See Pennsylvania v. Ritchie, 480 U.S. 39, 52-53 (1987); Cockerham v. State, 933 P.2d 537, 540-41 (Alaska 1997).

EXHIBIT C – 10

FINDINGS, CONCLUSIONS & ORDER - 10          Alaska Court System