IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT

In the Matter of the )
Application for Post )
Conviction Relief of: )
)
)
JON WOODARD )
)
Applicant. )
_____)
Case No. 3ANS 00-6982 Civ.
3ANS 92-5238 Cr.

SUPPLEMENTAL BRIEFING
IN SUPPORT OF POST-CONVICTION RELIEF

> **VRA CERTIFICATION**
>
> I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

COMES NOW JON WOODARD, by and through counsel, and hereby supplements the briefing in support of his application for post-conviction relief as follows.

The evidence produced at the hearing granted by the court indicates that the state was aware of the identity of Defendant X from the time John Murtagh communicated his existence to Assistant District Attorney Steve Branchflower. The desire for confidentiality was Mr. Murtagh's, it was not the prosecution's idea to protect the source of the information. By the time of the search warrant proceeding, there was no reason not to identify the name of the tipster William

1

EXHIBIT B – 1

Turlington. There was no justification for withholding his identity from the court during the search warrant proceedings or from Mr. McComas in the course of his representation of Mr. Woodard. Mr. McComas was obviously interested in obtaining information which could lead to arguments supporting the defense theory that someone else committed the felony murder and robbery. Mr. McComas obviously defended on the ground that Mr. Woodard had been set up. Neither of the state's key witnesses implicating Woodard could ever pass a lie detector test and identity was a hotly disputed issue.

Mr. McComas moved to compel discovery of all informants under Criminal Rule 16 and the court granted this request. There can hardly be a dispute that Mr. Turlington was an informant and that his identity was withheld. The duties under Criminal Rule 16 and constitutional due process requirement to provide disclosure of information that is favorable and exculpatory to the accused continues post trial. See Strickler v. Greene, 119 S.Ct. 1936, 1948 (1999); Kyles v. Whitley, 115 S.Ct. 1555, 1565 (1995); Carriger v. Stewart, 132 F.3d 463, 481 (9th Cir. 1997)(en banc); Com. of Northern Mariana Islands v. Bowie, 236 F.3d 1083, 1089-90 (9th Cir. 2001); Boss v. Pierce, 263 F.3d 734, 740-43 (7th Cir. 2001).

The identity and criminal history of Turlington was exculpatory and material. All of the benefits that accrued to him throughout the course of his case was exculpatory and material information. Turlington was amply rewarded for his services in connection to Woodard's case. Rewards were continually heaped on him through the proceedings in his case. Petitions to revoke were not filed, favorable dispositions were awarded, a set aside of a conviction occurred despite a

clear absence of jurisdiction. This for a man that committed a theft from Carrs a week after the verdict in this case.

What exactly was communicated by Turlington in the "tip" is in some doubt. The state reported at the search warrant proceeding that Dave Van Housen's father John told him that he had heard his son say that noone was supposed to get killed during the robbery. This lead the father to believe his son might know about what had happened. Det. Reeder's typewritten report indicated that Turlington had information concerning the Carr's robbery/felony murder. According to his trial testimony, the information concerned Dave Van Housen setting up the robbery. However, Dave Van Housen was presented at the search warrant proceeding as being innocent of involvement. If the information was that Van Housen set up the robbery and that was not reported to the judge at the search warrant proceedings, there is a significant failure in communicating all the state knew concerning Turlington.

Turlington communicated John Van Housen's concern about his son's possible involvement or knowledge of the Carrs robbery through John Murtagh. Mr. Murtagh reported he believed his client would be interviewed or asked to wear a wire and his client was undecided whether he wanted to cooperate to that extent. Murtagh decided to keep his client's identity secret from the state to avoid having to commit him to either of those activities. However, the state immediately identified Turlington as the client to whom Murtagh referred. Turlington's desire to "lay low" and not provide any direct assistance is of direct interest in Woodard's defense case. If Turlington were the innocent, appalled citizen with no nefarious

agenda, one would expect his identity to be plainly presented in order for him to receive the benefit he and his attorney could reasonably expect in response to his assistance. The circumstances of Mr. Murtagh's keeping Turlington's identity secret smacks of possible hidden motives and biases. These circumstances were material to a thorough defense investigation. These circumstances were withheld from Mr. McComas by the state without any excuse or authority. The state did not obtain the information from Murtagh in exchange for any promise of confidentiality. It was the state that Turlington wanted to keep in the dark. Once the cat was out of the bag and the state guessed his identity, the need for secrecy was terminated. There was absolutely no justification for not disclosing the identity, known by the state, to Woodard. McComas attempted to investigate the benefits that would be accorded to Turlington for his information. He asked Mr. Murtaugh whether any benefit had been promised to Turlington for providing the "tip" as reported at the search warrant proceeding. However, all the various benefits that were accorded by the state were never revealed to him.

McComas was also not told that Turlington was himself involved in robberies, had a rather serious cocaine distribution case pending, and hesitated to really provide any help to the state. He was not told that Turlington lied about his criminal history, which the state apparently colluded in by refraining to ascertain his prior criminal history before engaging in negotiations highly favorable to him.

Turlington was out of custody at the time of the Carrs robbery. His bail status was not made plain by the state. Freedom of movement meant that

EXHIBIT B – 4

Turlington was in a position to have had frequent contact, not just with Murtagh but also with Dave Van Housen and others involved in the Carrs case.

It is shocking, in light of Det. Reeder's report that Turlington knew about the Carrs robbery, that the police did not make any inquiry into the source of Turlington's information by interviewing him. Van Housen lead the police and the court a merry chase with many inconsistent statements about his own involvement. Van Housen pointed the finger at Jon Woodard, but this was easily the result of providing a plausible alternative to himself and the real accomplice. What Turlington knew was certainly essential to a fair and full investigation by the police of Van Housen's involvement. It appears the blinders were on, and anyone pointing the finger at Woodard was going to be tolerated as long as they continued to do so.

There can be no doubt that the information about Turlington's identity and his past criminal history and the benefits he received was discoverable under Criminal Rule 16 and fell within the parameters of the motion to compel and due process requirements. Had discovery of Turlington's identity and criminal history been provided, it definitely would have had an impact on the course of the defense investigation and could well have affected the outcome at trial. As Mr. McComas testified, the timing of disclosure would have affected how he proceeded with the information. Given ample time, he could well have developed Turlington's secret fingerpointing and knowledge to divert the state's attention from the only other poorly identified suspect.

In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the

EXHIBIT B – 5

prosecutor is required to disclose evidence to a criminal defendant that is favorable to the accused and material either to guilt or punishment. In United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), a majority of the United States Supreme Court concluded that in order for a criminal defendant to avail himself of relief under Brady, he must show that governmental action deprived him of "material evidence." Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. 473 U.S. at ---, 105 S.Ct. at 3384, 87 L.Ed.2d at 494 (opinion of Blackmun and O'Connor, J.J.) and 473 U.S. at ---, 105 S.Ct. at 3385, 87 L.Ed.2d at 496 (opinion of White and Rehnquist, J.J. and Burger, C.J.). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." 473 U.S. at ---, 105 S.Ct. at 3384, 87 L.Ed.2d at 494 (opinion of Blackmun and O'Connor, J.J.). The Alaska Supreme Court has adopted a similar standard of materiality, at least where, as here, the state is under no specific duty, derived from rule or case, to preserve the evidence in question. See Putnam v. State, 629 P.2d 35, 43-44 (Alaska 1980); Carman v. State, 604 P.2d 1076, 1080-81 (Alaska 1979) (recognizing that materiality test is essentially one of harmless error).

St. John v. State, 715 P.2d 1205, 1211-12 (Alaska App. 1986).

There was a significant chance in this case that Turlington's lies about his own status, his criminal history, his desire for secrecy, his status as a big cocaine distributer, his friendship with John Van Housen, and the state's extensive and prolonged grants of leniency, when taken together, could have affected the course of investigation and ultimately the outcome of the trial. In the hands of a brilliant attorney such as Jim McComas, this information undoubtedly would have been exploited fully and successfully. This court should not find that the failure to disclose was harmless error.

EXHIBIT B – 6

The state was under an obligation to disclose the identity of persons known to the state to have information against Woodard and any favorable information under the court rules and the due process clauses of the state and federal constitutions. The state failed to do so. As a consequence, Woodard was deprived of his right to due process, a fair trial, and he should be granted a new trial.

Dated this 30th day of January, 2002.

*Leslie Hiebert* (signature)
Leslie Hiebert
Assistant Public Advocate

This is to certify that a copy of the foregoing is being mailed/delivered to Mary Ann Henry on 1/30/02 By: [signature]

EXHIBIT B – 7

7