IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, )<br>     Plaintiff, )<br>  v. )<br>JON WOODARD, )<br>     Defendant. )<br>_____ )<br>Case No. 3AN-S92-5238 Cr. | Filed in the Trial Courts<br>STATE OF ALASKA THIRD DISTRICT<br>IN ANCHORAGE<br><br>APR 3 1993<br><br>Clerk of the Trial Courts<br>By _____ Deputy |

## DECISION AND ORDER

In motion E-3 filed February 23, 1993, defendant Jon A. Woodard has moved this court for an order permitting him "to elicit and introduce for all purposes" evidence that two of the state's cooperating witnesses (Pierce and VanHousen) have taken and failed to pass polygraph examinations re: facts at issue in this trial.

In the alternative, defendant seeks an order permitting him to elicit evidence that Pierce and VanHousen are required by their agreements with the state to take and to pass polygraph tests; and that they have "failed" to pass such tests. He contends that his constitutional right to confront witness' mandates that he be permitted to elicit such evidence in order to show (1) "bias and motive" of the witnesses both when they gave prior statements and when they testify in court; (2) the state's influence upon such witnesses; and (3) the witnesses' understanding of their obligations under their agreements.

In response, the state contends the motion was untimely filed; that polygraph tests are not admissible because of their lack of scientific reliability and the jury's undue reliance upon them in

EXHIBIT 22
PAGE 1 OF 14

DEFENDANT'S MOTION TO ADMIT EVIDENCE CONCERNING COOPERATING WITNESS'
FAILURES TO PASS POLYGRAPHS (E-3)
State v. Woodard Case No. 3AN-S92-5238 Cr.

2305

dereliction of its exclusive responsibility to determine credibility of each witness; that defendant's confrontation right re: a witness' prior inconsistent statements can be exercised without evidence that the statements were made in the context of a polygraph examination; and that witness motives can be explored by the agreement itself without any reference to the polygraph tests. Lastly, the state contends that the probative value of the polygraph evidence is outweighed by other considerations.

## DISCUSSION

In *Pulakis v. State*, 476 P.2d 474 (Alaska 1970), the Alaska Supreme Court adopted the general rule that polygraph results are inadmissible based upon the reasoning and standards of *Frye v. United States*, 293 F. 1013 (D.C.Cir 1923). The *Frye* standards are used to determine the admissibility of any novel scientific evidence.

The *Pulakis* court did not foreclose the possibility that polygraphs could be shown to be reliable enough to warrant admissibility in the future. Addressing this possibility, the court cautioned:

> The central problem regarding admissibility is not that polygraph evidence has proved unreliable, but that polygraph proponents have not yet developed persuasive data demonstrating its reliability. Little worthwhile experimentation has been done to determine the reliability of polygraph evidence. This is not to say that the worth of the polygraph evidence cannot ever be proved to the satisfaction of this court.... Judicial acceptance of polygraph tests must await the results of more persuasive experimental proof of reliability.

*Pulakis* 474 P.2d at 479; see also *Haakanson v. State*, 760 P.2d 1030 (Alaska App. 1988).

Continuing to rely upon *Frye*, the Alaska Supreme Court applied

EXHIBIT 22
PAGE 2 OF 14

the Frye test in Contreras v. State, 718 P.2d 129 (Alaska 1986), noting that:

> Applying Frye is a two-step process: First, the relevant scientific community must be defined, and second, the testimony and publications of the relevant experts in the field must be evaluated to determine if there is a general consensus that hypnotically adduced testimony is reliable.

Contreras, 718 P2d at 135. Although this is the applicable test, the defendant does not seek in his motion for the court to apply the test to re-evaluate whether polygraph tests now meet the scientific reliability prong Frye/Pulakis.

1. **May the defendant offer evidence of the cooperating witnesses' failure to pass polygraph examinations for all purposes?**

Defendant contends that effective confrontation of Pierce necessarily includes the following subjects: (1) His plea agreement with the state is explicitly conditioned upon his passing a polygraph examination. (2) He has failed to pass a polygraph examination. (3) He is aware of this condition in the plea agreement. (4) He is aware that his agreement is subject to revocation because he has not passed a polygraph examination. (5) He has been confronted by law enforcement authorities regarding his failures to pass. (6) He has provided additional information to the police. (7) The foregoing "combine" to show that his testimony as of the time of trial will be affected by the requirement that he pass a polygraph examination and his failure to do so. Defendant makes similar contentions with respect to David VanHousen.

In support of his contention, defendant cites United States v. Hart, 344 F.Supp 522 (E.D.N.Y 1971). In Hart, the trial court

EXHIBIT 22
PAGE 3 OF 14

DEFENDANT'S MOTION TO ADMIT EVIDENCE CONCERNING COOPERATING WITNESS' FAILURES TO PASS POLYGRAPHS (E-3)
State v. Woodard Case No. 3AN-S92-5238 Cr.

2307

found a violation under Brady v. Maryland[1] when the government failed to reveal that a polygraph test administered at the prosecution's behest to its principal witness indicated that he was lying. The Hart court applied an estoppel theory to the Brady violation:

> Having requested that [the witness] submit to polygraph tests, and then rejected the conclusions of the tests, the government should be prepared to show (a) the prior experience with polygraph tests and with the particular testers which led the Bureau of Narcotics and Dangerous Drugs to have [the witness] submit to the tests; (b) the basis for the subsequent doubts about the validity of polygraph tests which led to the disregard of the results; and (c) any other relevant material concerning the tests which defendants may request from the government on their own behalf.
> The bearing of the lie detector test on [the witness] credibility should be determined by the jury and not by a prior court hearing.

344 F.Supp at 524.

Simultaneously, the court rejected the defendants' request that polygraph examinations conducted upon them be admitted, and distinguished the situation as follows:

> The results of the tests which the government had [the witness] take are admissible on behalf of the defendant because the government initially thought they were reliable enough to assist in evaluating its witnesses. This does not constitute any reason for changing the general rule and permitting a party to offer its own polygraph tests in evidence.

344 F.Supp at 524.

Hart was roundly criticized in United States v. MacEntee, 713 F.Supp. 829 (E.D.Pa. 1989). MacEntee construed Hart to hold that, in light of Brady and under the long-standing rule that the government could not obtain a conviction on evidence which it knows is perjurious, a defendant is "entitled to inquire concerning any

---

[1] 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

EXHIBIT 22
PAGE 4 OF 14

DEFENDANT'S MOTION TO ADMIT EVIDENCE CONCERNING COOPERATING WITNESS' FAILURES TO PASS POLYGRAPHS (E-3)
State v. Woodard Case No. 3AN-S92-5238 Cr.

2308

investigations made by the government which might have put [him] on notice that a government witness was untruthful. MacEntee concluded that the Hart court made an incorrect logical leap:

> Brady v. Maryland stands for the principal that the constitution requires the government to turn over exculpatory information to the defense. Once the government turns over such information, however, the question of whether it may be introduced at trial is governed by the Federal Rules of Evidence, not by Brady.

713 F.Supp at 831. The MacEntee court excluded the polygraph examination evidence under F.R.E 702 and F.R.E. 403.

This court agrees with the reasoning of MacEntee. First, there has been no Brady violation in this case. All recorded, discoverable witness statements have been provided to the defense.[2] Second, even a Brady violation does not result in the wholesale admission of polygraph evidence. Admission of evidence is governed by the Alaska Rule of Evidence regardless of the source of the evidence. This court concludes that Hart is inapplicable to the facts presented by this case.

Polygraph tests are not judicially accepted for use in criminal trials by Alaska appellate courts because they are unreliable. Troyer v. State, 614 P.2d 313, 319 n.12 (Alaska 1980); Van Meter v. State, 743 P.2d 385, 387-88 (Alaska App. 1987); Leonard v. State, 655 P.2d 766, 770-71 (Alaska App. 1982); Haakanson v. State, 760 P.2d 1030, 1033-35 (Alaska App. 1988). Thus, regardless of which party offers the polygraph evidence; regardless of the form the polygraph evidence takes; and regardless

EXHIBIT 22
PAGE 5 OF 14

---

[2] The court is mindful of defendant's contention that the inadvertant recording of an attorney/client conference between Pierce and his attorney is discoverable.

DEFENDANT'S MOTION TO ADMIT EVIDENCE CONCERNING COOPERATING WITNESS' FAILURES TO PASS POLYGRAPHS (E-3)
State v. Woodard Case No. 3AN-S92-5238 Cr-

2200

of the purposes for which it is offered, polygraph evidence has consistently been held inadmissible in Alaska.

> [t]he results of polygraph examinations should not be received in evidence over objection. Even if no objection has been tendered, the trial court ordinarily should reject such evidence. A stipulation for admission does not increase the reliability of polygraph results and therefore should not lead to any deviation from the exclusionary policy.

Pulakis at 479.

"The polygraph evidence was inadmissible under Frye-Contreras and under Alaska Evidence Rule 403." Haakanson at 1035. "The rule is straightforward: polygraph results may not be put before the jury either directly or by implication." Jackson v. State, 652 P.2d 104, 106-107 (Alaska App. 1982); Gafford v. State, 440 P.2d 405, 410-11 (Alaska 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969) (applying the general rule, but concluding that "the mere fact that the jury is apprised that a lie-detector test was taken is not necessarily prejudicial if no inference as to the result is raised....")

In Lewis v. State, 469 P.2d 689, 693 (Alaska 1970), the court concluded that defendant's willingness to take polygraph examination was properly withdrawn from the jury's consideration as irrelevant. In Leonard v. State, 655 P.2d 766, 771 (Alaska App. 1982) the court of appeals stated:

EXHIBIT 22
PAGE 6 OF 14

> [W]e emphasize that polygraph examination evidence should be kept from the jury. Where this is impossible, an instruction merely telling the jury to disregard the reference is probably insufficient. Under such circumstances, a jury should, upon request, be told essentially that the polygraph has been subjected to substantial scientific scrutiny and is generally held to be unreliable as a method for determining truth or falsehood. Given this finding of unreliability, evidence of passing or failing a polygraph test is not admissible

DEFENDANT'S MOTION TO ADMIT EVIDENCE CONCERNING COOPERATING WITNESS' FAILURES TO PASS POLYGRAPHS (E-3)
State v. Woodard Case No. 3AN-S92-5238 Cr

2310

>     in evidence. The jury should not speculate about a
>     witness' willingness or unwillingness to take a
>     polygraph.

In Van Meter v. State, 743 P.2d 385, 387 (Alaska App. 1987), the court fo appeals found that the trial court properly denied evidentiary hearing and proposed polygraph evidence where defendant failed to make a colorable showing that polygraph technique is scientifically reliable. In Agwiak v. State, 750 P.2d 846, 847 n.1 (Alaska App. 1988), admissions made during pre-polygraph interview were stricken from pre-sentence report even though they did not specifically disclose the results of the polygraph examination. In Wilkie v. State, 715 P.2d 1199, 1204 (Alaska App. 1986), the court held that the trial court did not err by refusing to admit defendant's proffer of evidence of two polygraph examinations that were favorable to him.

In the most recent polygraph case, Haakanson, the Court of Appeals considered the effect polygraph examination evidence might have on the jury:

>     [P]olygraph evidence might be perceived by the jury as
>     a complete answer to questions of credibility. Such evidence
>     could also lull the jury into a false sense of security and
>     result in the jury failing to carefully scrutinize conflicting
>     witness testimony. Leonard v. State, 655 P.2d at 770. Any
>     evidence which has such great potential to mislead or
>     prejudice the jury should be excluded unless its probative
>     value clearly outweighs the prejudice. A.R.E. 403. The
>     probative value of polygraph evidence is insubstantial because
>     the polygraph has not been proven reliable. Thus, the
>     prejudicial impact it may have on a jury clearly outweighs the
>     probative value.

Haakanson, 760 P.2d at 1035.

EXHIBIT 22
PAGE 7 OF 14

Given the clear precedents and sound policies underlying the Alaska decisions excluding the results of polygraph examinations, this court concludes that defendant may not introduce "for all

DEFENDANT'S MOTION TO ADMIT EVIDENCE CONCERNING COOPERATING WITNESS'
FAILURES TO PASS POLYGRAPHS (E-3)
State v. Woodard Case No. 3AN-S92-5238 Cr

2311

purposes" the results of polygraph examinations of any cooperating witness in this case. First, as noted above, defendant has not requested that a <u>Frye</u> hearing to determine whether the relevant scientific community has determined that polygraph evidence is now generally accepted as reliable. Second, the record lacks sufficient evidence to conclude that the proffered polygraph examination evidence is now generally accepted in the scientific community. Third, were this court to allow the presentation of the results of the witness' polygraph examinations, there is a very real danger that the jury would use the "unreliable" polygraph evidence as a litmus test and abrogate its responsibility to determination a witness' credibility. The prejudicial effect of allowing polygraph examination evidence outweighs its probative value.

    2. <u>May the defendant offer polygraph examination evidence for the limited purpose of showing the motive or bias of Pierce and VanHousen?</u>

In the alternative, defendant contends that his right to confront witnesses requires that he be permitted to elicit evidence that (1) the agreements between the state and Pierce and VanHousen require them to take polygraph tests; (2) they took polygraph tests; (3) they "failed" polygraph tests (i.e. evidence of the results of the tests); (4) their understanding as to what effect their failure to pass has on their agreement (i.e. that having failed the tests, they will lose the benefits so they have to curry favor with the state some other way such as by lying about the defendant). Defendant argues that only through this line of questioning about polygraph tests can he show their motive to

EXHIBIT 22
PAGE 8 OF 14

DEFENDANT'S MOTION TO ADMIT EVIDENCE CONCERNING COOPERATING WITNESS'
FAILURES TO PASS POLYGRAPHS (E-3)
State v. Woodard, Case No. 3AN-S92-5238 Cr.

2319

falsely accuse the defendant and their bias in favor of the state.

In response, the state contends that defendant's right to confront Pierce and VanHousen regarding their motives for implicating defendant or any bias they may have in favor of the state are not limited by excluding reference to polygraph tests.

A defendant's right to confrontation in a criminal case is secured by the confrontation clauses of the United States and Alaska Constitutions. U.S. Const. amend. VI; Alaska Const. art. I, Sec. 11.

> Cross examination is the principle means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness.

Wood v. State, Slip Op. 1241, at 5, Alaska Court of Appeals (August 14, 1992) (citing Davis v. Alaska, 415 U.S. 308, 316 (1974)).

The trial court must be particularly solicitous toward cross-examination that is intended to reveal bias, prejudice, or motive to testify falsely. Wood, at 5 (citing Evans v. State, 550 P.2d 830, 836-37 (Alaska 1976); Hutchings v. State, 518 P.2d 767 (Alaska 1974); R.L.R. v. State, 487 P.2d 27 (Alaska 1971); Whitton v. State, 479 P.2d 302 (Alaska 1970). "The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting his testimony.'" 3A J. Wigmore, Evidence Sec. 940 p.775 (Chadbourn rev. 1970)." Davis v. Alaska, 415 U.S. at 316.

EXHIBIT 22
PAGE 9 OF 14

In Davis, the defendant was charged with burglary after being identified as the perpetrator by Green, a sixteen-year-old boy who

had been adjudicated a delinquent and was on juvenile probation at the time of Davis' offense. During cross-examination, Davis sought to inquire into Green's juvenile record contending that because Green was on juvenile probation, his identification of Davis might have been motivated by the desire to curry favor with the state. The trial judge precluded inquiry into the area relying on an Alaska statute that barred public disclosure of juvenile records. The Alaska Supreme Court affirmed Davis' conviction in Davis v. State, 499 P.2d 1025 (Alaska 1972).

The United States Supreme Court reversed the Alaska Supreme Court emphasizing that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Davis, 415 U.S. at 316-17. The Court found that

> the jurors were entitled to the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness'] testimony which provided 'a crucial link in the proof ... of [the defendant's] act.'

Id. at 317 (quoting Douglas v. Alabama, 380 U.S. 415, 419 (1965)). The court concluded that "[t]he claim of bias which the defense sought to develop was admissible to afford a basis to afford an inference of undue pressure because of Green's status as a probationer." Davis, 415 U.S. at 317-18; Wood, at 7. The Court concluded that the state policy to protect juveniles must give way to the right of confrontation.

Although Davis makes it clear that the trial court must give due regard to the Sixth Amendment's right of confrontation, the right to cross-examine is not absolute. Wood, Slip Op at 8. Since

deciding <u>Davis</u>, the Supreme Court has reaffirmed that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant...." <u>Wood</u>, Slip Op. 1241 at 8 (citing <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986)). Nevertheless, the Court has carefully distinguished between the imposition of "reasonable limits on" inquiry and the prohibition of "all inquiry into" specific areas of possible bias. <u>Id</u>.

In <u>Wood</u>, the trial court precluded the defendant from all cross-examination intended to establish that the victim was subject to the terms of a conduct agreement (a type of informal juvenile probation) both when the victim first reported being sexually abused by the defendant and when the victim testified against the defendant before the grand jury. The basis for the trial court's decision to preclude this line of inquiry was twofold: remoteness in time and the potential for prejudice inherent in informing the jury that the victim had himself engaged in sexually abusive conduct toward others. <u>Wood</u> at 12-13.

The Alaska Court of Appeals held that "[t]he pendency of the conduct agreement and the victim's express admission that he had engaged in the delinquent behavior upon which the agreement was based were certainly 'facts ... that might suggest to the jury a motive for ... [the victim] to testify favorably for the state.'" <u>Wood</u>, at 9 (citing <u>McKinzy v. Wainwright</u>, 719 F.2d at 1529. The Court of Appeals concluded that had the jury been aware of these

EXHIBIT 22
PAGE 11 OF 14

DEFENDANT'S MOTION TO ADMIT EVIDENCE CONCERNING COOPERATING WITNESS'
FAILURES TO PASS POLYGRAPHS (E-3)
State v. Woodard Case No. 3AN-S92-5238 Cr.

2315

facts, Wood's counsel could have argued that the victim's initial report of abuse to the police was motivated by his desire to be cooperative in order to avert the risk that the state might seek to terminate his conduct agreement and initiate delinquency proceedings. <u>Wood</u>, at 9. Concluding that the defendant's confrontation rights had been abridged, the court reversed Wood's conviction, but recommend a compromise to accommodate the defendant's right to cross-examine:

> This potential source of prejudice, however, did not justify a complete preclusion of inquiry into [the victim's] conduct agreement. Here, as an alternative to barring inquiry altogether, [the court] could readily have avoided undue prejudice by placing "reasonable limits," <u>Delaware v. Van Arsdall</u>, 475 U.S. at 679, on the scope of cross-examination. For example, [the court] could have allowed Wood to establish the existence of the conduct agreement and of the general fact that the agreement was based on [the victim's] admitted involvement in delinquent behavior involving conduct amounting to a felony, while restricting inquiry into the details and specific nature of the delinquency charge."

<u>Wood</u>, Slip Op. 1241 at 13.

The court is mindful that other courts have allowed the limited use of polygraph examination evidence for purposes other than their results.[3] However, given the clear dictates of authoritative precedent, "reasonable limits" should be placed on the defendant's confrontation right to cross-examine Pierce and VanHousen regarding their polygraph examinations and results.

The defendant can impeach the witnesses on grounds of prior inconsistent statements by use of the statements themselves without

---

[3] See, e.g., <u>United States v. Estrada-Lucas</u>, 651 F.2d 1261, 1264 (9th Cir. 1980) (polygraph examination evidence admissible for the purposes of impeachment); <u>United States v. Black</u>, 684 F.2d 481, 484 (7th Cir.), <u>cert. denied</u>, 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982) (admissibility a matter of the court's discretion); <u>United States v. Earley</u>, 505 F.Supp. 117 (S.D. Iowa), <u>aff'd</u>, 657 F.2d 195 (8th Cir. 1981) (polygraph results held not part of plea agreement and therefore inadmissible); <u>United States v. Lynn</u>, 856 F.2d 430, 433-34 (1st Cir. 1988) (trial court's limitation into cross-examination of government witness regarding plea agreement where plea agreement required government witness to pass a polygraph test was reversible error).

DEFENDANT'S MOTION TO ADMIT EVIDENCE CONCERNING COOPERATING WITNESS' FAILURES TO PASS POLYGRAPHS (E-3)
State v. Woodard Case No. 3AN-S92-5238 Cr.

EXHIBIT 22  2316
PAGE 12 OF 14

eliciting evidence that the statements were made as a part of the questions in a polygraph examination. The probative value is that such statements, if any, were made to the police both prior to the agreement in order to solicit such an agreement or after the agreement in order to meet their obligations under it. The prejudicial impact of the polygraph exam context of the prior inconsistent statements is not outweighed by its probative value.

The defendant can confront the witnesses regarding their motivation and bias to testify on behalf the state by eliciting evidence including, but not limited to, the agreement; the witness' interest in currying favor in order to avoid prosecution for both charged and uncharged crimes; that they received special treatment or other amenities from the state; that they received specific grants of immunity for certain crimes; prior actual convictions; current probationary status; that they received promises of leniency in sentencing in pending cases; that they were received threats or other acts of intimidation by the police about the agreement (excluding the polygraph exam and results); provisions (other than the polygraph clause) which they have breached, if any, and their perception of whether such breaches jeopardize their agreements; their lack of candor with the police and revelation of additional purported facts or alleged acts by defendant which they were revealed inconsistently and over a period of time.

In other words, defendant's right of confrontation of Pierce and VanHousen is not unduly restricted by limiting the elicitation and cross-examination only to evidence of the prior inconsistent statements made to police during the examination, but without

identifying the polygraph examination context. Likewise, the defendant's right to cross-examine Pierce and VanHousen on thier motive and bias to testify on behalf of the state is not unduly limited by exluding cross-examination re: the polygraph examinations and their results. The probative value of the fact of the polygraph examination context or the results of such examinations do not outweigh the prejudicial impact upon the jury.

NOW, THEREFORE, it is hereby ORDERED that

(1) Defendant's motion to admit evidence of the polygraph examinations and results of Pierce and VanHousen for all purposes is DENIED;

(2) Defendant's motion to elicit evidence of the polygraph examinations and results for the purposes of impeachment through prior inconsistent statements is GRANTED in part and DENIED in part. Evidence of prior inconsistent statements made during the polygraph examinations may be elicited, but no evidence that such statements were made in the context of a polygraph examination may be elicited; and

(3) Defendant's motion to elicit evidence of the polygraph examinations and their results for purposes of showing motive and bias is DENIED.

DATED at Anchorage, Alaska, this 3rd day of April, 1993.

Karen L. Hunt
Superior Court Judge

I certify that on 4-4-93 a copy of the above was personally handed to each of the following: by leaving in law library
Henry/McComan
Secretary/Deputy Clerk

EXHIBIT 22
PAGE 14 OF 14