IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA, )
)
    Plaintiff, )
)
vs. )
)
JON ARNOLD WOODARD, )
)
    Defendant. )
_____)

Court No. 3AN-S92-5238   Cr.

## RESPONSE TO MOTION FOR PROTECTIVE ORDER: APPEARANCE OF CUSTODY (P-2)

---

**CERTIFICATION**

__X__  This document and its attachments do not contain information that is confidential under AS 12.61.110 or the name of a victim of a crime listed in AS 12.61.140.

____  This document or an attachment contains confidential information that may be placed in a court file under an exception listed in AS 12.61.130(b). This information appears at _____. This document and its attachments do not contain the name of a victim of a crime listed in AS 12.61.140.

---

COMES NOW, the State of Alaska, by and through Assistant District Attorney Mary Anne Henry and hereby responds to the defendant's motion for protective order: appearance of custody.

The defendant has filed a motion for protective order requesting certain steps be taken to avoid the appearance to the jury that he is in custody in this case. In subsections of paragraph 4 of the defendant's motion, the defendant has made specific requests as to procedures to be followed during his trial

EXHIBIT 19
PAGE 1 OF 12

0343

in the above entitled case. The State will respond to those requests in the order listed in those subsections.

In paragraph 4(a) the defendant is requesting that he be transported to the courthouse before or after the jurors are likely to arrive in the morning, and be transported from the courthouse after the jurors have left at the end of the court session. As set forth in the attached affidavit of Lt. Yakopatz, this is normal procedure, and should not be a problem. The defendant is also requesting that he be transported in an unmarked vehicle. As noted in the attached affidavit, the transport vehicles are unmarked, although they have prisoner screens and tinted windows.

The defendant is also requesting that he not be transported with other prisoners who are physically restrained and/or dressed in prisoner clothes. Given the number of prisoners that judicial officers need to transport each day, and given the number of vacant positions in Judicial Services, this request is unreasonable. Since Judicial Services officers will make every effort to ensure that potential jurors do not see the defendant being transported with other "obvious" prisoners, the fact that he is so transported is not prejudicial. The defendant is also requesting that at the time of transport, the vehicle be driven as close to the courthouse as possible, that he be transported as quickly as possible into the courthouse, and that the transport door be one other than one used by jurors and members of the

EXHIBIT 19
PAGE 2 OF 12

0347

public. As noted in the attached affidavit, this is normal procedure, and will certainly be followed in this case.

In paragraph 4(b) the defendant is requesting that he be moved to and from the holding facility in the courthouse before or after the jurors have arrived or left. Since, according to the attached affidavit, this is normal procedure, it is not anticipated that this will be a problem in this case.

In paragraph 4(c) the defendant is requesting that his handcuffs be removed prior to his being moved through public areas of the courthouse. Most of the defendant's movement will be through non-public areas of the courthouse, so this should not be a problem. The only "public" areas of the courthouse where he may be moved are from the van to the court building, and any movement within the courtroom itself. Any request that his handcuffs be removed prior to such movement, is a security violation, and unreasonable. Under standard procedures followed by Judicial Services officers, movement of handcuffed prisoners in these limited areas will not be seen by jurors, and therefore such movement of the defendant in handcuffs in these limited public areas is not prejudicial.

The defendant is also requesting that additional restraints should not be employed without prior order of the court after notice to, and hearing from, the defendant. Although Judicial Service officers will attempt to comply with this request, if the defendant creates a security risk, Judicial

-3-

EXHIBIT 19
PAGE 3 OF 12
0348

Service officers are required to take immediate action, for the protection of themselves, court officers, and the public in general.

In paragraph 4(d) the defendant is requesting that he be permitted to wear his own clothes from the jail to court, during court, and from the court back to the jail each day. In paragraph 4(e) the defendant is requesting that he be allowed sufficient time and facilities to make himself clean and presentable prior to being transported to court. The undersigned assistant district attorney has spoken to Assistant Superintendent Epperson at Cook Inlet Pre-Trial Facility, who stated that it is standard procedure to allow the defendant sufficient time and facilities to make himself clean and presentable, and to change into his own clothes prior to being transported from the jail to court. It is therefore anticipated that there will not be a problem with this request.

In paragraph 4(f) the defendant is requesting "guards should remain outside of the courtroom, and out of the view of jurors at all times. He also requests that any guards permitted to be in the courtroom should be dressed in plain clothes and should assume positions which do not indicate that they are maintaining custody of the defendant. As noted in paragraph 13 of Lt. Yakopatz's affidavit, court service officers have been trained to discretely position themselves to prevent escapes or outbursts of violence. Therefore the request that the "guards" assume

-4-

EXHIBIT 19
PAGE 4 OF 12
0349

positions which should not indicate they are maintaining custody of the defendant will be followed as standard procedure. However, the defendant's request that uniformed guards remain outside of the courtroom and out of the view of the jurors at all times, and any guards in the courtroom be dressed in plain clothes is not only unreasonable but unsupported by case law.

The defendant notes that in State v. MacKay (a defendant charged with contracting another to commit a murder) Fairbanks Superior Court Judge Meg Greene permitted a trooper to be present in the courtroom in plain clothes in the audience section. This is clearly an aberration of normal courtroom procedure and reasonable security precautions. The defendant also cites a 1974 case, Anthony v. State, 521 P.2d 486 (Alaska 1974) for the proposition that guards should remain outside the observation of the jury during trial. However, the Anthony case has been substantially limited by subsequent court decisions[1]. In Dunn v. State, 653 P.2d 1071 (Alaska App. 1982), the court noted at page 1085:

> Moreover, Dunn has failed to call to our attention any other cases decided since Anthony in which it has been held that the mere presence of uniformed officers in a neutral area of the courtroom, without any overt manifestation of actual physical restraint or custody, is sufficient to

---

[1] The defendant also cites Williams v. State, 629 P.2d 54 (Alaska 1981). However, the decision in that case pertained to the testimony of a defense alibi witness while being handcuffed. Obviously that decision has no application to this case.

-5-

EXHIBIT 19
PAGE 5 OF 12
0350

deprive the defendant of a right to a fair trial.

The <u>Dunn</u> court also observed that there is persuasive authority to the contrary, citing <u>Hardee v. Kuhlman</u>, 581 F.2d 330 (2nd Cir. 1978). In that case the court held no violation of a constitutional right to a fair trial where three significant factors existed: (1) the defendant appeared in civilian garb; (2) the jury could be expected to have been aware that the presence of uniformed officers for security purposes in a courtroom during the course of a trial is a normal occurrence, and not unusual; and (3) there was no display in Hardee's case of actual custody or unnatural precautions. (<u>Snow v. State</u>, 489 F.2nd 278 (10th Cir. 1973); <u>People v. Duran</u>, (127 Cal. Rep. 618) 545 P.2d 1322 (1976).

In <u>Dunn</u>, <u>supra</u>, the defendant argued that <u>Anthony</u> equates the presence of uniformed guards within the observation of the jury as a violation of his right to a fair trial. The <u>Dunn</u> court specifically ruled that the defendant's reading of <u>Anthony</u> was over broad. The <u>Dunn</u> court stated at page 1086:

> Since courtroom presence of a limited number of uniformed officers or bailiffs for security purposes during criminal and civil judicial proceedings cannot fairly be deemed an unusual occurrence - one that would be unexpected to the average juror - we do not think that similar, limited presence in public areas of the courtroom by <u>uniformed</u> guards charged with a defendant's custody can realistically be deemed to convey or signal to the jury that the defendant is in custody, thereby eroding his presumption of innocence. ... We think a fair reading of <u>Anthony</u> would indicate an intent on the part of the Supreme

-6-

EXHIBIT 19
PAGE 6 OF 12
0351

> Court to preclude the appearance before members of the jury of uniformed officers or guards who are <u>physically restraining</u> a defendant or exercising actual custody and control over his person. (emphasis added).

The court then concluded that the Dunn's right to a fair trial was not infringed by the presence of uniformed officers during the course of his trial. <u>See also</u>: <u>Thomae v. State</u> 632 P.2d 236 (Alaska App. 1981) (trial judge is required to simply make sure that courtroom security does not interfere with the presumption of innocence to which a defendant is entitled); <u>Ladd v. State</u>, 568 P.2d 960 (Alaska 1977) <u>cert</u>. <u>denied</u> 435 U.S. 928 (1978) (<u>Anthony</u>'s language concerning the presence of uniformed guards within the view of the jury should be given a narrow, rather than a broad, interpretation)[2].

As noted in the attached affidavit of Lt. Yakopatz, the Judicial Service office is considering requesting additional restraints in this case, given the circumstances of this offense, and the background of the defendant. The defendant has committed a series of armed robberies, one culminating in the execution of a Loomis Security Guard. These offenses included detailed

---

[2] It should be noted that during the <u>Dunn</u> trial two members of the Alaska State Troopers Judicial Services section were present at all times. At least one of these officers was seated in the public section of the courtroom, while one guard was placed in an alcove outside of the presence of the jury. At various times, one or both guards appeared in uniform, including service revolvers. Occasionally, officers did appear in plain clothes, whenever circumstances permitted. Given the number of prisoners that Judicial Services must transport each day, a requirement that they dress in plain clothes is ridiculous.

-7-

EXHIBIT 19
PAGE 7 OF 12
0352

planning before the fact, and substantial efforts to conceal the crime after the fact. The defendant, a body builder, is obviously a physically strong individual. He has exhibited unusual interest in paramilitary procedures, the use of illegal weapons (including automatic weapons and silencers), the use of false identification, and counter-surveillance techniques. He has committed extremely serious crimes, and poses a serious threat to not only potential witnesses and victims, but also co-defendants who have expressed a willingness to testify against him. Given the fact that he is facing a possible term of imprisonment in excess of 99 years, he is also an extreme flight risk. His ability to formulate specific and detailed plans before committing a crime also show his potential for a plan to escape custody. It is obvious from the circumstances surrounding the crimes he has committed and his own background, the defendant is an extreme danger to public safety and a flight risk.

In Contreras v. State, 767 P.2d 1169 (Alaska App. 1989) the court held that a requirement of leg shackles on the defendant covered by skirting of counsel table in the presence of the jury was not a violation of due process. The defendant was charged with a series of rapes and kidnappings, and had been convicted of four separate escapes from custody. The court noted that the trial court had "substantial discretion in acting to prevent a potential escape and to protect the safety and decorum of the court by shackling Contreras".

-8-

EXHIBIT 19
PAGE 8 OF 12
0353

In <u>Newcomb v. State</u>, 800 P.2d 935 (Alaska App. 1990) the defendant was accused of escaping from custody and shooting police officers who attempted to arrest him. During trial Newcomb was required to remain seated with his feet shackled and his left had cuffed to a chain around his waist. These restraints were concealed from the jury with a skirting placed around counsel table. Given these security measures, uniformed officers were not necessary, and a non-uniformed officer was stationed inside the main courtroom, within view of the jurors. In affirming the procedure followed by the trial court the Court of Appeals noted:

> ...the information that Newcomb was in custody during trial could hardly have come as a surprise to any thinking member of his jury, no matter how Newcomb was presented in the courtroom. ... To assure basic fairness under the circumstances, the trial court was not required to undertake the wholly unrealistic task of convincing jurors that Newcomb had been released and was no longer in custody. Rather, the court was required to assure them that Newcomb was presented to the jury with an appearance of dignity and decorum in keeping with the presumption of innocence.

The court found that the procedure followed by the trial court met this goal of assuring that the defendant appeared to the jury with dignity and decorum in keeping with the presumption of innocence.

In this case the State is not requesting additional security at this time. The State is simply requesting normal security procedures be observed. These procedures, which include two uniformed Judicial Service officers in the courtroom in view

-9-

EXHIBIT 19
PAGE 9 OF 12    0351

of the jury, and the defendant unshackled, do not violate the defendant's right to be presented to the jury with an appearance of dignity and decorum in keeping with the presumption of innocence. For these reasons the State opposes any further restrictions on the Judicial Service officers, and simply requests that standard procedure be followed, including the presence of uniformed Judicial Service officers during all proceedings, including trial.

The defendant is also requesting that he not be seen by members of the public handcuffed or transported by Judicial Service officers. Additionally, in paragraph 5 of his motion he is requesting that he not be sketched or photographed by members of the media in handcuffs or being transported by Judicial Service officers. Assuming the standard procedures by Judicial Service officers as noted above and in the attached affidavit are followed, the extent to which members of the public or the media will make such observations are severely limited. In order to ensure a fair trial, the defendant has a right to expect that he will not be observed by <u>jurors</u> in his "custodial status". However, that right to a fair trial does not extend to an expectation that he will not be so observed by members of the general public and the media.

In his motion, the defendant cites Cannon 3An(7)(a)(iii) of the Code of Judicial Conduct in support of his request. There must be some typographical errors in that citation, since the

-10-

EXHIBIT 19
PAGE 10 OF 12
0355

undersigned cannot find this cannon in the Code of Judicial Conduct in the Alaska Rules of Court.

The court may impose restrictions on media coverage of this case, and the restrictions that may apply in this particular case are set forth in Administrative Rule 50(e)(3) which states in pertinent part:

> The court may impose reasonable restrictions on the time, place or manner of media coverage in a particular case. Any restrictions must be stated on the record, and must be reasonably related and narrowly drawn by the least restrictive means to: (i) control the conduct of proceedings before the court; (ii) ensure decorum and prevent distractions; (iii) protect the reasonable privacy interests of a minor or any other person; or (iv) ensure the fair administration of justice in pending or future cases.

Assuming that potential jurors will obey this court's admonition to avoid media coverage of this case, and to avoid discussing this case with anyone else, there does not appear to be a need to impose further restrictions on Judicial Service officers in their handling of the defendant in front of members of the public or the media. Additionally, there does not appear to be a need to impose restrictions on members of the media in sketching or photographing the defendant in a custodial situation. On the other hand, if this court deems it necessary to impose such restrictions, as noted in the attached affidavit, Judicial Service officers will make every effort to enforce those restrictions.

-11-

EXHIBIT 19
PAGE 11 OF 12      0353

For the reasons stated above, since standard procedure normally followed by Judicial Service officers in every case will be sufficient to ensure the defendant's right to a fair trial, there is no need for any order imposing additional, more restrictive, procedures.

DATED at Anchorage, Alaska, this 4th day of December, 1992.

CHARLES E. COLE
ATTORNEY GENERAL

EDWARD E. MCNALLY
DISTRICT ATTORNEY

by: *Mary Anne Henry*
Mary Anne Henry
Assistant District Attorney

MAH:sw

✓

J. McComas
Sue Wilson 12/7/92

-12-

EXHIBIT 19
PAGE 12 OF 12

0357