IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JON A. WOODARD )
)
          Appellant, )
)
   vs. )
)
STATE OF ALASKA )
)
         Appellee )
_____ )    Court of Appeals No. A-08243

Trial Court No. 3AN-00-06982 CI

> CERTIFICATE OF COMPLIANCE WITH VICTIMS' RIGHTS ACT OF 1991
>
> I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140, or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the Court.

APPEAL FROM THE SUPERIOR COURT,
THIRD JUDICIAL DISTRICT AT ANCHORAGE,
THE HONORABLE JOEL H. BOLGER, SUPERIOR COURT JUDGE PRO TEM

<u>APPELLANT'S EXCERPT OF RECORD</u>
<u>VOLUME 1 OF 1</u>

> Christine Schleuss (7811132)
> 1227 West 7th Avenue, 2nd Floor
> Anchorage, Alaska  99501
> (907)258-0704
> Attorney of Appellant
> Jon A. Woodard

Filed in the Court of Appeals of
the State of Alaska, this 21st
day of October, 2003.

Clerk of the Appellate Court

By: _____

EXHIBIT 24
PAGE 1 OF 89

EXCERPT OF RECORD

TABLE OF CONTENTS

Excerpt from Police Report dated June 10, 1992........Exc. 1

Memo from Jim McComas dated July 27, 1992.............Exc. 2

Woodard's Application for Post-Conviction
elief dated April 26, 2000...........................Exc. 3

State of Alaska's Answer to Amended Application
for Post-Conviction Relief on Claims I - III
dated December 26, 2000..............................Exc. 50

Woodard's Witness List dated November 2, 2001........Exc. 55

Subpoena to Appear & Produce dated January 22,
2002 to John Novak, issued at the request of
Leslie Hiebert......................................Exc. 56

Applicant's Exhibit 1 admitted at proceeding
held on January 23, 2002............................Exc. 57

Findings of Fact, Conclusions of Law & Order
dated February 1, 2002..............................Exc. 88

Final Judgment dated February 7, 2002...............Exc. 98

**EXHIBIT 24**
PAGE 2 OF **89**

Case Number 92-90751

| T Crime | Location | Date Occurred |
|---|---|---|
| Murder / Robbery | 1650 W. Northern Lights | 6-8-92 |



DEFENDANT

EXHIBIT NO. _B_

ADMITTED _X_

3AN-00-6982 ci
(CASE NUMBER)

**Wednesday, June 10, 1992**

APD received information from the DA's office that Attorney John Murtagh had a client, William Turlington, who had information on Carr's Murder. Apparently Turlington's friend, John VanHousen, had told him his son worked at Carr's and knew who the shooter was. We also received information that the son had made the comment that "no one was supposed to get hurt" and was upset. I checked the list of Carr's employee's the store had provided APD and found that a David VanHousen worked there. Sgt. Grimes and I went to Carr's and contacted Jim Koti who told us VanHousen worked midnight to 8:00 am and was home at this time. He also confirmed that VanHousen worked the morning of the Robbery and got off work at 8:00 am.

### VANHOUSEN STATEMENT #1
June 10, 1992
1448 hrs. to 1544 hrs.

At approx. 1445 hrs. Sgt. Grimes and I contacted VanHousen at his residence, 10230 Jamestown #H and took a taped statement from him in our car. He is the frozen produce manager at Carr's and works the night shift from midnight until 8 am. VanHousen was told that officers were talking to his dad now and that we knew he had said something to him. He claimed that he had made a comment about 5 yrs. ago about "someone could easily do this". He changed the times that he made these type comments and admitted telling dad "no one was supposed to get hurt". VanHousen finally said he might have mentioned being easy to rob Carr's to a friend, Jon Woodard, several years ago. He described Woodard to us and went from having mentioned it to Woodard several to saying, " I know he did it". He would not say exactly why he knew Woodard did it, just that he was sure he did and agreed to testify against him. He told us Woodard probably did it alone and probably parked car across the street. He told us Woodard was "into guns" and had seen him with some. VanHousen went on to say " He (Woodard) did it". When asked to come to APD for a statement, VanHousen was reluctant to and wanted to contact a lawyer. He

**MEMO**

July 27, 1992

TO  :  Jon Woodard File

FROM:  Jim McComas

RE  :  The tip that lead to DVH

      Today I spoke with John Murtagh (**274-8664**) after reading in discovery that it was he who passed along the name of DVH's father.  It has been represented in search warrant hearings that a defense attorney representing a client in a drug case provided information to the Anchorage D.A's office concerning this lead, in hope of obtaining benefit for his client.  The search warrant testimony is to the effect that no benefit was provided and it was made clear that no deals would be made.  The way Murtagh explains it, it sounds like no specific deal or agreement was reached, but that representations were made by prosecutors and/or police to the effect that if the information turned out to be good, the state would take that into account and confer appropriate benefits in the future.  In fact, Murtagh's case has not been resolved.  He got some evidence suppressed and the state filed a petition for review.  John has a subjective belief that he was reasonably led to conclude that if the information provided was important would return to the ultimate benefit of his client in terms of how the state dealt with the case.  However, so far, no agreements have been reached.

DEFENDANT
EXHIBIT NO. _A_
ADMITTED ☑
3AN 00-6982CI

**EXHIBIT 24**
PAGE 4 OF 89

EXC. 2

Exhibit 1.

Jon Woodard
CCA-CADC
P.O. Box 6200
Florence, AZ. 85232

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

In the Matter of the    )
Application for Post-    )
Conviction Relief Of:    )
                         )
                         )
                         )
Jon A. Woodard          )
                         )
_____ )



Case No: 3AN-00-6982 CI

VRA CERTIFICATION. I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offence listed in AS 12.61.140 or (2)  a residence or business address or telephone number of a victim of or witness to any crime unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

**APPLICATION FOR POST-CONVICTION RELIEF
CRIMINAL RULE 35.1**

COMES NOW THE APPLICANT, Jon A. Woodard, requesting post-conviction relief from the judgment entered in <u>State of Alaska v. Jon A. Woodard</u>, No. 3AN-S92-5238 CR, on 23 December 1993 (amended 16 March 2000) by Judge Karen L. Hunt of the Superior Court, Third Judicial District at Anchorage.  At trial he was represented by privately-retained counsel, James McComas (1227 W. 9th Ave., Suite 201 Anchorage, AK. 99501).

Mr. Woodard pled not guilty to all counts.  On 7 June 1993 he was found guilty by a ten (10) person jury of the follow-ing offenses: Murder in the Second Degree (AS 11.41.110(a)(3), and

-1-

220

**EXHIBIT 24**
PAGE 5 OF 89

EXC. 3

Robbery in the First Degree (AS 11.41.500(a)(1)).  He was found
not guilty of Murder in the First Degree (AS 11.41.100(a)(1).

On 24 September 1993 he was sentenced to a term of im-
prisonment of 66 years for Murder in the Second Degree.  On 2 and
14 March 2000, he was sentenced to 14 years with 7 suspended for
Robbery in the First Degree.  The robbery sentence runs concurrent-
ly with the murder sentence.  See, attached amended judgment.

Mr. Woodard appealed his conviction to the Court of Ap-
peals for the State of Alaska (No. A-5187), and the State cross
appealed (No. A-5217).  The Appellate Court affirmed and remanded
(M.O. & J. No. 3933)(Bryner, C.J., dissenting).  A Petition for
Hearing to the Alaska Supreme Court was subsequently denied (No.
S-0817)(Eastaugh, J., and Carpeneti, J., both dissenting, Bryner,
J., not participating).  He was represented on appeal by privately
retained counsel, Christine Schleuss (500 L. St. suite 300, Anch-
orage, AK. 99501).

On remand from the State's cross-appeal, he was repre-
sented by court appointed counsel, Leslie Heibert, Assistant Pub-
lic Advocate for OPA (900 W. 5th Ave., Suite 525, Anchorage, AK.
99501).

Mr. Woodard's sentence for Robbery in the First Degree,
which was imposed on 14 March 2000, is currently under appeal.
The State also filed a cross-appeal.  Both appeals are currently
pending.

Mr. Woodard is presently in the custody of private pris-
on contractor Corrections Corporation of America (CCA), Central
Arizona Detention Center (CADC), at Florence, Arizona (1155 Pinal

-2-                              EXC. 4

EXHIBIT 24
PAGE 6 OF 89

Pkwy., Florence, AZ. 85232). Alaska DOC turned him over to the custody of CCA-CADC due to overcrowding in Alaska prisons. Pursuant to AS 33.30.031 et seq., DOC has a contract with CCA-CADC for the custody of the Applicant.

This application for post-conviction relief is brought pursuant to Criminal Rule 35.1 and AS 12.72.010 (1), (4), (5), and (6). The facts and grounds raised in this application will be supported by the attached exhibits, affidavit, and the accompanying memorandum of law.

Claim I of this application alleges that certain state prosecutors violated Mr. Woodard's right to due process of law and Alaska Criminal Rule 16 by failing to disclose material and relevant information pertaining to the criminal background, leniency agreements, and probation violations of a key state's informant-witness. The relief requested is reversal of his convictions and other appropriate sanctions.

Claim II alleges that in addition to their actions in Claim I, state prosecutors committed fraud upon the court, which harmed the integrity of the judicial process when they failed to disclose evidence for the court's consideration. Pursuant to Civil Rule 60(b), Mr. Woodard requests equitable relief in addition to the relief requested in Claim I.

Calim III alleges that by their actions in Claim I, the State violated Mr. Woodard's right to confrontation. The relief requested is reversal of his convictions and other appropriate sanctions.

Claims IV and V jointly allege that Mr. Woodard is cur-

EXC. 5

**EXHIBIT 24**
PAGE 7 OF 89

rently serving a sentence that was rendered illegal due to his being unlawfully committed to the custody, control, and restraint of a private out-of-state corporate prison pursuant to an illegally enacted law.  Claim IV specifically alleges that the bill that amended and repealed provisions of the statute (AS 33.30.031) that authorizes DOC to contract with an out-of-state private agency for the commitment of the Applicant is void as being enacted in violation of Article II section 13 of the Alaska Constitution. Claim V specifically alleges that Mr. Woodard's substantive due process rights were violated when legislative and executive branch officials subjected him to the illegally enacted law in claim IV. The combined constitutional violations committed by Alaska State officials has resulted in the loss or waiver of custodial juris- diction, warranting Mr. Woodard being relieved from the judgment entered in the Superior Court, requiring his release from custody.

## FACTS AND GROUNDS WARRANTING RELIEF

### I

**Whether state prosecutors violated the mandated constitutional and court disclosure rules by failing to disclose relevant and material information pertaining to a key state's informant.**

1.  On or about 10 June 1992, during a state <u>Glass</u> warrant hearing (no. 92-915 SW) in the Superior Court at Anchorage, before Judge Elaine Andrews, ADA Branchflower presented to the court a series of hearsay statements made by an informant described only as "Defendant X."  No information pertaining to Defendant X's criminal background, self-interest, motive to testify, or his relationship to other state's informants was presented to

-4-

**EXHIBIT 24**
**PAGE 8 OF 89**

the Court for consideration.  <u>See</u>, attached exhibit A.

    2.  On 27 October 1992, Superior Court Judge Karen Hunt granted a defense motion to compel disclosure, which, <u>inter alia</u>, directed the State to "Forthwith provide... information to the defense after the date of this order, as such information comes into its knowledge, possession, or control...."  The Court also ordered, "[i]t shall forthwith submit such material to the court for its review."  <u>See</u>, attached exhibit B.

    3.  On or about 15 December 1992, the State charged informant-witness William Turlington with two counts of Misconduct Involving a Controlled Substance in the Third Degree.  <u>See</u>, attached exhibit C.

    4.  On or about 17 December 1992, the State entered into a cooperation/plea agreement with William Turlington, <u>inter alia</u>, to receive sentencing considerations for providing information to the State which resulted in the prosecution of the Applicant.  <u>See</u>, attached exhibit D.

    5.  In reference to the agreement described in paragraph 4, provision (9) made the agreement conditioned upon Turlington "[h]aving no previous criminal history of felony convictions."  Information pertaining to his prior criminal record was not disclosed to the defense and withheld from the Court's consideration.  <u>See</u>, attached exhibits E p. 4-7, F p. 1, and D p. 2.

    6.  On or about 4 February 1993, among other dates, Turlington breached the agreement described in paragraph 4, by violating conditions of his probation.  No petition to revoke was ever filed.  <u>See</u>, exhibits F p. 3, and G p. 2.

**EXHIBIT 24**
PAGE 9 OF 89

EXC. 7

7.  On or about 13 June 1993, William Turlington was charged with a theft at Carr's grocery (case no. 3AN-M93-4675 CR). <u>See</u>, attached exhibits H and F p. 3.

8.  At all times stated in paragraphs 1 through 7, state prosecutors had disclosure obligations pursuant to U.S. Const. Amend. XIV, AK. Const. Art. I § 7, and Alaska Criminal Rule 16.

9.  As described in paragraphs 1 through 7, the State possessed relevant and material information pertaining to the criminal background and ongoing criminal activity of William Turlington, and withheld this information from the court and the defense.  <u>See</u>, A through H.

10.  At all times listed in paragraphs 1 through 7, the State possessed relevant and material information pertaining to the ongoing relationships and social interactions of David Vanhousen, John Vanhousen, and William Turlington, and withheld this information from the court and the defense.

11.  The Applicant has always contended the State's theory alleging that he is the person who committed the robbery/ homicide at Carr's Aurora Village on 8 June 1992.

12.  The Applicant's overall defense to the State's charges is that the State's informant-witness' have falsely implicated the Applicant by fabricating their statements and testimony to receive consideration and leniency from the State, and to cover-up their own true roles in the crimes for which the Applicant currently stands convicted.

13.  The undisclosed evidence was relevant and material to the Applicant's defense, in that had it not been withheld by the State and instead disclosed at the early stages of the State's

-6-            **EXHIBIT 24**     EXC. 8
             PAGE 10 OF 89

investigation, the prosecution of the Applicant may not have oc-

curred, and if disclosed to the defense and effectively used at

trial, would have at least counterbalanced the weight of the

State's evidence, resulting in a different trial outcome.

## II

**Whether state prosecutors committed fraud upon the court by vio-
lating the constitutional and court rules that govern the dis-
closure process.**

14. Paragraphs 1 through 13 are incorporated herein by

reference as though fully set forth.

15. State prosecutors withheld information listed in

paragraphs 1 through 7 from the Court's consideration, contrary

to the order in paragraph 2, and contrary to their duties as

officers of the court. <u>See</u>, exhibit B.

16. By the above actions of state prosecutors, the

Applicant is entitled to relief from judgment pursuant to Alaska

Civil Rule 60(b).

## III

**Whether state prosecutors violated Mr. Woodard's right to Con-
frontation when they withheld material and relevant information
used for confronting witness' bias, interest, or motive to test-
ify for the State.**

17. Paragraphs 1 through 16 are incorporated herein

by reference as though fully set forth.

18. The Applicant was not able to utilize the undis-

closed information described in paragraphs 1 and 10, which was

relevant and admissible for effectively confronting State's in-

-7-

**EXHIBIT 24**
PAGE 11 OF 89     EXC. 9

formant-witness David Vanhousen on issues pertaining to his re-
lationship and social interactions with William Turlington.

IV

**WHETHER THE SEVENTEENTH ALASKA LEGISLATURE VIOLATED ARTICLE II
SECTION 13 OF THE ALASKA CONSTITUTION BY COMBINING AN ARRAY OF
UNRELATED PROVISIONS IN ONE BILL, RESULTING IN THE BILL AND
ALL OF THE STATUTORY AMENDMENTS AND REPEALS CONTAINED THEREIN
BEING VOID, INVALID, AND UNENFORCEABLE.**

19.  Paragraphs 1 through 18 are incorporated herein by
reference as though fully set forth.

20.  On or about 17 June 1992, the Applicant was arrest-
ed by federal authorities and placed in the custody of DOC at
the Cook Inlet Pre-Trial Facility (CIPT).

21.  On or about 6 July 1992, while the Applicant was
being held pursuant to unrelated federal charges, he was charged
for the offenses which form the basis of his current convictions.
Thereafter, he was indicted, tried, convicted, and sentenced for
the above stated crimes.

22.  While housed at CIPT, the Applicant held institu-
tional jobs, attended Ohio University through independent study,
consulted for a juvenile crime prevention program, and remained
disciplinary-free.

23.  On or about 27 September 1997, the Applicant was
transferred from CIPT to the Spring Creek Correctional Center
(SCCC).

24.  While housed at SCCC, the Applicant held an instit-
utional job, worked as a woodworker for the Alaska Correctional In-
dustries (ACI) Furniture Division, continued his independent study

college courses, earned computer science and business certificates, and remained disciplinary-free.

25. On or about early March 1998, the Applicant was notified in writing that he was selected to be transferred and committed to the custody of an out-of-state private custodian. He was given a hearing date.

26. At the transfer hearing, the Applicant objected to being transferred, unaware of the illegalities that form a basis of this application. After subsequent administrative appeals, DOC informed him that he would be transferred.

27. On or about 11 April 1998, the Applicant was transferred from SCCC into the custody of CCA-CADC at Florence, AZ.

28. DOC relies on provisions of AS 33.30.031(a) (amended and repealed by FSSLA 1992 Ch. 2 §§ 5 and 37 SCS CSHB 596 (FIN) am S) as authority to enter into a contract with CCA for the custody of the Applicant at CADC. See, attached exhibit I.

**A. Whether House Bill 596, enacted as FSSLA 1992 ch. 2 (SCS CSHB 596 (FIN) am S) is void, invalid, and unenforceable as violative of Article II section 13.**

29. Paragraphs 1 through 28 are incorporated herein by reference as though fully set forth.

30. Article II section 13 of the Alaska Constitution states in relevant part that "Every bill shall be confined to one subject ... The subject of each bill shall be expressed in the title."

31. House Bill 596 (hereafter HB 596) was enacted by the Seventeenth Alaska Legislature during the First Special Session on 14 May 1992. See, attached exhibits J and K.

32.  HB 596 contains thirty-seven (37) sections of as-
sorted subject matter, which either amends of repeals various sub-
sections of the Alaska Statutes, ranging from motor vehicle regis-
tration (§ 4) and public land leases (§§ 14-18), to water, air,
and environmental conservation (§§ 30-32), and public utilities
and carriers (§§ 20-26).  <u>See</u>, attached exhibit L.

33.  Of the many divergent subjects in HB 596, sections
5 and 37 (along with section 6, which is related to contracts for
prison telephone systems) were the only sections related to the
subject of prisons.  <u>See</u>, exhibit L.

34.  Prior to the final passage of HB 596, the House
Finance Subcommittee held hearings on HB 596 and HB 597.  At these
hearings, Representative Ulmer referenced a related SB 480, a Sen-
ate Bill which combined provisions from both HB 596 and HB 597.
On advice from legislative advisory counsel, the subcommitte made
a finding that SB 480 was in violation of the single-subject rule
(Article II section 13).  They also found that HB 596 and 597
should not be combined in order to prevent a similar violation to
that of SB 480.  <u>See</u>, attached exhibit M.

35.  SB 480 contained provisions similar to HB 596 and
HB 597.  It contained a broad array of subjects in thirteen sec-
tions.  <u>See</u>, attached exhibit N.

36.  SB 480 was never passed by the Senate or the House.
Instead, the Senate modified the title of HB 596, and merged both
SB 480 and HB 597 into the already overbroad HB 596.  It was sub-
sequently passed as SCS CSHB 596 (FIN) am S.  <u>Compare</u>, exhibit J
with exhibits M and N.

EXC. 12

**EXHIBIT 24**
**PAGE 14 OF 89**

**B.  Subsections (a) and (b) of AS 33.30.031, as amended and repealed by sections 5 and 37 of HB 596, are void, invalid and unenforceable.**

37.  Paragraphs 1 through 36 are incorporated herein by reference as though fully set forth.

38.  Section 5 of HB 596 amended subsection (a) of AS 33.30.031 by adding the following:

> unless the commissioner finds in writing that (1) there is no other reasonable alternative for detention in the state; and (2) the agreement is necessary because of health and security considerations involving a partic- ular prisoner or class of prisoners, or because an emer- gency overcrowding is imminent

See, exhibit I.

39.  Section 37 of HB 596 repealed subsection (b) of AS 33.30.031 by deleting the following:

> Unless the purpose is to involve prisoners in a program established under AS 33.30.091 - 33.30.131 or 33.30.151 - 33.30.181  or to confine prisoners convicted of a mis- demeanor, the commissioner may not enter into an agree- ment with a privately operated facility under (a) of this section.

See, attached exhibits O and I. (emphasis added).

40.  Prior to being merged into sections 5 and 37 of HB 596, similar subject matter relating to prison contracts was originally part of HB 420, entitled "An Act expanding and clair- ifying the authority of the department of corrections to contract for facilities for the confinement and care of prisoners; and pro- viding for an effective date."  HB 420 was a three section bill specifically confined to the subject of prisons, but was never passed by the House or Senate.  See, attached exhibit P.

41.  HB 420 was introduced by Governor Hickel.  His transmittal letter to the Alaska Legislature stated that the main

-11-

**EXHIBIT 24**
PAGE 15 OF 89          EXC. 13

objectives of HB 420 were to repeal key provisions of AS 33.30.-031, AS 33.36.020 (the ICC), and AS 33.36.070 (the WICC) in order to effectuate his and DOC's objective to renege on their <u>Cleary</u> obligations. <u>See</u>, exhibit P pp. 2-5.

**C. Whether AS 33.30.031 (a) and (b), as originally enacted in SLA 1986 ch. 88 § 6, without the invalid and unenforceable subsections, is now valid and enforceable law, which clearly precludes DOC from entering into a contract with CCA for the <u>custody, control, and restraint of the Applicant at CADC.</u>**

42. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

43. The original version of AS 33.30.031 et seq. was enacted by the Fourteenth Alaska Legislature (SLA 1986 ch. 88 § 6 (SCS CSHB 114 (Jud)). <u>See</u>, attached exhibits Q and O.

44. Prior to the 1992 amendment of subsection (a), the original version of AS 33.30.031 (a) expressly required DOC to contract with private agencies only for in-state facilities in accordance with subsection (b). <u>See</u>, exhibit O.

45. Prior to the repeal of subsection (b), the original version of AS 33.30.031 (b) expressly precluded private agency contracts for felony prisoners, and then only for in-state detention of misdemeanants, furloughees, and restitution center placements. <u>See</u>, exhibit O.

46. Under the provisions of the originally enacted AS 33.30.031 (a) and (b), DOC is precluded from contracting with CCA-CADC for the custody of the Applicant.

47. DOC currently contracts with CCA for the custody of the Applicant. Therefore, the DOC-CCA contract for the

custody of the Applicant is void and illegal.

V

**WHETHER LEGISLATIVE AND EXECUTIVE BRANCH OFFICIALS VIOLATED DUE PROCESS WHEN THEY ARBITRARILY DEPRIVED MR. WOODARD OF MULTIPLE LIBERTY AND PROPERTY INTERESTS, THUS RENDERING HIS SENTENCE UNLAWFUL AND VOID, REQUIRING HIS RELEASE FROM CUSTODY.**

**A.  Whether the Alaska Legislature arbitrarily deprived Mr. Woodard of his right to due process by enacting HB 596 in violation of Article II section 13.**

48.  Paragraphs 1 through 47 are incorporated herein by reference as though fully set forth.

49.  Article II section 13 provides the Applicant with a liberty interest and the expectation that he will not be arbitrarily subjected to or governed by illegally enacted laws.

**B.  Whether DOC arbitrarily deprived Mr. Woodard of his right to due process by subjecting him to the illegally enacted provisions of AS 33.30.031 (a).**

50.  Paragraphs 1 through 49 are incorporated herein by reference as though fully set forth.

51.  Article I section 12 of the Alaska Constitution provides the Applicant with a liberty interest in the right to reformation.  In order to effectuate this constitutional mandate, the Applicant has the right to participate in various rehabilitative programs, such as ACI.

52.  AS 33.30.031(a), as originally enacted by SLA 1986 ch. 88 § 6 (SCS CSHB 114 (Jud)), provides the Applicant with a vested liberty interest and the expectation of not being restrained under a private agency contract outside of the State of

-13-

EXHIBIT 24
PAGE 17 OF 89    EXC. 15

Alaska.  <u>See</u>, exhibit O.

53.  AS 33.30.031(b), as originally enacted by SLA 1986 ch. 88 § 6 (SCS CSHB 114 (Jud)), provides the Applicant with a vested liberty interest and the expectation that if he would be restrained under a private agency contract, it would be in accordance with the provisions of subsection (b).  <u>See</u>, exhibit O.

54.  The Cleary FSA/O provides the Applicant with numerous vested liberty and property interests.  Among the many, section VIII(A) overcrowding mechanisms are designed to reduce and prevent the burdens caused by overcrowding while not adversely affecting the existing constitutional rehabilitative opportunities or the prisoners still incarcerated in DOC facilities.  VIII(A) also provided the Applicant with a vested liberty interest and the expectation that he would not be transferred and committed to an out-of-state private agency in the event of overcrowding. <u>See</u>, attached exhibit R.

55.  Ever since 1991, the Alaska Legislature, at the request of executive branch officials of the Hickel and Knowles administrations, have systematically endeavored to relieve the state from the contractual obligations under the <u>Cleary</u> FSA/O. <u>See</u>, attached exhibits P pp. 2-5, and exhibits S, T, U, V, and W.

**C. Whether DOC arbitrarily and unlawfully exceeded the statutory scope of Mr. Woodard's sentence by committing him to the illegal custody, control, and restraint of CCA-CADC, resulting in the loss or waiver of custodial jurisdiction over Mr. Woodard, requiring that he be relieved from any further obligations under <u>the judgment of conviction entered in the Superior Court.</u>**

56.  Paragraphs 1 through 55 are incorporated herein by

by reference as though fully set forth.

57.   AS 44.28.010-020 provides that DOC shall administer Alaska's adult penal system.   Various sections of Title 33 of the Alaska Statutes (AS 33.30.011-901, AS 33.32.010-090, AS 33.35.010-040, AS 33.30.010-100) provide power as well as set parameters for the Commissioner of DOC to lawfully carry out the commitment por-tion of the sentence imposed by the Superior Court.   These com-bined statutes provide DOC with custodial jurisdiction over the Applicant.

58.   In 1997, the DOC Population Management Team deter-mined that numerous options were available in the event of over-crowding.   Among the many options, the Team selected the follow-ing Model Options: Judiciary Option No. 1.09 (Court ordered re-lease of sentenced prisoners), Release Options No. 1.17 and 1.18 (Commutation of sentence).   See, attached exhibit X.

### PRAYER FOR RELIEF

Mr. Woodard respectfully requests that based on the foregoing facts and grounds presented in claims I through V, the exhibits in support, and the attached affidavit, that this court order the following relief:

a.   Claims I and III:   reversal of convictions and other appropriate sanctions.

b.   Claim II:   convictions set-aside with other appro-riate equitable sanctions pursuant to Civil Rule 60(b).

c.   Claims IV and V:   Court ordered release (Judiciary Option No. 1.09), or, Court ordered commutation of sentence (Re-

**EXHIBIT 24**    C. 17
PAGE 19 OF 89

lease Options 1.17 and 1.18).

       d.   Any other relief that this Court deems necessary and proper.

RESPECTFULLY SUBMITTED, this _26th_ day of _APRIL_ 2000.

_____
Jon Woodard

**EXHIBIT 24**
PAGE 20 OF 89

EXC. 18

-16-

J
U
D
G
M
E
N
T

J U D G M E N T

**EXHIBIT 24**
PAGE 21 OF 89

EXC. 19

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

AT ANCHORAGE

STATE OF ALASKA          )
                         )
          Plaintiff,     )
                         )
vs.                      )
                         )
JON ARNOLD WOODARD       )          CASE NO.   3AN-S92-5238  CR
                         )                     **AMENDED**
          Defendant.     )          JUDGMENT AND ORDER OF
DOB: 02/19/65            )          COMMITMENT/PROBATION
ID No. 5647880   ATN 100 151 307

MAR 1 6 2000

Defendant has been found _guilty_ by jury trial.

| Count | Date of Offense | Offense | Statute Violated | DV Offense Per AS 18.66.990(3)&(5) (Yes or No) |
|-------|-----------------|---------|------------------|-----------------------------------------------|
| II | 06/08/92 | Murder in the Second Degree | AS 11.41.110(a)(3) | |
| III | 06/08/92 | Robbery in the First Degree | AS 11.41.500(a)(1) AS 11.16.110(2)(B) | |

and the following charges were dismissed:

| Count | Date of Offense | Offense |
|-------|-----------------|---------|
| VI | 05/24/92 | Robbery in the First Degree |
| VII | 04/26/92 | Robbery in the First Degree |

EXC. 20

**EXHIBIT 24**
PAGE 22 OF 89

1

State vs. Jon A. Woodard                    Case No. 3AN-S92-5238 CR

Defendant came before the court on September 24, 1993, March 2, 2000 and March 14, 2000 with counsel, James McCormick (09/24/93) and Leslie Hiebert (03/02/00) and 03/14/00), and the District Attorney present. Defendant was telephonic from Arizona Detention Center.

IT IS ORDERED that the defendant is hereby committed to the care and custody of the Commissioner of the Department of Corrections for the following period(s):

Count II  - SIXTY-SIX (66) YEARS, non-presumptive, with ZERO (0)
            YEARS SUSPENDED.  NO Probation.

Count III - FOURTEEN YEARS/SEVEN YEARS SUSPENDED. TEN years
            Probation.  Sentence is concurrent with Count II
            Murder in the 2nd Degree.

Count I -   VERDICT of not-guilty on June 7, 1993

Count VI -  Dismissed on March 2, 2000

Count VII - Dismissed on March 2, 2000

The sentence is:
    X    all or partially presumptive.  The defendant is ineligible for
         parole, except as provided in AS 33.16.090(b) and (c).

    __ non-presumptive.  The defendant is eligible for parole.

IT IS ORDERED that the defendant is fined $__ with $__ suspended.  The unsuspended $_ is to be paid _

SURCHARGE.  IT IS ORDERED that defendant pay the following surcharge within 10 days
    Count           Surcharge Amount

DNA IDENTIFICATION.  If this conviction is for a "crime against a person" as defined in AS 44.41.035(j), the defendant is ordered to provide samples for the DNA Registration System when requested to do so by a health care professional acting on behalf of the state.  AS 12.55.015(h).

2

EXC. 21

EXHIBIT 24
PAGE 23 OF 89

A F F I D A V I T

```
STATE OF ALASKA            )
                           ) ss:
THIRD JUDICIAL DISTRICT     )
```

### AFFIDAVIT OF JON A. WOODARD IN SUPPORT
### OF APPLICATION FOR POST-CONVICTION RELIEF

      I, Jon A. Woodard, state upon oath or affirmation that the following is true and correct to the best of my knowledge:

      1.  I am an Alaska contract prisoner in the custody of Corrections Corporation of America (CCA), Central Arizona Detention Center (CADC), located at Florence, Arizona.

      2.  I have been under the custody, control, and restraint of CCA-CADC since 11 April 1998.

      3.  The claims raised in this application for post-conviction relief were not presented in any previous proceeding.

      4.  The affiant has exercised due diligence in presenting the claims raised in the application for post-conviction relief.  Because the information presented in exhibits C through H were withheld from the affiant by state agents, he was prevented from raising claims I-III at trial or on appeal.

      5.  The facts, grounds, and exhibits that form the basis of claims IV and V recently became of full legal significance to the affiant.  I have used diligent efforts in presenting these claims to the court.

      6.  Exhibits M, N, and P were obtained by third parties from the Alaska State Legislature textual infobase homepage (www.legis.state.ak.us) and are presented as documentary evidence to support the facts and grounds raised in claims IV and V.

EXC. 23

FURTHER YOUR AFFIANT SAYETH NAUGHT

DATED at Florence, Arizona, this 26ᵗʰ day of April 2000.

Jon Woodard

SUBSCRIBED AND SWORN to before me on this 26 day of April 2000.

Notary



OFFICIAL SEAL
JACI A. MATLOCK
NOTARY PUBLIC - STATE OF ARIZONA
PINAL COUNTY
My Comm. Expires March 31, 2003

**E X H I B I T S**

Jon   6/92
(5238CR)

IN THE DISTRICT COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

```
                                    )
In the Matter of                    )
                                    )
Search Warrant Authorization        )
                                    )
```

No. 92-915 SW

TRANSCRIPT OF APPLICATION FOR SEARCH WARRANT

BEFORE THE HONORABLE ELAINE ANDREWS
Superior Court Judge

Anchorage, Alaska
June 10, 1992
8:38 o'clock p.m.

APPEARANCES:

STEPHEN E. BRANCHFLOWER
Assistant District Attorney
1031 West Fourth Avenue
Suite 520
Anchorage, Alaska

**EXHIBIT 24**
PAGE 28 OF 89

EXHIBIT A p. 1

EXC. 26

Q    Identified him from the photograph.

A    That is correct.

Q    Exhibit number 1.

A    Yes.

Q    Okay.

A    And another statement we made to him is that we already had the information. And we were saying this, that we had information on the suspect, thinking that the suspect he was talking about was in fact a subject we knew as John Treehan (ph). And so some of those statements, while -- are not completely lies, they were maybe incorrect based on the information we had at the time.

Q    All right. Now, is it true that what initially focused your attention on Mr. VanHousen was some information that you received through an attorney here in town who represents an individual who is charged with a drug offense, and let's call that person defendant X. That the information you received through the district attorney's office was that the attorney who represents defendant X had talked to Mr. VanHousen's father, and that according to defendant X Mr. VanHousen's father was lamenting the fact that his son, David VanHousen, had told him of possibly being involved. And I can't recall exactly what was said. Words to the effect, however,

EXC. 27    EXHIBIT A, p. 2

EXHIBIT 24
PAGE 29 OF 89

Alaska Court System

that no one was supposed to get killed, and generally

telling defendant X that he was worried about his son,

David VanHousen.

A    Yes, that is -- that is correct.

Q    All right.  So, that's what initially atten -- directed

the attention of the police to Mr. VanHousen, correct?

A    That's correct.  And the fact that Mr. VanHousen was an

employee at Carrs.  We verified that through work

records.

Q    Now, have you talked to Mr. VanHousen's father?  Did you

make contact -- either you or other officers?

A    Officers did make contact with him probably -- I think

it was 20 minutes to 5:00 is when Detective Vanderveur

and Detective Hoffbeck called us and notified they'd

made contact and the father had refused to talk to them.

Q    All right.  Now, with respect to Mr. Woodard's dwelling

here in Anchorage, do you know what address that is?

A    Yes, sir.  It is -- I don't have it.  I did know it.

It's an Airport Heights address.  We have a printout I

think.

MR. GRIMES:  I believe it's on that exhibit, that

driver's license.

MR. BRANCHFLOWER:  Okay.  If I could just see the

exhibit here for a second.

THE COURT:  Exhibit 1 has 801 Airport Heights, number

EXC. 28          EXHIBIT A, p. 3

EXHIBIT 24

PAGE 30 OF 89

25

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA,               )
                               )
              Plaintiff,       )
                               )
     vs.                       )
                               )
JON WOODARD,                   )
                               )
              Defendant.       )
                               )

Filed in the Trial Courts
STATE OF ALASKA THIRD DISTRICT
IN ANCHORAGE

OCT 27 1992

Clerk of the Trial Courts

By_____ Deputy

OCT - 5 1992

Case No. 3AN-S92-5238 CR

**O R D E R**

(C-1, Motion to Compel Disclosure)

**CERTIFICATION**

[X] This document and its attachments do not contain information that is confidential under AS 12.61.110 or the name of a victim of a crime listed in AS 12.61.140.

[ ] This document or an attachment contains confidential information that may be placed in a court file under an exception listed in AS 12.61.130(b). This information appears at the _____. This document and its attachments do not contain the name of a crime victim as listed in AS 12.61.140.

Upon consideration of defendant's C-1, Consolidated Motion to Compel Disclosure, [and noting the lack] of any opposition thereto, ~~of any Reply thereto, and after hearing~~, it is hereby

ORDERED that the Motion be, and hereby is, GRANTED; it is

FURTHER ORDERED that the State shall furnish to defense counsel within 15 days of the date of this order all of the information specified in C-1, Consolidated Motion to Compel Disclosure; it is

FURTHER ORDERED that, if the State has any doubt as to whether or not information fits within the specifications contained

SCHLEUSS & McCOMAS
ATTORNEYS AT LAW
500 L STREET, SUITE 300
ANCHORAGE, AK 99501
(907) 258-7807
FAX (907) 276-1158

ORDER GRANTING C-1 MOTION TO COMPEL - PAGE 1
5395\DM

EXHIBIT B, p. 1

EXC. 29
**EXHIBIT 24**
PAGE 31 OF 89

in that Motion, it shall forthwith submit such questioned material to the Court for its review, <u>United States v. Lehman</u>, 756 F.2d 725, 729 (9th Cir. 1985); and it is

FURTHER ORDERED that the obligations created by this Order are continuing in nature, and the State shall forthwith provide additional information to the defense after the date of this Order, as such information comes into its knowledge, possession, or control, or the knowledge, possession, or control of any of its agents or agents of other sovereigns with whom it is cooperatively working or has cooperatively worked in this case.

ENTERED at Anchorage, Alaska, this _27H_ day of _October_, 1992.

_____
JUDGE OF THE SUPERIOR COURT

I certify that on_____
a copy of the above was mailed to each
of the following at their addresses of
record:

_____
Secretary/Deputy Clerk

USS &°McComas
RNEYS AT LAW
STREET, SUITE 300
DRAGE, AK 99501
7) 258-7807
(907) 276-1158

ORDER GRANTING C-1 MOTION TO COMPEL - PAGE 2
5395\DM

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA,              )
                              )
        Plaintiff,            )
                              )
    vs.                       )        FILED IN OPEN COURT
                              )        Date:_____12/17/92 nu_____
WILLIAM E. TURLINGTON,        )
DOB: 09-19-36                 )
                              )
        Defendant.            )
_____)
Court No. 3AN-S91-6378    Cr.

INFORMATION REPLACING INDICTMENT

<div style="border:1px solid">

**CERTIFICATION**

✓  This document and its attachments do not contain information that is confidential under AS 12.61.110 or the name of a victim of a crime listed in AS 12.61.140.

____  This document or an attachment contains confidential information that may be placed in a court file under an exception listed in AS 12.61.130(b). This information appears at _____. This document and its attachments do not contain the name of a victim of a crime listed in AS 12.61.140.

</div>

COUNTS I, II
MISCONDUCT INVOLVING A CONTROLLED SUBSTANCE
IN THE THIRD DEGREE
AS 11.71.030.(a)(1)

THE DISTRICT ATTORNEY CHARGES:

COUNT I

That on or about the 31st day of July, 1991, the 23rd day of August, 1991, and on two separate occasions on the 5th day of September, 1991, at or near Anchorage, in the Third Judicial District, State of Alaska, William E. Turlington did unlawfully and knowingly deliver a schedule IIA controlled substance.

EXHIBIT C, p. 1

DISTRICT ATTORNEY, STATE OF ALASKA
1031 WEST FOURTH AVENUE, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 277-8622

All of which is a class B felony offense being contrary to and in violation of AS 11.71.030(a)(1) and against the peace and dignity of the State of Alaska.

COUNT II

That on or about the 5th day of September, 1991, at or near Anchorage, in the Third Judicial District, State of Alaska, William E. Turlington did unlawfully and knowingly possess a schedule IIA controlled substance with intent to deliver that substance.

All of which is a class B felony offense being contrary to and in violation of AS 11.71.030(a)(1) and against the peace and dignity of the State of Alaska.

DATED this _15th_ day of December, 1992, at Anchorage, Alaska.

CHARLES E. COLE
ATTORNEY GENERAL

EDWARD E. MCNALLY
DISTRICT ATTORNEY

By: _____
John J. Novak
Assistant District Attorney

JJN:sw
d8

DISTRICT ATTORNEY, STATE OF ALASKA
1031 WEST FOURTH AVENUE, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 277-8622

EXHIBIT C, p. 2

Filed In Open Court
12-17-92  ᛋ

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

STATE OF ALASKA,          )
                          )
              Plaintiff,  )
                          )
     vs.                  )
                          )
WILLIAM TURLINGTON,       )
                          )
              Defendant.  )
_____)

Case No. 3AN-S91-6378     Cr.

<u>CRIMINAL RULE 11 PLEA AGREEMENT</u>

Pursuant to AS 12.55.085-110 and Alaska Rule of Criminal Procedure 11(e), the State of Alaska, by the undersigned attorney, the defendant named above, and the undersigned defense counsel, hereby advise the court they have reached a Rule 11 plea agreement providing for the disposition of the charge(s) embodied in the above-captioned case in lieu of trial. The terms of that agreement are set forth with specificity below.

<u>TERMS OF THE AGREEMENT</u>

1.     The defendant agrees to enter a plea of guilty or nolo contendere to the charge(s) alleged in the most recently filed charging document in this case. If accepted by the court, the plea will result in the court sentencing the defendant to four years with all four years suspended, on each of two counts to be concurrent, and probation for four years on the following agreed upon conditions.

2.     The defendant agrees to be placed on formal probation under the supervision of a probation officer of the Department of Corrections. The defendant will abide by any and

DISTRICT ATTORNEY, STATE OF ALASKA
1031 WEST FOURTH AVENUE, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 277-8622

EXC. 33

EXHIBIT D, p. 1
EXHIBIT 24
PAGE 35 OF 89

offense(s) have been committed by defendant as alleged by the
State of Alaska.

9. The defendant understands that this plea agreement
is conditioned upon the defendant having never been diverted, and
having no previous criminal history of felony convictions.

<u>VOLUNTARINESS OF THE AGREEMENT</u>

The defendant acknowledges that (s)he has discussed this
agreement fully with his/her counsel and acknowledges to the court
that (s)he is entering into this agreement with the advice and
consent of his/her counsel. The defendant asserts that (s)he now
fully understands the terms of this agreement and the consequences
of abiding by or violating this agreement.

The defendant acknowledges that, after full consultation
with (s)he has been informed and understands:

1.    The nature of the charge(s);

2.    That by entering his/her plea of guilty or no
contest (s)he waives (gives up) his/her right to trial by jury or
by a judge;

3.    That by entering his/her plea of guilty or no
contest, (s)he waives his/her right to be confronted with
witnesses against him/her;

4.    The mandatory minimum punishment, if any, and the
maximum possible punishment provided by the statute defining the
offense to the plea being taken;

DISTRICT ATTORNEY, STATE OF ALASKA
1031 WEST FOURTH AVENUE, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 277-8622

RULE 11 PLEA AGREEMENT - 6

EXC. 34

and consents to its terms and that it is being entered into with

the advice and consent of counsel.

Defendant                                    Date    12/17/92

Counsel for Defendant                        Date    12/17/92

Edward E. McNally                            Date    12/15/92
District Attorney

DISTRICT ATTORNEY, STATE OF ALASKA
1031 WEST FOURTH AVENUE, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 277-8622

EXC. 35

RULE 11 PLEA AGREEMENT - 10

EX. D. p. 3

EXHIBIT 24
PAGE 37 OF 89

■LLIAM C. MACK
IVISION MANAGER
RICHARD KULASZEWSKI
SSISTANT DIVISION MANAGER

■OIS J. WALKER
riminal Assignment Clerk



MONMOUTH COUNTY COURT HOUSE
71 MONUMENT PARK    ROOM 143
POST OFFICE BOX 1271
FREEHOLD, NEW JERSEY 07728
TELEPHONE (908)  866-3658
In Reply Refer To:
_____ Lori A. Gluck

April 20, 1995

Sheila Sturgeon, Paralegal Assistant
State of Alaska - Dept. of Law
Criminal Division
310 K Street
Anchorage, Alaska  99501-5906

Re:  State vs. William Turlington
     Indictment Number 411-61

Dear Ms. Sturgeon:

In reply to your letter received in this office on April 17, 1995,
requesting information on the above mentioned case, enclosed please find
certified copies of the Indictment and Judgment of Conviction.

I trust you will find this information helpful.

Very truly yours,

Lois J. Walker
Criminal Assignment Clerk

By: Lori A. Gluck
    Lori A. Gluck
    Supervising Clerk

LJW:lag

enclosure

■ibit ___B___
■e ___1___ of ___2___

EXHIBIT E, p. 1

EXC. 36
EXHIBIT 24
PAGE 38 OF 89

LAW DIVISION, CRIMINAL, MONMOUTH COUNTY

I, William W. Carpenter, Deputy Clerk of the Superior Court of New Jersey, Monmouth County, and, pursuant to *Rule 1:5-6(b)(2) official custodian of the records in criminal actions do hereby attest that the foregoing is a true copy/are true copies of

Indictment and Judgment of Conviction
Indictment No. 411-61

STATE OF NEW JERSEY

VS.

WILLIAM E. TURLINGTON,
Defendant.

Dated:   April 20, 1995

_William W. Carpenter_
DEPUTY CLERK OF THE SUPERIOR COURT

{*Rule 1:5-6(b)(2) of the Rules Governing the Courts of New Jersey reads in pertinent part: "In all criminal actions in the Superior Court, Law Division, with the Criminal Division Manager in the county of venue, as designee of the deputy clerk of the Superior Court."}
This certificate conforms to requirements of 28 USCA Sec. 1738.

Exhibit  B
Page  2  of  B

EXHIBIT E, p. 2
EXC. 37
EXHIBIT 24
PAGE 39 OF 89

16-2



Page 2

I,      LAWRENCE M. LAWSON                                          , Judge of the Superior Court
of New Jersey, do hereby certify that William W. Carpenter, whose signature
is subscribed to this document, is Deputy Clerk of the Superior Court and
official custodian of the records of criminal actions in Monmouth County, that
the foregoing attestation is in proper form, and that the seal affixed is the seal
of the Superior Court of New Jersey.



Judge of the Superior Court

Dated:    April 20, 1995




No. 2095-10

JUL 31 1962

THE PEOPLE OF THE STATE OF NEW YORK

—against—

NICHOLAS ALBERTI s/k/a McKory, N-A-B
CHARLES LARRY DELGRE s/k/a Whitey, N-A-P
EUGENE JOHN ENVOLINO, N-A-B
EDWARD FUCHS e/k/a Johnny Abolino; N-A
and WILLIAM TURLINGTON, N-A-P

Defendants.

INDICTMENT

CONSPIRACY, AS A FELONY,

Sec., 580-a Penal Law

FRANK S. HOGAN
District Attorney

EXHIBIT E, p. 4

EXHIBIT 24
PAGE 41 OF 89



COURT OF GENERAL SESSIONS
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

THE PEOPLE OF THE STATE OF NEW YORK                    :

                -against-                               :

                                                       :

NICHOLAS ALBERTI a/k/a Nicky;                          :
CHARLES LARRY DELCORE, a/k/a Whitey;
EUGENE JOHN ERVOLINO, a/k/a Johnny Abolino;            :
EDWARD FUCHS
            and                                        :
WILLIAM TURLINGTON,                                    :

                              Defendants.              :

- - - - - - - - - - - - - - - - - - -x

        THE GRAND JURY OF THE COUNTY OF NEW YORK, by this

indictment, accuse the above named defendants of the crime

of CONSPIRACY, AS A FELONY, in violation of Section 580-a of

the Penal Law, committed as follows:

        The defendants, in the County of New York, from on

or about June 1, 1962, up to and including July 17, 1962,

knowingly, wilfully, wrongfully and corruptly conspired with

each other and with other persons to commit the felony of

robbery in the first degree, in that they conspired to take

certain personal property, to wit, United States currency,

from the person and in the presence of  Charles Engels, by

means of force and violence and fear of immediate injury to

the person, and conspired together to be armed with dangerous

weapons, to wit, pistols, and to be aided by accomplices,

to wit, each by the other, and to be aided by the use of

automobiles.

EXHIBIT 24
PAGE 42 OF 89

hibit  A
ge 3 of 70

EXC. 40

County Clerk, and Clerk of the
Supreme Court New York County
- OFFICIAL USE

## OVERT ACTS

In furtherance of said conspiracy and to effect
the objects thereof, the following overt acts were committed:

1. On or about June 9, 1962, in the County of New
York, the defendants Nicholas Alberti, Charles Larry Delcore,
Eugene John Ervolino, Edward Fuchs, and others, conferred
together.

2. On or about June 27, 1962, in the County of
New York, the defendants Nicholas Alberti, Charles Larry
Delcore and others conferred together.

3. On or about June 27, 1962, in the County of
New York, the defendants Eugene John Ervolino and others
conferred together.

4. On or about July 3, 1962, in the County of
New York, the defendants Nicholas Alberti, Charles Larry
Delcore, Edward Fuchs, John Ervolino and others conferred
together.

5. On or about July 16, 1962, in the County of
New York, the defendants Nicholas Alberti, William Turlington,
Edward Fuchs, Charles Larry Delcore, Eugene John Ervolino
and others conferred together.

6. On or about July 16, 1962, in the County of
New York, the defendants Nicholas Alberti and Edward Fuchs
entered into an automobile and drove to New Jersey.

EXHIBIT E, p. 6

EXC 41

EXHIBIT 24
PAGE 43 OF 89

-2-

FEE PAID $10 —

THE PEOPLE OF THE STATE OF
NEW YORK

against

WILLIAM TURLINGTON

on    INDICTMENT    for

CONSPIRACY, AS A FELONY

No.    2995-62

Filed JULY 31,    1962

I, NORMAN GOODMAN, County Clerk and Clerk of the Supreme Court, New York County, do certify that it appears from an examination of the Records on file in this office, that ON NOVEMBER 13, 1962, THE ABOVE NAMED DEFENDANT ENTERED A PLEA OF GUILTY TO THE CRIME OF CONSPIRACY AS A FELONY, COUNT ONE, TO COVER INDICTMENT, AND TO ALSO COVER INDICTMENT NUMBER 2969-62. THAT ON APRIL 22, 1963, UPON HIS CONVICTION BY CONFESSION, THE DEFENDANT WAS SENTENCED BY THE HONORABLE MITCHELL D. SCHWEITZER, A JUSTICE OF THE SUPREME COURT, TO THE CUSTODY OF THE NEW YORK STATE DEPARTMENT OF CORRECTION FOR A TERM OF ONE AND A HALF TO THREE YEARS.

EXHIBIT 24
PAGE 44 OF 89

EXC. 42

EXHIBIT E, p. 7

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official Seal this_____day of

JUN 16 1995    19

County Clerk and Clerk of the Supreme Court,
New York County.

Exhibit    A
Page  1  of  10

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

FILED
STATE OF ALASKA
THIRD DISTRICT
95 AUG 24 PM 3:18
CLERK, TRIAL COURTS
BY _____
DEPUTY CLERK

STATE OF ALASKA                )
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
WILLIAM TURLINGTON,            )
                               )
          Defendant.           )
_____)

Case Nos. 3AN-S94-8516 Cr.
          3AN-S91-6378 Cr.

SUPPLEMENTAL SENTENCING MEMORANDUM

---

### VRA CERTIFICATION

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

---

COMES NOW, the State of Alaska, by and through Assistant District Attorney John J. Novak, and hereby files this supplemental sentencing memorandum to assist the court in fashioning an appropriate sentence in connection with the above-referenced cases.

IV.   PRIOR OUT-OF-STATE FELONY CONVICTIONS

Attached as Exhibit "A" are copies of the court records reflecting defendant's 1962 felony conviction in the State of New York for conspiracy to commit robbery in the first degree. Attached as Exhibit "B" are copies of the court records pertaining to defendant's 1964 conviction out of the state of New Jersey for

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

the offense of armed robbery.  The State submits these certified copies so as to provide the court with additional information pertaining to defendant's prior criminal history.

V.    <u>PERFORMANCE WHILE ON PROBATION IN CASE NO. 3AN-S91-6378-Cr.</u>

As the court is aware, defendant entered into a Rule 11 agreement with the State of Alaska in which defendant received concurrent sentences of four years with all four years suspended and a probationary term of four years on two counts of misconduct involving controlled substances in the third degree in Case No. 3AN-S91-6378 Cr.  The two counts incorporate defendant making deliveries of cocaine on four separate occasions (involving quantities of 1/2 ounce to two ounces) and possessing more than 1/2 pound of cocaine with intent to deliver.

As the court was advised at the change of plea hearing, the agreement was entered into for a number of reasons.  First, the trial court had suppressed all evidence pertaining to defendant possessing the 1/2 pound of cocaine on the basis that the State Troopers purportedly failed to comply with the "knock and announce" statute.  The State filed a petition for review with the Court of Appeals which was accepted.  While briefing for the Court of Appeals was being conducted, defendant, through his attorney, contacted the District Attorney's Office and provided information that eventually lead to the prosecution and conviction of Jon A. Woodard on charges of second degree murder, Case No. 3AN-S92-5238 Cr.  Also at sentencing, defendant, through his attorney, stated that he was an elderly man, who no longer was in the business of dealing of cocaine, and who never again would

EXC. 44

engage in any such activity. Defendant's performance on probation, however, unequivocally demonstrates that he continued non-stop in his trade of narcotic trafficking.

As reflected in the presentence report, defendant has not held a verified job other than narcotics trafficking. Despite failing to provide documentation concerning his earnings as required by the conditions of his probation, no petition to revoke was filed. Defendant failed to appear for urinalysis testing on May 13, 1993, October 7, 1994, October 25, 1994, November 17, 1994, November 23, 1994, and November 29, 1994. Defendant was violated off the program due to his failing to submit urinalysis testing. Despite that fact, no petition to revoke was filed. Defendant's urine tested positive for use of cocaine on February 4, 1993, February 23, 1994, March 7, 1994, and September 1, 1994. Despite those positive urinalysis results, no petition to revoke was filed. In June, 1994, defendant was discharged from a out-patient drug treatment program due to his non-compliance with that program's requirements. Despite failing to comply with the program as required by his conditions of probation, no petition to revoke was filed. Defendant committed the criminal offense of shoplifting in 1993 and was convicted on August 13, 1994. (See, Exhibit "C.") Despite that criminal conviction, no petition to revoke probation was filed. It was not until defendant again was arrested for illegal trafficking in cocaine (Case No. 3AN-S94-8516 Cr.) that a petition to revoke was filed. In short, defendant's performance while on probation demonstrates that he has no regard for the conditions of probation or otherwise complying with the

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

requirements of the law.

        Dated at Anchorage, Alaska, this 23rd day of August, 1995.

                    BRUCE M. BOTELHO
                    ATTORNEY GENERAL

                    KENNETH J. GOLDMAN
                    DISTRICT ATTORNEY

                    By:
                        John J. Novak
                        Assistant District Attorney

JJN/lek

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

This is to certify that a copy of the foregoing is being:

_____ mailed         _____ caused to be mailed

_____ hand delivered     _____ caused to be hand
                       delivered

to the following attorneys/parties of record:

Signature     Printed Name     Date

                        8/24/95

**EXHIBIT 24**
PAGE 48 0F 89

EXC. 46

**EXHIBIT F, p. 4**

H-5332 Log 03-End
H-5333 Log 03-1237
September 27, 1995                    3ANS94-8516 CR

3ANS 91-6378CR. STATE OF ALASKA vs WILLIAM TURLINGTON

Present: Phillip Moberly, Assistant District Attorney
        Michael Dieni, Assistant Public Defender


### TRANSCRIPT OF JUDGE'S REMARKS AT SENTENCING

THE HONORABLE ELAINE M. ANDREWS


THE COURT: You come before the Court Mr. Turlington, with a four year suspended sentence in the 1991 case and a presumptive four-year term in the 1994 case and the lawyers know what the.....

MR. DIENI: Presumptive three.

THE COURT: Excuse me, a presumptive three, right, I had the corrected three and saying four. There are a number of things I have to consider, one is the presumptive sentencing scheme and how that works with the aggravators and mitigators and more importantly is the Chaney criteria. And the Appellant Courts have told us that we need to fashion a sentence that focuses on rehabilitation, reaffirmation of social norms, deterrence of you, deterrence of others who are similarly situated, and isolation if necessary. I have a number of thoughts, none of which are very well organized, about this case. I guess the first being that it seems to me that there is a whole portion of your life that I don't really have much information about and that goes from, I think in your favor, from about '63 to about '93 more or less where we

EXHIBIT 24
PAGE 49 OF 89