IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT

RECEIVED
Department of Law
NOV 6 2000
Office of the District Attorney
Third Judicial District
Anchorage, Alaska

RECEIVED
DEPARTMENT OF LAW
NOV -3
OFFICE OF SPECIAL PROSECUTIONS
AND APPEALS
ANCHORAGE, ALASKA

In the Matter of the
Application for Post
Conviction Relief of:

JON WOODARD

Applicant.

)
)
)
)
)
)
)
)
)

Case No. 3ANS 00-6982 Civ.
3ANS 92-5238 Cr.

SUPPLEMENT TO APPLICATION
FOR POST-CONVICTION RELIEF

---

VRA CERTIFICATION

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

---

COMES NOW JON WOODARD, by and through counsel, and hereby

supplements his application for post-conviction relief as follows. Woodard relies

on his pro se filing and counsel supplements the pleading with regard to counts I -

III herein.

Jon Woodard was convicted of felony murder and robbery. The state

relied on an informant, or "snitch", William Turlington, in approaching David Van

Husen and obtaining his cooperation. Van Husen was not candid to the

prosecution or the court, basically admitting to his own wrongdoing in connection

900 West 5th Avenue, Suite ...
Anchorage, Alaska 99501
Phone: (907) 269-3500 • Fax (907) 269-3535

with the robbery only when confronted and given immunity. Turlington reaped substantial rewards for his conduct in tipping the state to go to Van Husen.

Van Husen was exposed to very limited liability solely because he was cooperative in accusing Woodard and attempting to implicate Woodard by wearing wires. Woodard never made admissions to Van Husen that he participated in the robbery/murder at Carrs. Although Van Husen repeatedly attempted to get Woodard to admit he was involved in the robbery in recorded conversations, Woodard was just as adamant that this was not the case. Eventually charges were brought against Mr. Woodard despite his lack of admissions to Van Husen.

The rewards to Turlington and Van Husen were marked.--These rewards did not depend on Woodard's guilt but rather on the willingness of the two men to accuse Woodard and the willingness of the state to rely on their accusations.

Mr. Woodard, not surprisingly, takes issue with the failure of the state to disclose the identity and background of Turlington. Obviously someone with a strong motive to frame Mr. Woodard and to avoid responsibility for their conduct could have engaged in a scheme whereby they protect themselves by implicating Woodard. Casting suspicion on Mr. Woodard had no down side while cooperation minimized the consequences to Turlington. Woodard posits that the state would not have relied upon Turlington's tip and Van Husen's consequential cooperation if the state had been adequately informed as to Turlington's criminal history.

Investigation of Woodard's allegations in connection with the failure of the state to disclose Turlington's identity and background does support concluding that Turlington came from a milieu consistent with participating in arranging an

Phone: (907) 269-3500 • Fax (907) 269-3535

Exc. 247

EXHIBIT 25
PAGE 2 OF 6



elaborate scheme to frame Woodard for the robbery and felony murder.  Thus,

Woodard may well be correct, that the additional skepticism resulting from a full

knowledge of Turlington's background may have dissuaded the state from pursuing

Van Husen, and avoided the consequential partial, and substantially prejudicial,

use of Van Husen's recorded conversations with Woodard at trial.  At trial,

Woodard sought to introduce all of his taped conversations with Van Husen, or at

least parts that rebutted the state's selections from the tapes.   At least one judge in

the court of appeals strongly agreed that the partial use of those conversations

unfairly prejudiced Woodard at trial.  MO&J at 113 - 122.

Woodard sought to inform the jury that Van Husen and another informant,

Sean Pierce, were required to pass polygraphs as a part of their lenient plea

agreements with the state and failed to do so.   Both men tried to pass the

polygraph repeatedly and didn't.   Judge Bryner cogently concluded this evidence

should have been provided to the jury.   MO&J at 122 - 132.  The evidence that

the informants thought of themselves as liars was probably not disregarded by the

state and only a little more problems associated with the sources of information

they were relying on may have been enough to change the tide against Woodard.

The consequences to Woodard of reliance on untrustworthy sources was

great.  The evidence against him was otherwise limited and subjected to attack.  In

other words, had the state had only a little more reason to query the reliability of

their theory, the state's investigation may well have taken a turn in another

direction.  Woodard would not have been the sole target of the investigation

conducted by the law enforcement authorities, and the state would not have

Anchorage, Alaska 99501
Phone: (907) 269-3500 • Fax (907) 269-3535



narrowed down their investigation. As it was, the state had to bolster and shore up

a shaky case against Woodard.

Woodard's attorney did not request the state to specifically identify the

informant William Turlington, but James McComas did approach John Murtagh

and ask him if the informant, represented by Murtagh, was being rewarded for

providing the tip to the authorities. A memorandum to the file dated July 27, 1992

reveals that the informant was not being formally offered any benefit for the tip,

although a benefit was expected. See Exhibit 1, attached. Apparently McComas

was not able to otherwise investigate William Turlington.

The defendant understandably questions the state's failure to disclose the

identifying information for this informant under Criminal Rule 16 and the court's

orders because he reasonably posits that reliance on unreliable people influenced

decision making and resulted ultimately the results at trial. Assistant District

Attorney Mary Anne Henry denies recalling disclosing information about

Turlington. Mr. McComas reports that the information was not disclosed and not

pursued. The defendant wonders if his innocence might not have been better

established by a rigorous inquiry into the chance that Turlington and Van Husen

knew the real culprit, and had decided to cast blame on Woodard to obtain a

benefit without really spilling the beans.

It is not possible now to reconstruct the impact of the state's failure to

investigate and disclose the information. As this court can see from the lengthy

memorandum order in this case, the merits of the case against Woodard were hotly

debated. See Memorandum Opinion and Judgment No. 3933 -- December 9, 1998,

Anchorage, Alaska 99501
Phone: (907) 269-3500 • Fax (907) 269-3535

Exc. 249

EXHIBIT 25
PAGE 4 OF 6

attached. His identification as the robber who shot Becker was not solid, and depended on persons with bias or interest against him or who could only provide a weak eyewitness account. The outcome in this case may well be explained by the failure to give the defense the information necessary to aggressively pursue Turlington, his connections to Van Husen, and the false implications drawn from their statements. Had the defense pursued this angle, it is possible the state would have resisted being drawn in by falsehoods of Van Husen. And when Van Husen ultimately disclosed his greater role in the offense herein, he may not have been given lenient treatment. Turlington was the start of the snowball of falsehoods and stratagems that lead to Van Husen's successful shifting of blame from himself and the killer to Woodard.

Woodard continues to seek justice in a difficult case. He has consistently maintained his innocence in a notorious crime. The case divided the appellate court, with then Chief Judge Bryner dissenting. Judge Bryner concluded that Woodard was entitled to a new trial on the issues raised in the appeal. How the state perceived Turlington could have made all the difference in this case.

Woodard is right that the state was under an obligation to disclose the identity of persons known to the state to have information against him under the court rules and the due process clauses of the state and federal constitutions. Criminal Rule 16(b)(1)(A)(i). The state failed to do so. As a consequence his

Anchorage, Alaska 99501
Phone: (907) 269-3500 • Fax (907) 269-3535

5

EXHIBIT 25
PAGE 5 OF 6




constitutional rights were violated.  Woodard should be granted a new trial.

Dated this 2nd day of November, 2000.

_Leslie Hiebert_
Leslie Hiebert
Assistant Public Advocate

This is to certify that a copy of the foregoing
is being mailed/delivered to _____
DA 1059A
_____
on 11-2-00 by _____

Phone: (907) 269-3500 • Fax (907) 269-3535

EXHIBIT 25
PAGE 6 OF 6